UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL A. BARNES, et al | |
| Plaintiffs | Civil Action No:   **06-315 (RCL)** |
| v. | Next Event: None scheduled |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | |
| Defendant | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.    <u>INTRODUCTION</u>

The District of Columbia Department of Corrections[1] has resumed since at least approximately January 1, 2006 a practice of holding inmates in the DC Jail or CTF or halfway houses for periods of time from 1 day to a month after judicial officers (judges and magistrates of the District of Columbia Superior Court and the District of Columbia District Court) ordered them released.  Plaintiffs' Exhibits ## 1-

---

[1] Plaintiffs base this motion on the allegations and class definitions in their Second Amended Complaint.  Plaintiffs filed their motion to amend the First Amended Complaint on the same day as this motion.  The only substantive difference between the Second Amended Complaint and the First Amended Complaint is that the Second Amended Complaint adds Rule 23(b)(3) class allegations to the Rule 23(b)(2) class allegations.

14, 16-22 (affidavits of persons overdetained in the class period).  (an exhibit list is

attached)  The District of Columbia Department of Corrections has also resumed

since approximately January 1, 2006 the practice of subjecting court returns ordered

released at their court appearances (and who are not subject to any other cases on

which they are being detained, holds or warrants) to suspicionless strip searches after

a judicial officer has ordered them released.  Plaintiffs' Exhibits ## 1-14 and 16-18.

### A. FACTUAL BACKGROUND OF OVERDETENTIONS AND STRIP SEARCHES

The District of Columbia Department of Corrections holds prisoners committed by

the District of Columbia Superior Court, the District of Columbia District Court, and

other agencies, in the Central Detention Facility ("DC Jail"), the Correctional

Treatment Facility ("CTF") and at various halfway houses located in the District of

Columbia.  Most prisoners held in the custody of the Department of Corrections are

either pre-trial detainees, misdemeanants serving sentences, or parole and probation

violators.

### The Inmate Management System

The records office located at the DC Jail ("Records Office") is responsible for

administering and maintaining the records, including the judgment and commitment

files, of all persons housed at the DC Jail, CTF and the halfway houses. The Records Office is responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are released according to their Release Dates specified in their court orders. The District of Columbia Superior Court enforces a policy pursuant to which an in-custody-defendant or a defendant ordered into custody may not leave the courtroom without an order (commitment order or release order) for each case on which he appeared. "Handling of In-Custody-Defendants," Administrative Order No. 02-22, District of Columbia Superior Court, Chief Judge Rufus King, III, July 25, 2002.

The Overdetention Problem

"Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date. "Release Date" for each detainee or inmate is the day on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired. "Exit Date" for each detainee or inmate is the day on which the person is actually released from the custody of the District of Columbia Department of Corrections. First Amended Complaint ¶ ¶ 31-33. The Department of Corrections had a long and documented history of overdetaining detainees and inmates past their release dates. Id at 34. The Department of Corrections, in response to a class action lawsuit, instituted reforms that ameliorated and for periods eliminated the overdetention problem. However, in the last few weeks before the filing of this complaint, and, on information and belief, particularly since late December 2005, the Department of Corrections has again begun overdetaining large numbers of inmates. The overdetention problem was especially severe in March and April because of problems with the Department of Corrections' computerized inmate population accounting system and for other reasons. Id at 35-37. However, the overdetention problem continues. For example, three of the affidavits submitted in support of this motion come from persons overdetained this month (May, 2006). Plaintiffs' Exhibits # 15 (Freeland), # 21 (Luzano) and # 22 (Scott).

<u>The Court Return Strip Search Problem</u>

Prior to late 2000 or early 2001, the Department of Corrections followed a practice under which most inmates taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse.

In late 2000 or early 2001, the Department of Corrections instituted a policy under which every inmates taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse. In August 2005 the Department of Corrections instituted a policy of diverting in-custody defendants ordered released or otherwise entitled to release from the Superior Court of the District of Columbia to a holding facility on the grounds of DC General Hospital where they would not be subject to a strip search, absent individualized suspicion, while the record review for detainers and warrants and property retrieval was conducted prior to release. <u>Bynum v. Gov't of the Dist. of Columbia</u>, 384 F. Supp. 2d 342 (D.D.C. 2005). However, in the last few weeks before the filing of this

complaint, and, on information and belief, particularly since late December 2005, the Department of Corrections has been returning some in-custody defendants entitled to release from the courthouses to the DC Jail or CTF and subjecting them to strip searches after a judge has ordered their release without a finding of individual reasonable suspicion.  See affidavits attached as Plaintiffs' Exhibits ## 1-18.  The exact cause of the recent overdetentions and illegal court return strip searches is not known, but the causes, on information and belief, include recurring problems with the DC Jail's computerized inmate population accounting system and the deliberate indifference of the acting warden Patricia Britton and the acting director Elwood York and the resignation of competent managers from the Records Office.  Records Room staff have communicated the overdetention problem to their superiors by e-mail and by other written and oral communications to their superiors.  Their superiors are disregarding the problem and acquiescing in the current overdetention and strip search problem.

