UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Carl A. Barnes, et al. on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Government of the District of Columbia,<br><br>Defendant | Case Number 06-315(RCL) |

## DECLARATION OF BARRETT S. LITT

I, BARRETT S. LITT, declare:

1. I am an attorney duly licensed to practice law in the State of California. I am admitted to the United States Supreme Court, and my application to appear *pro haec vice* in this district for this case will be submitted. (I was appointed class counsel *pro haec vice* in the related case of Bynum v. District of Columbia.). The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify to those facts in a court of law.

1

1449-501016

0023- 001

2.  This declaration is submitted in support of plaintiffs' Motion for Class Certification, and specifically will address the issue of adequacy of representation, my experience, and my approach to cases of this type, of which I have handled several.

## GENERAL QUALIFICATIONS

3.  I am an attorney duly licensed to practice in the State of California and in the Central District of California. I graduated from the University of California at Berkeley in 1966 and from UCLA Law School in 1969. For the first approximately ten years of my practice, I focused primarily in the area of criminal defense at the trial and appellate levels, mostly in the federal courts. In that capacity, I handled hundreds of matters, tried many cases ranging from immigration offenses to murders, and handled numerous appeals. For the past approximately 25 years, I, as well as the firms in which I have been a principal, have focused primarily on complex civil litigation in the areas of constitutional law, civil rights law, class action litigation, and complex multi-party litigation.

4.  I have been a partner in the law firm of Litt, Estuar, Harrison, Miller and Kitson for the past approximately two years. For the previous seven years I was the principal in the law firm of Litt & Associates, Inc., in which the partners in my current firm were trained. From September 1,

2

1991 to May 1, 1997, when my then partner left the law firm to become Deputy General Counsel for Civil Rights at HUD, I was a partner at the firm of Litt & Marquez. And for the seven years prior to that, I was a partner in the firm of Litt & Stormer, Inc.

5. My current and former firms all operated for the specific purpose of developing and maintaining a civil rights and public interest law practice which operates in the private sector on the basis of self-generated fee awards and other recoveries. Litt & Stormer received the Pro Bono Firm of the Year Award from Public Counsel in 1987 in recognition of its public interest and civil rights work. Litt & Marquez received an award from the NAACP Legal Defense Fund in July, 1992, as civil rights firm of the year in recognition of its civil rights work. I received an award from UCLA School of Law as its public interest alumnus of the year in 1995. I have both spoken and written on the subject of civil rights training. I recently published an article entitled "Class Certification in Police/ Law Enforcement Cases" in *Civil Rights Litigation and Attorney's Fee Annual Handbook*, Vol. 18, Ch. 3 (West Publishing 2002). In January of 2006, the Los Angeles Lawyer (the publication of the Los Angeles County Bar Association) published an article I authoredentitled "Using Civil Code Section 52.1 To Certify Money Damages Classes For Violation Of Civil Rights," an article addressing the

use of California's general civil rights statute's minimum damage provision in the context of civil rights class actions.

    6.    Civil rights law enforcement class actions in which I am or have been the, or one of the, lead counsel, going back to the late 1980's, include:

- *Williams v. Block*, Case No. CV-97-03826-CW (Central District of California) and related cases (a series of cases county jail overdetention and strip search cases, settled for $27 Million and a complete revamp of jail procedures);

- *Wisely v. State of California*, Case No.: BC 227373 (Superior Court of California)(settled injunctive relief class action regarding the policy and practice of the State Department of Corrections to randomly subject visitors to the prisons to intrusive body scans, and to subject those who "failed" the scan to a visual body search; dismissal of damages on state immunity grounds on appeal);

- *Bynum v. District of Columbia*, Case No. 02-956 (RCL) (D.D.C.)( class action against the District of Columbia for overdetentions and blanket strip searches of persons ordered released from custody; final approval of $12,000,000 settlement occurred January 2006);

4

* *Johnson v. District of Columbia*, Case No. 02-2364 (RMC) (D.D.C.) (pending class action against the District of Columbia and United States Marshals for blanket strip searches of arrestees without reasonable suspicion and not involved in drug or violent activity; eight figure settlement agreed to pending final Justice Department approval of settlement documents);

