UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLE A. BARNES, et al<br><br>Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br><br>Defendant | Civil Action No:   **06-315 (RCL)**<br><br>Next Event: None scheduled |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant's motion to dismiss should be denied on the overdetention claims because plaintiffs state a claim under 12(b)(6). The Court should enter judgment on the pleadings on plaintiffs' strip search claims because defendant does not oppose that claim nor did defendant file an answer or other pleading on that claim.

1

## I.  INTRODUCTION

Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment. The motion to dismiss was docketed as docket # 14. The motion for summary judgment was docketed separately as docket # 15.

By Order (docket # 17), this Court extended plaintiffs' deadline to file responsive pleadings to 8/1/06.  This is plaintiffs' opposition to defendant's motion to dismiss (docket # 14).  Plaintiffs file separately a Rule 56(f) motion pursuant to Fed. R. Civ. P. 56(f) in response to defendant's motion for summary judgment.

## II.  FACTUAL ALLEGATIONS

### A.  *Introduction*

Since at least approximately late December 2005, the District of Columbia Department of Corrections has resumed a practice of holding inmates in the DC Jail, or CTF, or halfway houses for periods of time from 1 day to a month after judicial officers (judges and magistrates of the District of Columbia Superior Court and the District of Columbia District Court) ordered them released. Plaintiffs' Second Amended Complaint[1]  (sometimes "SAC") ¶ 36.  The District of Columbia

---

[1] Plaintiffs base this motion on the allegations and class definitions in their Second Amended Complaint.  Plaintiffs filed their motion to amend the First Amended Complaint on 5/24/2006 (docket # 6). The Court granted the motion by Order dated 6/6/2006 (docket # 10).

Department of Corrections has also resumed, since approximately late December 2005, the practice of subjecting court returns ordered released at their court appearances, and who are not subject to any other cases on which they are being detained by holds or warrants, to suspicionless strip searches after a judicial officer has ordered them released. SAC ¶ 41.

### *Factual Background Of Overdetentions And Strip Searches*

The District of Columbia Department of Corrections holds prisoners committed by the District of Columbia Superior Court, the District of Columbia District Court, and other agencies, in the Central Detention Facility ("DC Jail"), the Correctional Treatment Facility ("CTF") and at various halfway houses located in the District of Columbia. Most prisoners held in the custody of the Department of Corrections are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

<u>The Inmate Management System</u>

The records office located at the DC Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the DC Jail, CTF and the halfway houses. SAC ¶ 28. The Records Office is responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are released according to their

Release Dates specified in their court orders. Id. The District of Columbia Superior Court enforces a policy pursuant to which an in-custody-defendant, or a defendant ordered into custody, may not leave the courtroom or even the Superior Court courthouse without a commitment order or release order for each case on which he appeared. "Handling of In-Custody-Defendants," Administrative Order No. 02-22, District of Columbia Superior Court, Chief Judge Rufus King, III, July 25, 2002. Superior Court website, http://www.dccourts.gov/dccourts/docs/02-22.pdf.

<u>The Overdetention Problem</u>

"Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date. SAC ¶ 31. "Release Date" for each detainee or inmate is the day on which the person is entitled to be released by court order, or the date on which the basis for his or her detention has otherwise expired. SAC ¶ 32. "Exit Date" for each detainee or inmate is the day on which the person is actually released from the custody of the District of Columbia Department of Corrections. SAC ¶¶31-33. The Department of Corrections had a long and documented history of overdetaining detainees and inmates past their release dates. Id at 34. In response to a class action lawsuit, the Department of Corrections instituted reforms that ameliorated, and for periods eliminated, the overdetention problem. However, in the last few weeks before the filing of this

4

complaint, and on information and belief particularly since late December 2005, the Department of Corrections has again begun overdetaining large numbers of inmates. SAC ¶¶ 36-37. The overdetention problem was especially severe in March and April because of problems with the Department of Corrections' computerized inmate population accounting system, and for other reasons. <u>Id</u> at 35-37. However, the overdetention problem continues.

<u>The Court Return Strip Search Problem</u>

Prior to late 2000 or early 2001, the Department of Corrections followed a practice under which most inmates taken from custody of the Department of Corrections to court, and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release, was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse. SAC ¶ 38.