### B. PLAINTIFFS' CLAIMS

Plaintiffs' First Amended Complaint states two claims, the Overdetention Claim, alleging that the Department of Corrections holds inmates in the DC Jail or CTF after a judicial officer has ordered their release, and the Strip Search Claim, which states that the Department of Corrections subjects court returns entitled to

release to suspicionless strip searches after a judicial officer has ordered them released.

Plaintiffs seek class action treatment for the Overdetention Class and class action treatment for the Strip Search Class.  Each class separately meets the requirements as a "hybrid" class under Fed. R. Civ. P. 23(b)(2)/ (b)(3).  Eubanks v. Billington, 110 F.3d 87, 96 (D.C. Cir. 1997)( court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage).

Plaintiffs will first discuss the Rule 23 elements and their application to the Overdetention Class.  Plaintiffs will then briefly address the application of the Rule 23 elements to the Strip Search Class.

## II.    LAW GOVERNING CLASS ACTIONS

### A. REQUIREMENTS FOR CLASS CERTIFICATION

The party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one or more of the categories of Rule 23(b).  Franklin v. Barry, 909 F. Supp. 21, 30 (D.D.C. 1995).  The presumption is in favor of certifying

8

the class.  H.B. Newberg and A. Conte, <u>Newberg on Class Actions</u> (hereafter

"Newberg") Vol.6, §7.17; <u>In re School Asbestos Litigation</u>, 789 F.2d 1996 (3rd Cir.)

<u>cert</u> <u>denied</u>, 479 U.S. 852 (1986).

Rule 23(a) list four requirements for class action certification:

(1)    the class is so numerous that joinder of all members is

impracticable ["numerosity"];

(2)    there are questions of law or fact common to the class

["commonality"];

(3)    the claims or defenses of the representative parties are typical of

the claims or defenses of the class ["typicality"]; and

(4)    the representative parties will fairly and adequately protect the

interests of the class ["adequacy"].

Plaintiffs must also satisfy at least one of the subdivisions of Rule 23(b).  A

plaintiff satisfies Rule **23(b)(2)** by showing:

the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final

injunctive relief or corresponding declaratory relief with respect to the

class as a whole.

A plaintiff satisfies Rule **23(b)(3)** by showing:

(1) the questions of law or fact common to the members of the class

9

predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

It is a common practice for courts in this Circuit to certify a "hybrid" class under both 23(b)(2) and (3). <u>See</u>, <u>e.g.</u>, <u>Eubanks v. Billington</u>, 1997 U.S. App. LEXIS 6654 (D.C. Cir. 1997); <u>Bynum v. District of Columbia</u>, 214 F.R.D. 27 (D.D.C. 2003) (overdetention class)("Bynum I"); <u>Bynum v. District of Columbia</u>, 217 F.R.D. 43 (D.D.C. 2003)(strip search class) ("Bynum II"). In this case, plaintiff is asking the Court to certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class on damages for each class.

Plaintiffs will file a separate motion asking to Court to appoint a monitor to monitor the Records Office to determine why the Department of Corrections cannot make timely releases. The Court previously appointed a monitor to review the Records Office who produced a report in 2000 (the "Shaw Report").

**B. PRESUMPTIONS AND BURDENS APPLICABLE TO MOTION FOR CERTIFICATION**

In deciding a motion for class certification, the plaintiffs' allegations are taken as true and inquiry into the merits of the case is improper at the class certification stage. The legal standard is whether the evidence presented by plaintiffs establishes a

"reasonable basis for crediting plaintiffs' assertions." Bynum I, 214 F.R.D. at 31 (citing cases).

The court has considerable discretion as the issue of class certification on appeal is reviewed for an abuse of discretion. Barber v. Hawaii, 42 F.3d 1185, 1197 (9th Cir.1994); Hilao v. Estate of Marcos, 103 F.3d 767, 774 (9th Cir. 1996). However, courts should exercise that discretion liberally for, "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928 (1969).

## III.   APPLICATION OF LAW TO THE OVERDETENTION CLASS

### A.   PLAINTIFFS ESTABLISH THE EXISTENCE OF A CLASS

It is axiomatic that for a class action to be certified a 'class' must exist." Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981); Pigford v. Glickman, 182 F.R.D. 341, 346 (D.D.C. 1998). The definition of the proposed Overdetention Class set forth in plaintiffs' Second Amended Complaint easily satisfies this requirement because plaintiffs' proposed overdetention class definition sets forth general parameters that limit the scope of the class to such a degree that it is administratively feasible for the Court to determine whether a particular individual is a member of the overdetention

11

class.  <u>Bynum I</u>, 214 F.R.D. at 31-32.

Plaintiffs' Second Amended Complaint defines the proposed Overdetention Class as:

> Each person who has been, is, or in the future will be incarcerated in any District of Columbia Department of Corrections facility from September 1, 2005 forward; and who was not released, or, in the future, will not be released by midnight on the date on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired.