* *Powell v. Barrett*, Civil Case No. 1:04-cv-1100 (N.D. Ga.)(RWS)(pending class action against the Sheriff of Fulton County, Fulton County, and the City of Atlanta, Georgia, for overdetentions and blanket strip searches of arrestees and persons ordered released from custody);

* *Jones v. Murphy*, Case No. CCB 05 CV 1287 (D. Maryland)(pending class action challenging overdetentions and illegal strip searches in Central Booking in Baltimore, MD);

* *Craft v. County of San Bernardino*, No. EDCV05-0359 SGL (C.D. Calif.) (pending class action for illegal strip searches of arrestees, of those entitled to immediate release, and for lack of privacy in conduct of searches);

5

- ❖ *Davis v. County of Los Angeles*, No.: CV 04-8251 AHM (MANx) (C.D. Calif.) (pending class action for failure to adequately address spread of MRSA in the Los Angeles County jail).

7. Other civil rights class actions in which I was the, or one of the, lead counsel, going back to the late 1980's, include:

- ❖ *Ofoma v. Biggers*, Case No.: 715400 (Complex Litigation Panel) (Orange County Superior Court)(family discrimination class action settled in 1996 for damages for the individual plaintiffs and the class of residents, a consent decree and an award of attorney's fees);

- ❖ *People of the State of California v. Highland Federal Savings and Loan*, Case No.: CA 718 828 (Los Angeles Superior Court)(class action filed on behalf of the People of the State of California and a class of tenants residing in several slum buildings located in Los Angeles for financing practices encouraging and perpetuating slum conditions, settled for $3.165 million after decision in *People v. Highland*, 14 Cal.App.4th 1692, 19 Cal. Rptr. 555 (1993) established potential liability for lenders);

- ❖ *Hernandez v. Lee*, No. BC 084 011 (Los Angeles Superior Court)(a class action on behalf of tenants of numerous buildings for slum conditions settled in 1998 for $1,090,000);

1449-501021

0023- 006

- *Mould v. Investments Concept, Inc.*, Case No.: CA 001 201 (Los Angeles Superior Court)(race discrimination class action on behalf of a class of applicants and potential housing applicants, settled in 1992 for a total of $850,000 for the class and a comprehensive consent decree regarding the defendants' discriminatory policies and practices);

- *California Federation of Daycare Association v. Mission Insurance Co.*, Case No.: CA 000 945 (Los Angeles Superior Court)(class action on behalf of several thousand family daycare providers whose daycare insurance policies were canceled mid-term or were not renewed by Mission Insurance Company, settled in 1980's for reinstatement of policies and attorney's fees; brought at request of Public Counsel).

8.  Individual or multi-plaintiff civil rights cases in which I am or have been the, or one of the, lead counsel, going back to the late 1980's, include:

- *McClure v. City of Los Angeles*, No. CV-92-2776-E (C.D. Cal.)(fair housing and equal protection case against City of Long Beach and its agents for preventing six group homes for Alzheimer's victims from opening; jury verdict of $22.5 Million (reduced on remittitur to

7

$13,826,832) plus approximately $10,000,000 in attorney's fees and costs) (appeal pending);

- *U.S. v. Hovsepian*, 359 F.3d 1144, 1147 (9th Cir. 2004)(en banc) (successful action to naturalize individuals previously convicted of conspiracy to bomb Turkish consulate in Philadelphia), aff'd after remand, 422 F.3d 883 (9/6/05);

- *Walker v. City of Lakewood*, 263 F.3d 1005 (9th Cir. 2001) (reversing district court decision dismissing fair housing organization's claim against city for retaliation for supporting tenants suing landlord; case subsequently settled for structural relief, damages and attorney's fees);

- *Hospital and Service Employees Union, SEIU Local 399, AFL-CIO v. City of Los Angeles* (Los Angeles Superior Court) (a settlement in 1993 of $2.35 million against the Los Angeles Police Department for injuries to 148 demonstrators at Century City organized by the Justice for Janitors campaign of SEIU);

- *Rainey v. County of Ventura*, Case No. 96 4492 LGB (C.D. Calif.)(action against County of Ventura for race discrimination on behalf of 12 police officers, settled for damages, structural relief and attorney's fees);