In late 2000 or early 2001, the Department of Corrections instituted a policy under which every inmate taken from custody of the Department of Corrections to court, and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release, was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse. SAC ¶ 39. In August 2005, the Department of Corrections instituted a policy of diverting in-custody inmates ordered released, or otherwise entitled to

5

release from the Superior Court of the District of Columbia, to a holding facility on the grounds of DC General Hospital. SAC ¶ 40.  Here they would not be subject to a strip search, absent individualized suspicion, while the record review for detainers, warrants, and property retrieval was conducted prior to release.  <u>Bynum v. Gov't of the Dist. of Columbia</u>, 384 F. Supp. 2d 342 (D.D.C. 2005).  However, in the last few weeks before the filing of this complaint, and, on information and belief particularly since late December 2005, the Department of Corrections has been returning some in-custody inmates entitled to release from the courthouses to the DC Jail, or CTF, and subjecting them to strip searches without a finding of individual reasonable suspicion after a judge has ordered their release.  SAC ¶ 41.  The exact cause of the recent overdetentions and illegal court return strip searches is not known. On information and belief, the causes include recurring problems with the DC Jail's computerized inmate population accounting system, the deliberate indifference of acting warden Patricia Britton and acting director Elwood York, and the resignation of competent managers from the Records Office.  Records Room staff have communicated the overdetention problem to their superiors by e-mail, and by other written and oral communications.  SAC ¶¶ 42-44.  Their superiors are disregarding the problem, and acquiescing in the current overdetention and strip search problem.  The DC Jail maintains a release system "that simply delays all releases until the system, in its sweet time, and with the

resources it chooses . . . is ready to make releases." See Berry v. Baca, 379 F.3d 764, 768 (9th Cir. 2004).

### Plaintiffs' Claims

Plaintiffs' First Amended Complaint states two claims: the Overdetention Claim, alleging that the Department of Corrections holds inmates in the DC Jail or CTF after a judicial officer has ordered their release, and the Strip Search Claim, which states that the Department of Corrections subjects court returns entitled to release to suspicionless strip searches after a judicial officer has ordered them released.

## III.  STANDARD OF REVIEW

A court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004); Kinard v. United States DOJ, 2006 U.S. Dist. LEXIS 43410, 4-5 (D.D.C. 2006). Thus, in resolving a 12(b)(6) motion, the court must treat the complaint's factual allegations as true, and draw all reasonable inferences therefrom in the plaintiff's favor. Id. Even conclusory allegations of actual or constructive knowledge on the part of the District are sufficient under Fed. R. Civ. P. 12(b)(6). Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).

There is no heightened pleading requirement in cases involving civil rights claims. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 595 (1998) (rejecting a heightened pleading standard in a case involving qualified immunity and unconstitutional motive). Where the motion to dismiss is based on the allegation that the complaint sets forth a novel legal theory, the court should be especially reluctant to dismiss the complaint, and allow the plaintiff to develop the record and explore the theory in light of developed facts rather than pleadings. <u>McGary v. City of Portland</u>, 386 F.3d 1259, 1270 (9th Cir. 2004) ("the court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions") (quoting 5 C. Wright & A. Miller, <u>Federal Practice and Procedure: Civil</u> §1357)(citing cases).

## IV.  ALL PLAINTIFFS STATE OVERDETENTION CLAIMS.

The named plaintiffs state the following overdetention claims in their Second Amended Complaint.

| Name | Release Date | Exit Date | Days Overdetained |
|---|---|---|---|
| Malloy, Toney | 2/24/06 | 3/3/06 | 7 days |
| Barnes, Carl | 2/15/06 | 2/23/06 | 7 days |
| Hawkins, Dernard | 2/15/06 | 2/22/06 | 7 days |
| Peterson, David | 2/20/06 | 2/24/06 | 4 days |

8

| Williams, Maurice | 2/8/06 | 3/1/06 | 29 days |

District courts have held that post-release detentions of just a few hours are actionable under the fourth and fourteenth amendments. <u>Jones v. Cochran</u>, 1994 U.S. Dist. LEXIS 20625 (S.D. Fla. 1994)(three hours); <u>Arline v. City of Jacksonville</u>, 359 F. Supp. 2d 1300 at 8 (M.D.Fla.2005) (approximately two and a half hours); <u>Parilla v. Eslinger</u>, 2005 U.S. Dist. LEXIS 34747 (D. Fla. 2005)(approximately five hours after court ordered released and 14 hours after family paid bond).