Plaintiffs have sufficiently outlined the boundaries of the class because "by looking at the class definition, counsel and putative class members can easily ascertain whether they are members of the class."  <u>Pigford</u>, 182 F.R.D. at 346. Anyone who has been held in the DC Jail or CTF or a halfway house after a judge ordered his release during the class period can easily determine, simply by reading the definition, whether he or she was a member of the proposed class.  <u>See</u> <u>Bynum I</u>, 214 F.R.D. at 32.  If, during the prescribed time period, he or she was incarcerated in the DC Jail or CTF or a halfway house, all that he or she would need to determine is whether he or she was overdetained.  Id.

There are no terms in the definition that require further clarification, and nothing in the definition would require the Court to hold individualized hearings to decide whether a particular individual fell within the scope of the definition.  Id.

12

B.    **PLAINTIFFS SATISFY THE RULE 23(A) REQUIREMENTS FOR CLASS CERTIFICATION**

1.    ***The Overdetention Class is so Numerous that Joinder of All Members is Impracticable.***

Rule 23(a)(1) provides that a class action may be maintained only if "[t]he class is so numerous that joinder of all members is impracticable". <u>Bynum I</u>, 214 F.R.D. at 32.

The party moving to certify the class need not supply the exact numbers of the class. <u>Bynum I</u>, 214 F.R.D. at 41. Moreover, the numerosity requirement does not require a large number of plaintiffs, nor does it require that the exact number of class members or their identities be alleged. <u>Johns v. DeLeonardis</u>, 145 F.R.D. 480 (N.D. Ill. 1992) (numerosity requirement satisfied and class certified where approximately twenty-five women were subjected to illegal strip search by Chicago police officers in a police raid). To satisfy the numerosity requirement, "Plaintiffs need only show that the number is sufficiently large such that it would be extremely difficult or inconvenient to join all the members of the class." <u>Franklin</u>, 909 F. Supp. at 30, (<u>citing</u> <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993). This Court has held that generally 40 members will satisfy the numerosity requirement, but has noted that approximately 20 will suffice. <u>Neal v. Moore</u>, 1994 U.S. Dist. LEXIS 21339, *24

13

(D.D.C. 1994); <u>Bynum I</u>, 214 F.R.D. at 32-33.

Plaintiffs submit herewith affidavits of 21 persons who have been held past their court ordered release dates without legal justification since November, 2005. Plaintiffs' Exhibit # 1-14 and 16-22. Each one of these persons is a member of the proposed Overdetention Class the start date of the proposed class is September 1, 2005). These affidavits do not constitute a complete list of class members. The full number will only be known after defendant produces the relevant computer records with the relevant fields.

### 2.     *The  Overdetention Class Presents Several Common Questions of Law and Fact.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." It is not necessary that every issue of law or fact be the same for each class member. <u>Bynum I</u>, 214 F.R.D. at 33-34. The commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members even if there are factual variations among the class members. Id.  See <u>Smith v. Montgomery County, M.D.</u>, 573 F. Supp. 604, 611 (D. Md. 1983)(class of temporary detainees strip searched without probable cause to believe that they possessed either weapons or contraband certified); <u>Doe v. Calumet City, Illinois</u>, 707 F. Supp. 343, 345 (N.D. Ill. 1990) (plaintiffs not required to show that

14

defendant lacked reasonable belief that individual plaintiffs were concealing weapons or contraband where plaintiffs had shown the strip search policy to be routine and indiscriminate).  As the leading treatise on class action litigation states, "when the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected."  Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u>, § 3.10 (4th ed. 2002).

Plaintiffs satisfy this requirement because the following issues of law and fact are common to all members of the proposed Overdetention Class:

a)    whether the Constitution provides a maximum length of time measured in hours beyond which the District cannot hold a person to perform administrative tasks incident to release before releasing that person from jail;

b)    whether the District has exceeded that maximum for each class member;

c)    whether the District has a pattern and practice of holding detainees and inmates past their release dates;

15

d)    whether the District has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates by holding them past their release dates;

e)    whether the District's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

f)    whether such policy, if found to exist, violates the Fourth and/or Fifth Amendments;

g)    whether plaintiffs and the members of the Overdetention Class and future members are entitled to equitable relief, and, if so, what is the nature of that relief; and

h)    whether determination of damages suffered by a statistically representative sample of the Overdetention Class provides the basis for determination of all class members' damages except those who opt out.

### 3.    *The Named Plaintiffs Raise Claims Typical of the Proposed Overdetention Class.*

Rule 23(a)(3) mandates that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  The Overdetention Class Named Plaintiffs meet the typicality requirement.

While commonality requires a showing that the members of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the representatives of the class suffered a similar injury from the same course of conduct. Bynum I, 214 F.R.D. at 34-35. This Court has explained that the purpose of the typicality requirement is to "ensure[ ] that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class." Littlewolf v. Hodel, 681 F. Supp. 929, 935 (D.D.C. 1988) (citation omitted). It has also explained that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." Stewart v. Rubin, 948 F. Supp. 1077, 1088 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997). The requirement has been liberally construed by courts. See In re Vitamins Antitrust Litig., 209 F.R.D. 251, 260 (D.D.C. 2002) (citing cases).