- *Lawson v. City of Los Angeles*, Case No.: BC 031 232 (Los Angeles Superior Court)(lawsuit filed in 1991 on behalf of individuals who had been subject to what we alleged were unlawful use of force practices by the Los Angeles Police Department's Canine Unit, settled in 1995 for $3.6 million and comprehensive structural relief);

- *Tipton-Whittingham v. City of Los Angeles*, Case No.: CV-94-3240 (TH)(C.D. Cal.)(sex discrimination and harassment suit against the Los Angeles Police Department, involving over 25 individual officers, as a result of which the Department has already completely revamped its anti-discrimination policies and procedures; damages claims settled for $4.85 Million in 2004 in addition to separate fee award of nearly $2 Million in 2000 for injunctive relief, resulting in decision in *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, in which the California Supreme Court upheld catalyst fees under California law);

- *Tavelman v. City of Huntington Park* (individual employment discrimination case against the City on behalf of a Jewish police officer who had been subjected to a campaign of religious harassment, which was settled in mi-'90's for $350,000);

9

1449-501024

0023- 009

- *Hampton v. NRG* (racial harassment in employment claim; jury verdict of $1,000,000 for two former employees, plus award of attorney's fees and costs; settled in mid-'90's while on appeal);

- *Ware v. Brotman Medical Center* (Los Angeles Superior Court) (1993 $2.5 million jury verdict against hospital for removal of hospital privileges of black doctor; settled for $1.75 million);

- *Mathis v. PG&E* (1991 $2 million verdict against PG&E for barring contract employee from Diablo Canyon Nuclear Power Plant; reversed by the Ninth Circuit);

- *Zuniga v. Los Angeles Housing Authority* (1995) 41 Cal.App.4th 2 (holding that the Housing Authority could be held responsible for injuries to tenants after the Housing Authority was put on notice that tenants were being victimized on the premises and took no reasonable measures to prevent the injury; case settled for $1,040,000);

- *Macias v. State of California* (Los Angeles Superior Court) (action against the State of California and others for blinding of young man as a result of exposure to malathion spray, a portion of which was decided in *Macias v. State of California* (1994) 10 Cal.4th 844);

10

- *PIN v. HACLA*, Case No: CV-96-2810 RAP (RNBx)(action against the Housing Authority of the City of Los Angeles on behalf of several hundred present or former tenants for discrimination by failing to provide adequate security for isolated minorities in housing developments, settled in 1998 for $1.3 Million plus a comprehensive structural relief settlement agreement);

- *Melgar v. Klee* (Los Angeles Superior Court)(1988 $1.5 million jury verdict against Los Angeles Police Department for police shooting; settled for $1.45 million);

- *Heidy v. United States Customs Serv.*, 681 F.Supp. 1445 (C.D.Cal. 1988) (injunction against U.S. Customs Service for policies and practices of seizing materials from persons traveling from Nicaragua in violation of the First Amendment);

- *Hernandez v. Avol* (action on behalf of approximately 350 slum housing residents, settled in 1988 for a comprehensive injunction and $2.5 Million damages, plus a separate award of attorney's fees).

9. As my case list demonstrates, I have been involved and successful in a wide range of complex civil rights cases, including class actions such as this.

10. In the course of my work on law enforcement class actions, I have gained considerable experience in how to organize cases of this type and make them manageable. As the Court is aware from the *Bynum* litigation, there are District computerized records from which determinations regarding class membership can be made. The immediate focus of this case is to obtain meaningful court intervention since the unmonitored agreement to change the practices that were the subject of the *Bynum* litigation was apparently unsuccessful. Thus, plaintiffs contemplate filing a motion for preliminary injunction early in the litigation, and then turning to the question of compensation for those affected and long term injunctive relief to ensure that this problem does not recur.

11. As was evidenced by the course of the *Bynum* litigation, my co-counsel, William Claiborne, and I have both the resources and the experience and expertise to prosecute this case to resolution, and to fully represent the interests of the class.

I declare under penalty of perjury under the laws that the foregoing statements are true and correct. Executed at Los Angeles, California this 23rd day of May, 2006.

_____
Barrett S. Litt