Moreover, Courts of Appeals have held that post-release detentions ranging from ½ hour, <u>Young v. City of Little Rock</u>, 249 F.3d 730 (8th Cir. 2001), to 11 hours, <u>Lewis v. O'Grady</u>, 853 F.2d 1366, 1370 (7th Cir. 1988), to 29 hours, <u>Berry v. Baca</u>, 379 F.3d at 768, are actionable.

Plaintiffs sufficiently pled a municipal violation, but the overdetention events themselves establish a municipal practice/policy under Fed. R. Civ. P. 8. <u>Atchison v. District of Columbia</u>, 73 F.3d 418, 423 (D.C. Cir. 1996)(plaintiff satisfies Rule 8 in §1983 <u>Monell</u> claims by alleging (i) failure to train (ii) and an unusually serious instance of misconduct that, on its face, raises doubts about its training policies); <u>Miller v. Caldera</u>, 138 F. Supp. 2d 10, 12 (D.D.C. 2001) ("A complaint ... need not allege all that a plaintiff must eventually prove.") <u>citing</u>

Atchinson, 73 F.3d at 421-22.  The DC Jail maintains a release system "that simply delays all releases until the system, in its sweet time, and with the resources it chooses . . . is ready to make releases." Berry v. Baca, 379 F.3d at 768.  The plaintiffs in this case challenge the implementation of the Jail's policies, rather than the specific policies themselves. Id.  The DC Jail's unreasonably inefficient implementation of its administrative policies amounts to a policy of deliberate indifference to their constitutional rights.  Id.

## V.  ALL PLAINTIFFS STATE STRIP SEARCH CLAIMS.

Carl A. Barnes, David Peterson, Toney James Malloy and Maurice Williams allege that they were subjected to blanket strip searches and visual body cavity searches, after they were returned to a Department of Corrections facility, after a judge had ordered them released. There was no other basis to detain them such as warrants, or detainers, or other cases on which they were being held. The strip searches are undertaken pursuant to a practice and policy of which jail officials are aware and acquiesce in. FAC ¶¶38-44.

This Court denied the District's motion to dismiss and the District's motion for summary judgment based on this exact court return search by the DC Jail in Bynum v. District of Columbia, 257 F.Supp. 2d 1 (D.D.C. 2002)(motion to dismiss complaint on ground of strip searching released court returnees denied) Bynum,

215 F.R.D. at 1-2. The strip searches in this case are not justified under the Bell balancing test because they serve administrative convenience interests of the Department of Corrections, not legitimate security interests of the jails. See, e.g., Bell v. Wolfish, 441 U.S. at 560 n. 40, 441 U.S. at 559. In fact, every court that has addressed strip searching court returns **after a judge has ordered them released** has condemned the practice.  It has been ruled that returning court returns to a county jail to process them out, or to check for detainers, is an administrative interest that does not justify strip searching. Young v. City of Little Rock, 249 F.3d 730, 735-36 (8th Cir. 2001) (strip search of woman mistakenly arrested on a warrant and then ordered released characterized as "shocking"; no legitimate institutional interest justifying strip search based on out-processing administrative convenience); Logan v. Shealy, 660 F.2d 1007, 1013 (4th Cir.1981) (strip search of woman waiting to post bond on DUI charge unconstitutional because the officer had "no cause" to believe that DUI detainee had a weapon or contraband); Streit v. County of L.A., 236 F.3d 552, 564 (9th Cir. 2001)(search for wants and holds of a released person is an "administrative function of jail operations" that must be balanced against the court return's privacy interest); Jones v. Cochran, 1994 U.S. Dist. LEXIS 20625 (practice of returning in custody acquitted defendants to county jail for out-processing, including checking for wants and holds, and thereby strip searching them, unconstitutional); Gary v. Sheahan, 1998 U.S. Dist. LEXIS 13378

(E.D. Ill. 1998)(same and denying qualified immunity); Hayes v. Sheahan, 1998 U.S. Dist. LEXIS 13378, *40-41 (D. Ill. 1998) (indiscriminate strip search policy cannot be constitutionally justified on the basis of administrative ease in attending to security concerns under the Bell balancing test).

The District is also liable for the practice and policy. Zearley v. Ackerman, 116 F. Supp. 2d 109, 115 (D.D.C. 2000).

## VI.  CONCLUSION

For the reasons stated above, defendant's motion to dismiss should be denied.

Respectfully submitted,

_____/sig/_____
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiffs
717 D Street, NW, Suite 210
Washington, DC 20004
Phone (202) 824-0700
Fax (202) 824-0745