If the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims. Bynum I, 214 F.R.D. at 35. The claims of the named plaintiffs are founded upon the same legal theory as those of the other plaintiffs - that defendant violated

Section 1983 when it overdetained them in the DC Jail or CTF or a halfway house after a judge ordered them released, in violation of the Fourth, Fifth and Eighth Amendments.  Additionally, the alleged injuries suffered by the named plaintiffs arise from the same conduct that gave rise to the claims of the other class members, namely, defendant's overdetaining them in the DC Jail or CTF or a halfway house after a judge ordered them released.

### 4.  *Adequacy of Representation: Class Representatives Adequately Represent the Class; Class Counsel Adequately  Represent the Class*

Rule 23(a)(4) demands that the class have adequate representation.  <u>Coleman v. Pension Benefit Guaranty Corp.</u>, 196 F.R.D. 193, 198 (D.D.C. 2000); <u>Pigford</u>, 182 F.R.D. at 350; <u>Kifafi</u>, 189 F.R.D. at 177; <u>Vargas</u>, 119 F.R.D. at 295.  Adequacy involves both adequacy of the named plaintiff and adequacy of counsel.  This requirement is met when: (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class; and (2) counsel for the class is competent to represent the class.  <u>Twelve John Does v. District of Columbia</u>, 326 U.S. App. D.C. 17, 117 F.3d 571, 575 (D.C. Cir. 1997).

In this case, no conflicts of interest exist between the representative plaintiffs and the proposed class.  The named plaintiffs seek to redress the deprivation of rights conferred upon them by the United States Constitution.  The representative plaintiffs'

interests do not conflict with those of the putative class. Just the opposite, the issues presented by the named representatives mirror those faced by the putative class, which stands only to gain by this action.

Rule 23(g)(1)(C)(i) requires the Court to appoint adequate counsel to represent the class. Rule 23(g) requires that the court must consider the following in appointing class counsel: "[(1)] the work counsel has done in identifying or investigating potential claims in the action, [(2)] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [(3)] counsel's knowledge of the applicable law, and [(4)] the resources counsel will commit to representing the class." See e.g. Bynum v. Gov't of the Dist. of Columbia, 384 F. Supp. 2d 342, 366 (D.D.C. 2005): Noble v. 93 Univ. Place Corp., 224 F.R.D. 330 (D.N.Y. 2004). The court may consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(C)(ii).

Plaintiffs' counsel have done extensive research in this case, including taking numerous affidavits and interviewing numerous persons who have knowledge of the case. Plaintiffs' counsel William Claiborne and Ralph Robinson have met with numerous community and public interest groups to prepare for the case, and have interviewed many persons who have been incarcerated in the DC Jail, CTF and

halfway houses.  Mr. Claiborne and Mr. Robinson have also interviewed many

attorneys who practice criminal defense law in the District of Columbia Superior

Court and the District of Columbia District Court.  Mr. Claiborne himself has

formerly practiced criminal defense law in the District of Columbia Superior Court

and still represents indigent defendants there on a pro bono basis.  Ralph Robinson

regularly represents defendants in criminal cases in the Superior Court.

   The attorneys are experienced civil rights class action litigators who have

participated in multiple class actions.  This Court has previously ruled that William

Claiborne and Barrett Litt are competent to represent the plaintiffs in the Bynum case

Bynum v. Government of the District of Columbia, 02-956(RCL).  Bynum v. Gov't of

the Dist. of Columbia, 384 F. Supp. 2d 342 (D.D.C. 2005) (confirming William

Claiborne and Lynn Cunningham as class counsel, and appointing Barrett S. Litt as

class counsel).

   Plaintiffs' counsel will include (if admitted pro hac vice) Litt, Estuar, Harrison,

Miller & Kitson, a firm specializing in civil rights and Fourth Amendment litigation.

Litt, Estuar is a boutique, civil rights and public interest law firm specializing in all

types of civil rights litigation, including police abuse and class action cases. Mr. Litt

has handled numerous class actions, including several in this court. He was lead

counsel in the largest Overdetention case to date in the country, Williams v. Block, in

Los Angeles, which settled for $27 Million (including claims for illegal strip searches after being entitled to release and returned from court).

The resumes for Messrs. Claiborne and Litt and Robinson are attached as Plaintiffs' Exhibits ## 23 and 24.

### C. RULE 23(B)(2): PLAINTIFFS SATISFY RULE 23(B)(2) REQUIREMENTS FOR CERTIFICATION OF CLASS FOR INJUNCTIVE RELIEF

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted .... on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The complaint challenges defendant's blanket policy and practice of holding inmates in the DC Jail and CTF and the halfway house after a judicial officer has ordered them released, and so certainly, plaintiffs allege this is a case in which defendant has acted on grounds "generally applicable to the class."

Defendant carries out the overdetentions under an entrenched practice that reaches the level of a policy. Plaintiffs satisfy this requirement even if defendant carries out the overdetentions pursuant to an entrenched practice rather than a written policy, because defendant "has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1775 (2d ed.

21

1986) cited by Bynum I, 214 F.R.D. 37-38.  See also, Jones v. Goord, 190 F.R.D.

103, 112 (S.D.N.Y. 1999) (certifying a (b)(2) class of prisoners alleging that they

were unconstitutionally double-celled, "notwithstanding defendants' argument that

matters such as inmate screening is done on a case-by-case basis by different prison

officials at different facilities").

　　　　Moreover, this case meets the certification requirements of both FRCP 23(b)(2)

and (b)(3).  Therefore, the Court can certify a "hybrid" Rule 23(b)(2) and (b)(3) class,

as demonstrated below.  Bynum I, 214 F.R.D. at 38-39, citing Eubanks v. Billington,

110 F.3d 87, 96 (D.C. Cir. 1997).

　　　　The Eubanks Court held that:

> when a (b)(2) class seeks monetary as well as injunctive or declaratory relief
> the district court may exercise discretion in at least two ways. The court may
> conclude that the assumption of cohesiveness for purposes of injunctive relief
> that justifies certification as a (b)(2) class is unjustified as to claims that
> individual class members may have for monetary damages. In such a case, the
> court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims
> for declaratory or injunctive relief, and a (b)(3) class as to the claims for
> monetary relief, effectively granting (b)(3) protections including the right to
> opt out to class members at the monetary relief stage. Alternatively, the court
> may conclude that the claims of particular class members are unique or
> sufficiently distinct from the claims of the class as a whole, and that opt-outs
> should be permitted on a selective basis. . . . We view Rule 23(d)(5) to be broad
> enough to permit the court to allow individual class members to opt out of a
> (b)(1) or (b)(2) class when necessary to facilitate the fair and efficient conduct
> of the litigation.

Eubanks, 110 F.3d at 96.

The <u>Eubanks</u> decision thus presents this Court with two options in cases such as the present action: it may decide to certify a "hybrid" (b)(2) and (b)(3) class, or it may certify a (b)(2) class and afford individual class members the due process protections afforded to (b)(3) class members.

Plaintiffs have satisfied the requirements of certifying the present action as a (b)(3) class action including the Rule 23(b)(3) "predominance" test, as plaintiffs show below. Therefore, the Court can certify the present action as a hybrid (b)(2) / (b)(3) class action, a form expressly authorized by the D.C. Circuit in <u>Eubanks</u>, as this Court held in the opinion certifying the Overdetention Class component of this case. <u>Bynum I</u>, 214 F.R.D. at 41.

As the Court stated in <u>Bynum I</u> certifying the Overdetention Class,

"…the Court [may] certify a (b)(2) class with respect to the plaintiffs' claims for injunctive and declaratory relief, and a (b)(3) class with respect to their claims for monetary damages. All of the class members with damages claims against defendant will thus be afforded all of the due process protections afforded to members of a (b)(3) class, including notice and opt-out rights. The maintenance of this action as a hybrid class action will provide a just and efficient forum for the resolution of all of the claims asserted."

<u>Bynum I</u>, 214 F.R.D. at 41.

## D. RULE 23(B)(3): PLAINTIFFS SATISFY RULE 23(B)(3) REQUIREMENTS FOR CERTIFICATION OF CLASS FOR MONEY DAMAGES

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Bynum I, 214 F.R.D. at 39.  In making the (b)(3) certification determination, the Court should consider four factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Id.

These requirements may also be divided into two separate requirements: (1) that factual and legal questions common to the class members predominate over any such questions affecting only individual class members, and (2) that maintaining the action as a class action will be superior to other available methods of adjudication. Id. at 39.

### 1.    *Common Questions of Law and Fact Predominate.*

The first requirement is that common factual and legal issues predominate over any such issues that affect only individual class members.  There is no magic formula in making this determination.  <u>Bynum I</u>, 214 F.R.D. at 41.  The common questions of law and fact "predominate over any questions affecting only individual members" in this case because the allegations of an unconstitutional custom and practice of overdetentions relate to the **defendant's conduct**, and therefore proof of liability will not vary among the class members.  See <u>In re Vitamins Antitrust Litig.</u>, 209 F.R.D. 251 (D.D.C. 2002) (common question predominated in an antitrust case because where the allegations of price-fixing related to the defendant's conduct, the proof would not vary among the class members).

Generally speaking, if the action complained of on behalf of the putative class members arises out of a single set of operative facts, then the commonality requirement will have been satisfied.  If that common nucleus of operative facts forms the central issue in the case, even if individualized issues of proof are present, the predominance hurdle will have been cleared.  <u>Dornberger v. Metropolitan Life Insurance Company</u>, 182 F.R.D. 72, 77 (S.D. N.Y. 1998) (Rule 23(b)(3) class where insurance policies sold in nine overseas countries without regulatory approval).  <u>See also</u> <u>Wells v. Allstate Insurance Co.</u>, 210 F.R.D. 1, 12 (D.D.C. 2002) (Rule 23(b)(3)

class certified where common questions predominated in consumer action involving denial of insurance claims); Rossini v. Olgivy & Mather, 798 F.2d 590, 598-599 (2d Cir. 1986) (reversing decertification of Rule 23(b)(3) class as to employee claims of sex discrimination in training and promotion alleging pattern and practice of employer).

Plaintiffs can point to at least two key questions, one of fact and one of law, common to all overdetention plaintiffs – whether defendant has a custom, or pattern and practice, of holding inmates in the DC Jail or CTF or a halfway house after a judge has ordered their release, and whether the overdetentions violate the Constitution – the resolution of which would dispose of the issue of whether defendant is liable to plaintiffs. This suffices to show that common questions of law and fact predominate over any questions affecting individual members. Bynum I, 214 F.R.D. at 39. The leading commentators on the federal courts endorse this view, and have explained that "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though important matters will have to be tried separately." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (2d ed. 1986).

Damages determinations will not overpower the predominance in this case.

First, the presence of individual damages does not preclude a finding that common questions of law and fact predominate over any individual questions.  See McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984).  This Circuit has long held that the mere existence of individual damages issues in a (b)(3) class does not cause individual issues to predominate over common issues on liability or causation so as to justify denying certification of the class, when the liability issue is susceptible of class proof.  McCarthy, 741 F.2d at 1415.

The First, Second, Fourth, Fifth, Sixth, Seventh and Eleventh Circuits, have recently reaffirmed that the mere existence of individual damages issues in a (b)(3) class does not cause individual issues to predominate over common issues on liability or causation so as to justify denying certification of the class, when the liability issue is susceptible of class proof. Tardiff, 365 F.3d at 6; In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 141 (2d Cir. 2001); Gunnells v. Healthplan Servs., 348 F.3d 417, 426 (4th Cir. 2003); Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, (5th Cir. 2001); Carnegie v. Household Int'l, Inc., 2004 U.S. App. LEXIS 14635 (7th Cir. July 16, 2004) and Allapattah Servs. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. Fla. 2003); Klay v. Humana, Inc., 382 F.3d 1241, 1259 (11th Cir. 2004). The First, Second and Seventh Circuits have recently gone further and recognized that since most class actions settle, manageability (including predominance issues)

issues – which generally do not arise until the damages phase – will in fact never

arise at all. As the Seventh Circuit stated in <u>Carnegie</u>, 2004 U.S. App. LEXIS 14635,

* 10 (Posner, J.):

> Often, and possibly in this case as well, there is a big difference from the standpoint of manageability between the liability and remedy phases of a class action. The number of class members need have no bearing on the burdensomeness of litigating [RICO liability]. Whether particular members of the class were defrauded and if so what their damages were are another matter, and it may be that if and when the defendants are determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief. That prospect need not defeat class treatment of the question whether the defendants violated RICO. Once that question is answered, if it is answered in favor of the class, a global settlement along the lines originally negotiated (though presumably with different dollar figures) will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. (internal citations omitted)

In this case, individual damage issues are obviated by plaintiffs' proposed

sampling procedure, which this Court approved in the <u>Bynum</u> case.  <u>Bynum v.</u>

<u>District of Columbia</u>, 02-956(RCL) (docket # 110, 3/22/04).

The proof needed to resolve the liability issue will primarily be testimony and affidavits by persons held in the DC Jail or CTF or halfway house after being ordered released, Records Office staff and the Department of Corrections, and defendant's computer data (from the Department of Corrections' JACCS booking computer, and, if neccassary, the Superior Court's CIS court docketing system).  The case will involve generalized evidence which will prove or disprove liability on a class-wide basis, and resolution of that question will dispose of the issue of defendant's liability to plaintiffs in this action.[2]

### 2.    *Treatment as a Class Action is Superior.*

"Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.'"  Wells v. Allstate Ins. Co., 210 F.R.D. 1, 12 (D.D.C. 2002 ) (quoting Dellums v. Powell, 566 F.2d 167, 189 (D.C. Cir. 1977)).

Class treatment is appropriate for cases like this one, in which the individual claims of many of the putative class members are so small that it would not be economically efficient for them to maintain individual suits. Thus, for example, in a case where the plaintiffs sought certification of a class of African-American women

---

[2] See In re Lorazepam, 202 F.R.D. at 29.

alleging that they had been unlawfully detained and searched at a major airport, the

court determined that class treatment would be a superior method of adjudication:

> There may be a significant savings of judicial and legal resources by
> jointly resolving the issues of whether plaintiffs were entitled to a
> judicial determination of their being held and whether they were entitled
> to be able to contact others. If liability is proven, many of the plaintiffs
> may not be entitled to a large amount of damages because not held for a
> lengthy period of time. Therefore, for those plaintiffs, a class action may
> be the most practical means for resolving these issues.

Anderson v. Cornejo, 199 F.R.D. 228, 243 (N.D. Ill. 2000).  Similarly, in Smith v.

Montgomery County, Md., 573 F. Supp. at 613, the court certified a class of persons

alleging they had been unlawfully strip-searched at a county detention center,

explaining that "resolution of the liability and damages issues within the context of a

class action is far more efficient than individual prosecution of damages actions.  A

class action is also the fairest means to settle this controversy since it is unlikely that

most class members would pursue these claims on their own."

Realistically, damages for the overdetentions will be inadequate to attract

sufficient counsel to represent individuals on a case-by-case basis.  The class action

is, therefore, the only method available to most class members for obtaining any

redress at all. Separate counsel for individual class members is simply not available.

Moreover, if separate counsel were available, managing hundreds, much less

30

thousands of individually filed lawsuits would create a serious administrative challenge for the Court.

Class action treatment is the superior form of adjudication because the class members could not afford to bring individual lawsuits because their claims are too small. Gunnells v. Healthplan Servs., 348 F.3d 417, 426 (4th Cir. 2003).

The case is manageable as a class action because all questions of liability and damages can be calculated using information in the defendant's computer databases,[3] and damages can be calculated in individualized proceedings, Gunnells v. Healthplan Servs., 348 F.3d 417, 425, 429 (4th Cir. 2003), or by statistical sampling as described in plaintiffs' trial plan and expert opinion from Dr. Berk. (see below).

Secondly, plaintiffs can establish aggregate damages for the class using a representative sample chosen under court supervision from which damages could be extrapolated for the whole class. See Hilao v. Estate of Marcos, 103 F.3d 767, 774 (9th Cir. 1996); Newberg on Class Actions, Chapter 10, Proof and Distribution of Aggregate Class Damages. Attached hereto as Plaintiffs' Exhibit 26 is an affidavit from Richard Berk, Ph. D., plaintiffs' statistical expert, rendered in a similar case

---

[3] See Southwestern Bell Mobile Systems, Inc., d/b/a Cellular One, (No. 02-1760) 2003 U.S. App. LEXIS 4020; Spriggs, Representing Plaintiffs in Title VII Cases: Use of the Defendant's Electronic Records, Ch. 15.

plaintiffs' counsel are prosecuting in Atlanta, Georgia, explaining how plaintiffs could establish damages for the class using a representative sample chosen under court supervision from which damages could be extrapolated for the whole class. Professor Berk's CV and other information about him is available at http://www.stat.ucla.edu/~berk/.  Plaintiffs will obtain an opinion from Dr. Berk tailored to this case if the Court grants this motion.  But, the general sampling principles are applicable to this case.

The plaintiffs in Dellums v. Powell, *supra,* whose claims included a claim for damages arising from overdetention, submitted a damages question to the jury that allowed the jury to assign a schedule of damages based on length of detention that was then to be applied to the plaintiffs on a ministerial basis.  566 F.2d at 208.  Working with the Form of Verdict designed by the district court, the jury was able to award damages along a sliding scale which took into account, in a rough way, the different experiences of different members of the class, without losing administrative feasibility.  Id.

This Court approved a trial plan using this methodology in the Bynum case. Attached is a proposed trial plan for this case.  Plaintiffs' Exhibit # 27.

In this matter, it is plain that the challenges of managing a class action are minimal while the benefits are considerable.  Members of this class are easily identified from JACCS, the Department of Corrections computerized inmate

management system database. Additionally, the District of Columbia maintains the last address for Department of Corrections' inmates, thus facilitating the process of notification. Other advantages are similarly obvious: the failure to certify this class will effectively extinguish any hope that the majority of class members have for recovering damages for their injuries. This may be the strongest argument in support of class certification.

As for the notice requirement, Rule 23(c)(2) requires only that the Court "direct to the  members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Defendant has a last known address for each inmate that it has incarcerated in JACCS or in the Superior Court CIS. Sending notices to the last known address for each former inmate who is a member of the class, and whose current address cannot be identified through reasonable efforts (e.g., Internet searches), will satisfy the "individual notice" requirement of the Rule. As for class members who cannot be identified through reasonable efforts, plaintiffs need only provide them with the best notice practicable under the circumstances. Plaintiffs' proposed notice procedures are attached as part of plaintiffs' proposed trial plan. Plaintiffs' Exhibit # 26.

Here, the common questions clearly do predominate, treatment as a class action is superior and certification should be granted.

33

## IV.   **APPLICATION OF LAW TO THE STRIP SEARCH CLASS**

The Strip Search Class also satisfies the Rule 23 criteria for certification as a "hybrid" class under both 23(b)(2) and (3).  See, e.g., Eubanks v. Billington, 1997 U.S. App. LEXIS 6654 (D.C. Cir. 1997); Bynum v. District of Columbia, 214 F.R.D. 27 (D.D.C. 2003) (overdetention class)("Bynum I"); Bynum v. District of Columbia, 217 F.R.D. 43 (D.D.C. 2003)(strip search class) ("Bynum II").  Plaintiff therefore moves the Court to certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class on damages for the Strip Search Class as well.

The Second Amended Complaint defines the proposed Strip Search Class as:

> Each person who was, or in the future will be, from September 1, 2005, forward: (i) in the custody of the Department of Corrections; (ii) taken to court from a Department of Corrections facility; (iii) ordered released by the court or otherwise became entitled to release by virtue of the court appearance because the charge on which he had been held was no longer pending or was dismissed at the hearing, was ordered released on his own recognizance, or had posted bail, was sentenced to time served, was acquitted or was otherwise entitled to release; (iv) was not the subject of any other pending case or cases which imposed any condition of release other than personal recognizance; (v) was not the subject of any detainer or warrant; (vi) was returned from court to the DC Jail or CTF or other District facility, to be processed out of Department of Corrections custody; and (vii) was subjected to a strip search and/or visual body cavity search without any individualized finding of reasonable suspicion or probable cause that he was concealing contraband or weapons; before being released, regardless of whether he was overdetained.

The definition of the proposed Strip Search Class overdetention claim set forth in plaintiffs' Second Amended Complaint easily satisfies the requirement that a class exist because plaintiffs' proposed Strip Search Class class definition sets forth general parameters that limit the scope of the class to such a degree that it is administratively feasible for the Court to determine whether a particular individual is a member of the Strip Search Class.  Bynum I, 214 F.R.D. at 31-32.

Additionally, the Strip Search Class satisfies the four requirements of Fed. R. Civ. P. 23(a).  The Strip Search Class satisfies the numerosity because there are more than 40 people in the class, and joinder is impractical.  Plaintiffs submit 17 affidavits from potential Strip Search Class members.  Plaintiffs' Exhibits ## 1-14 and 16-18 (affidavits from 17 potential Strip Search Class class members).  Other Strip Search Class members exist because during any given week, the number[4] of court returns

_____

[4] Plaintiffs submitted an affidavit in Bynum v. District of Columbia, 02-956(RCL) by Tony Savage who worked for the Department of Corrections from at least 1999 till January 2003.  Mr. Savage estimates, based on his personal experience performing the jobs in the Records Office and the Superior Court, that during the period of time running from January 1, 1999 up to the date he stopped working in the Records Office, January 31, 2003, during any given week, the number of court returns returning from either the District of Columbia Superior Court or the District of Columbia District Court who were entitled to release from Department of Corrections custody because they had no other pending cases on which they were being held, or they were not subject to detainers or warrants, was, at a minimum, 1 per day and, on average, about 5 per day.  Savage Affidavit, ¶ 45.  Mr. Savage notes in his affidavit that 1-5 per day is a conservative estimate, and that the daily numbers during 1999 up

returning from either the District of Columbia Superior Court or the District of

Columbia District Court who were entitled to release from Department of Corrections

custody because they had no other pending cases on which they were being held, or

they were not subject to detainers or warrants, was, at a minimum, 1 per day and, on

average, about 5 per day.  Savage Affidavit, Plaintiffs' Exhibit # 34 to Bynum

plaintiffs' second motion to certify, filed 5/5/2003 (docket # 83), Bynum v. District of

Columbia, 02-956(RCL).  At least some of these are strip searched illegally.  There

are numerous common questions of law and fact.  Second Amended Complaint ¶ 18.

The claims of Carl A. Barnes, David Peterson, Toney James Malloy and Maurice

Williams are typical of the Strip Search Class, and they adequately represent the

class, for the reasons given above.  William Claiborne and Barrett Litt can adequately

represent the class under Fed. R. Civ. P. 23(g), for the reasons stated above.  Their

affidavits are attached as Plaintiffs' Exhibits 23 and 24.

The Strip Search Class qualifies for class action treatment under Rule 23(b)(2)

because all plaintiffs are affected by defendant's common policy or practice.  Also,

since plaintiffs satisfy the (b)(3) requirement, this case qualifies for class action

treatment as a hybrid class.

---

to January 31, 2003, often reached as many as 15 inmates on any given Friday.  Id.

Questions of law and fact predominate.  Resolution of defendant's liability in the case turns on two of the many common questions of law and fact, does the Department of Corrections have a practice or policy of subjecting court returns entitled to release to suspicionless strip searches after a judge has ordered their release, and does this practice/ policy violate the Constitution, and this suffices to establish predominance.  <u>Bynum I</u>, 214 F.R.D. at 39.

Finally, class action treatment is the superior method, for the reasons discussed above in connection with the Overdetention Class.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Overdetention Class Named Plaintiffs' motion and the Strip Search Class Named Plaintiffs' motion for class action treatment pursuant to FRCP 23(a) and 23(b)(2) and 23(b)(3) should be granted.

Respectfully submitted,

_____sig_____
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for plaintiffs
717 D Street, NW , Suite 210
Washington, DC 20004
Phone 202/824-0700
Fax 202/824-0745