UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. SIMON BANKS, J.D. <br> P.O. BOX 17052 <br> ALEXANDRIA, VA. 22302 <br><br> **Plaintiff** <br><br> v. <br><br> ELWOOD YORK, JR <br> ET AL <br><br> **Defendants** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br> Case: 05-1514 (RCL) <br><br><br><br><br> July 3, 2008 |

**PLAINTIFF'S FIRST INTERROGATORIES
AND RQUEST FOR PRODUCTION OF DOCUMENTS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26, 27, 30, 33, 34, 35 36
AND 37**

**Interrogatories submitted to DeVon Brown, Director D.C. Department of Corrections**

Now comes the plaintiff and submits Discovery Request of Devon Brown, Director, District of Columbia Department of Corrections, pursuant to Federal Rules of Civil Procedures 26, 27, 30, 33, 34, 35, 36 and 37 as follows:

## *Instructions*

You are requested to answer the following Interrogatories fully and completely, in writing and under oath. These Interrogatories are subject to the conditions set forth below:

(a) These Interrogatories are continuing in character so as to require you to file supplemental answers if you obtain further or different information before trial or hearing.

(b) Where the name of a person is requested, please state the full name of that person, his address, telephone number, and business address, if known.

(c) Where knowledge or information in possession of a party is requested, such request include knowledge of, or information obtained by, the party's agents, employees, representatives, and unless privileged, his/her attorneys.

**Definitions**

Unless specifically required by the context in which the terms, name and instructions are used, the following definitions shall be applicable herein.

A. "You", "you", or "yours", or "yourself", or Defendant District of Columbia Government, Devon Brown, the DC Department of Corrections, the Government of the District of Columbia and its subordinates, agents.

It is intended by these Interrogatories to elicit information not merely within your own personal knowledge but obtainable by, you, including information in possession of any one acting on your behalf. If you cannot do so, so state, and answer to the fullest extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

B. "Document" or "documents" means all written, printed, typed or other graphic matter in your possession, custody, or control, whether or not prepared by you. "Document" or "documents", includes, but is not limited to, all memoranda, reports, notes, diaries, calendars, internal communications, interoffice communications, manuals, directives, orders, rules, bulletins, logs, lists, minutes and summaries of meetings, conversations, or communications of any type, including telephone conversations, and computer printouts, faxes, correspondence, memoranda, notes, statistics, letters, telegrams,

returns, summaries, pamphlets, prospectuses, teletypes, telefaxes, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, e-mail, videotape, recordings, motion pictures) and electronic, mechanical or electric records, electronic records in the original form as well as form in which they are ordinarily maintained, or representations of any kind (including without limitation, tapes, cassettes, discs, recordings). "Document" or "documents" also includes all copies which are not identical with the original. See Rule 34(b) FRCP.

B-1. As used herein, the terms "document" and "documentation" shall have the meaning ascribed to the term "document" in Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any tangible thing which constitutes or contains matter within the scope.

C. "Communication" or Communications" means all oral, visual, or other sensory means of transmitting information other than through a "document" or "documents", and including but no limited to, face-to-face conversations and telephonic and other electronic and mechanical means of transmitting information, messages or statements.

C-1. As used herein, the term "oral communications" means any utterance heard or meant to be heard by another person, whether made in person, by telephone or otherwise, including any mechanical or electric sound recording or transcriptions thereof.

D. The term "person" means any natural persona, corporation, partnership, proprietorship, association, organization, team or group of natural persons.

D-1. As used herein, the term "person" includes, private corporations, public corporations, the federal government and all departments and agencies thereof, partnerships, groups, firms, associations or any other type of entity or organization.

E.  The term "identify" when used in reference to a natural person, means to state to the fullest extent possible his or her full name, present or last known address, and position at the time in question.

F.  The term "identify" when used in reference to any person other than a natural person means to state to the fullest extent possible the full name and present or last known address of the principal place of business of the Plaintiffs or other organization to be identified.

G.  The term "identify" when used in reference to a document, means to state the date, author and type of document (e.g., letter, memorandum, telegram, chart, etc.) or to provide some other means of identifying it, and to disclose its present locations and custodian address(s) and recipients(s).  If any document was, but no longer is in your possession or control, state what disposition was made of it.

G-1. Where an interrogatory calls for you to "identify" an oral communication, please include the following information as to each oral communication:  (i) the circumstances under which the communication took place (such as, for example, during a meeting, over the telephone, etc.) and where it took place; (ii) the date of the communication or incident; (iii) the identity of each person participating therein and each person who was present in the manner described above in paragraph G; (iv) the substance of what was said by each party; (v) whether any documents set forth, summarize, reflect or refer to

any portion of such communication or incident; and (vi) if such documents exist the identity of each person having custody of the document.

H. The terms "current" or "currently" refer to the date of issuance of these Interrogatories.

I. Unless otherwise indicated, these Interrogatories refer to the time, place and circumstances of the occurrence that is the subject of the complaint.

J. Parties.    The terms "Defendant" and "Plaintiff" or "Defendants" means the District of Columbia Government, the District of Columbia Department of Corrections, as was as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

K. Concerning, The term "concerning" means relating to, referring to, describing, evidencing or constituting.

L. Rule of construction

The following rules of Construction apply to these discovery requests.

(1) All/Each.  The term "all" and "each"

shall  be construed as all and each.

(2) And/Or.  The connective "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all response that might otherwise be construed to be outside of its scope.

(3) Number(s) The use of the singular form of any word includes the plural and vice versa.

M. Claims of Privilege

Where a claim of privilege is asserted in objecting to any interrogatory or document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion,

(i) You shall in the objection to the interrogatory or document demand, or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by federal or state law, indicate the state's privilege rule being invoked; and

(ii)    The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

N. Or documents: (I) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including where appropriate, the author of the documents, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;

O. For oral communications: (1) the name of the person making the communication and names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; (3) the general subject matter of communication.

These interrogatories are continuing and you shall correct and/or add to any erroneous response and it shall be supplemented by any newly discovered facts.

mean date interrogatory is responded to)

1    Identify all inmate release policies, standard operating procedures ["SOPs"], of The District of Columbia Department of Corrections ["DOC"] in effect during the dates and times the District released inmates late, after they were entitled to be released. As the result of court order and/or expiration of their sentence.  This interrogatory covers the period Jan 2000 to the present date.

2    Identify all inmates housed in DOC during the period Jan. 5, 2000 thru the present date who were released late, after the date and time(s) they were entitled to be released and give the date and time of each release,  the date and time each inmate listed was entitled to be released, and the reason for each late release.

3    Identify all employees of DOC records Office, employed by DOC during the period Jan. 5, 2000 thru the present date.

4.    If you contend that the Plaintiff was not overdetained because of DOC failure to supervise, train its employes and that Plaintiff was not a victim of DOC's customs, polices, practices and procedures, that show deliberate indifference to the right of Plaintiff to be released upon the expiration of his sentence, list, describe and/or identify all facts upon which you rely in support of your contention.

5.     Identify all inmate-release recordkeeping practices, polices, procedures, standard operating procedures, and lists of databases containing information about DOC operation along with technical manuals and user manuals relating to the databases and  systems of DOC, utilized by DOC, along with data dictionaries for each database listed, and a list of data elements from each database needed to ascertain persons overdetained and length of overdetention,  during the period Jan. 5, 2000 to the present, connected with releasing inmates from DOC who were

entitled to be released from DOC because their sentence had been served and/or because of court order(s). .but were overdetained.

6. Identify all present and. Former employees of DOC who gave or signed declarations, affidavits, that were used in any and all court proceedings connected with any and all overdetentions, late release(s) of any and all inmate housed at DOC.

7. Identify all former and present employees of the DOC records office, or of DOC, who has/have knowledge of DOC's recordkeeping system(s) utilized by DOC to track inmates of DOC from the date they became inmates of DOC to the date they are entitled to be released from custody, and describe their respective knowledge. This interrogatory covers the period Jan. 5, 2000 to the present.

8. Identify all current and former employees of DOC whom testified and/or gave sworn statement at any deposition(s), trial(s), declaration, affidavit, in connection with any and all, administrative, civil actions involving complaint that an inmate or inmates of DOC were overdetained, not released when he/she, they, were entitled to be released from the custody of DOC, and describe the substance of their respective testimony, declaration, affidavit, deposition, trial.

9. Identify all computerized databases utilized by DOC, for inmate recordkeeping purposes during the period Jan. 5, 2000 to the present date, and describe how they respectively operate.

10. Identify all experts whom testified or gave deposition testimony and/or trial testimony in connection with any and all complaints where DOC was alleged to have overdetained an inmate who was housed at DOC. This interrogatory covers the period Jan 5! 1998 to the present date..

11    Identify any and all employees of DOC (this includes former employees) who were assigned to train employees to release inmates housed at DOC when their sentence expired

and/or when they were entitled to be released because of a court order, and describe the training they respectively provided.

12. With respect to the computerized databases you list in response to interrogatory No. 9, describe to your fullest extent that you can, how each database listed function or work, how it was utilized to track inmates entering and leaving DOC after their sentence expired and/or when they are entitled to be released because of a court order.

13. Identify any and all, Inmate Management System(s), System Computation Manuals, DOC operation Manuals pertaining to error rates regarding all releases, audits of Office of Internal Controls, Compliance and Accreditations, studies DOC has been the recipient of and attempted to implement connected with the release of inmate(s) from DOC custody because of the expiration of their respective sentence and/or because of a court order releasing them.

14. Identify all civil and administrative proceedings DOC has been involved in from June 1998 through the present connected with the overdetention of any inmate who was housed at DOC.

15. If, in any prior proceedings involving complaint that the Department of Corrections (DOC) was involved in from June 1, 1998 to the present, and in the present case, you contend that you relied upon a specific window of time in which to attend to administrative matters related to the release of any inmate, list each "window of time" and describe your reliance.

16. Please list and identify any and all policymakers of DOC from Jan. 2, 2000 to the present whom were involved in establishing and implementing the policy, practices, and/or procedures for DOC connected with the recordkeeping office of DOC with respect to the processing and release of inmates from DOC upon the expiration of their sentence and/or release pursuant court order.

17. With respect to each inmate who was overdetained from January. 5, 2000 to the present, including the inmates you list in your response to interrogatory 2, indentify each inmate who was ordered released while at a courthouse in the District of Columbia, whom rather, were taken back into custody and transported to the District of Columbia Jail or CTF, and give the reason upon which you rely for each overdetention(s)

18. State all facts known to you how Plaintiff's came to be released on April 28, 2006, as opposed to March 20, 2006, April 26, 2006, and October 2, 2006, and identify all persons involved in Plaintiff's release from DOC..

19. Please identify any and all statisticians whom provided DOC statistics connected with errors in releases and failure to release inmates from DOC resulting in the overdetention of inmates housed at DOC., from Jan. 5, 2000 to the present date.

20. Describe to the fullest extent you can the actions DOC took to implement the following:

    a). The Inspector General's recommendation and report dated October 2002 regarding the District of Columbia Jail Management Challenges and improving the D.C. Jail facility

    b). The 1976 RMC Research Corporation Analysis which referenced the major recommendations, reorganization of the Records Office and increased staffing in the Office

    c). The individual training of the JACCS (Jail and Community Correction System) on how employees learned how the log in/log out procedures and the execution of screen and task relevant to their specific jobs worked

    d). Recommendations set forth in the Wright Report which documented a long pattern of systemic problems dealing with case management, classification and records office management at th records Office (Wright Report, Major Findings, F-14).

  e). The District of Columbia Beal Abatement Plan and DOC response to R-1, R-2, and R-3 desk audits of all Records Office positions, how many existed during the period Jan. 1, 2004 through the present.

  f). Spoilation [destruction of evidence] on electronically stored depositions, responses to discovery such as requests for admissions, authentication of documents, responses to interrogatories, interrogatories submitted, responses to request for production of documents, electronically stored on computers and existing on CDs or other electronically storage devices.

  g). Corrective action in the DOC's Records Office, upon receipt of the "Evaluation of the District of Columbia Department of Corrections Records Office prepared by James Austin and Julie Murray, The National Council on Crime and Delinquency, 1325 G. Street, NW, Suite 770, Washington, DC 2005 (202) 638-0556, March 1998, and further cited in Watson v. District of Columbia, Case No. 1:02 cv 00980-GK-JMF.

21. In addition to the actions DOC took with respect to your response to Interrogatory No. 20, describe all actions DOC took to resolve DOC's overdetention problem of overdetaining inmates whom were entitled to be released from DOC because their sentence expired or because they were ordered released by the court(s).

22. Identify all release discrepancy reports of DOC from January 5, 2002 to the present.

23. Identify any and all witnesses the District propose to call as witness at the trial of this case and with respect to each witness listed describe their respective propose testimony. (This include any and all experts.)

24. Describe the reason(s) and/or the factual basis upon which you contend and/or rely that caused the following inmates whom were listed as being overdetained in the case of *Carl A.*

11

*Barnes v. District of Columbia, et al*, 06-315 RCL, as set forth in the affidavits, 1 through 58 below:

| | |
|---|---|
| 1 | Shankeisha Mitchell |
| 2 | Toney Malloy |
| 3 | David Peterson |
| 4 | Maurice Williams |
| 5 | Carl Barnes |
| 6 | James G. Jones |
| 7 | Mickey Crawford |
| 8 | Terrance Barfield |
| 9 | Judith Jamison |
| 10 | Joe Jarrell |
| 11 | Robert Young |
| 12 | Marcellus Summers |
| 13 | Antonio Harris |
| 14 | Quenta Ennis |
| 15 | |
| 16 | Anthony Howe |
| 17 | Percival Pendergrass |
| 18 | Denard Hawking |
| 19 | Jeanett Gray |
| 20 | William Bunn |
| 21 | Ricardo Luzano |
| 22 | Alvin Scott |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | Tony Edward Savage |
| 29 | |
| 30 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | Chantel Henson |
| 38 | Jeffrey Owens |
| 39 | John West |
| 40 | James Jones |
| 41 | Raymond Butts |
| 42 | Ervin Haltiwanger |

| | |
|---|---|
| 43 | |
| 44 | |
| 45 | |
| 46 | |
| 47 | Keenam Miller |
| 48 | Jerry Kidd |
| 49 | Shelly Berry |
| 50 | James Parker |
| 51 | Adam Hamilton |
| 52 | Razina Jones |
| 53 | Derrick Suggs |
| 54 | Chetonia Eldridge |
| 55 | Charles Williams |
| 56 | |
| 57 | David Peterson |
| 58 | Glendale McLaurin, Jr. |
| | |

25,   Describe all actions you undertook to correct the incorrect records of the District of Columbia Department of Corrections Records Office regarding the Plaintiff to facilitate the Plaintiff's release from incarceration when the Plaintiff's sentence expired so that the Plaintiff would not suffer over-detention and/or further overdetention when you received notice of and/or a copy of the following:

   1.   Defendant's Emergency Motion for Release and to Correct Sentence Pursuant to DC Code §23-110 (1996), DC Code § 16-1901(1989) and/or in the alternative emergency motion for mandamus directing the Department of Corrections to Release the Defendant and/or in the alternative injunctive relief enjoining the DC Department of Corrections, Temporarily, Preliminarily and Permanently from failing to release the Defendant, April 12, 2006, filed in D.C. Court of Appeals No. 02-BG-1374

   2.   Letter to Mayor c/o Risk Management dated April 4, 2006, informing the District of Columbia that Plaintiff proposed to bring an Emergency Complaint for Relief pursuant to DC Code §23-110, 42 USC § 1983, for Mandamus for Injunctive file suit in order to facilitate his emergency release from the DC Department of Corrections

   3.   Memo to the warden regarding miscalculation of the Release date for the Defendant (Plaintiff)

   4.   Plaintiff's Motion Emergency Release in *Banks v. Smith,* 04-903

13

5.   **Simon Banks' Motion for Mandamus Directing Larry Corbett, Acting Warden and Elwood York, Jr. Director of DC Department of Corrections for Correction of Time Served, Good Time Credit Records and Release Date filed in** *Banks v. Smith,* **04-903**, (**Doc 40**) on 6-29-205
Which further provide:
At 1 under exhaustion, *"The plaintiff has met the Classification Officers as well Larry Corbett, Acting Warden, DC Jail on February 12, 2005 regarding the issue the need to correct the Plaintiff's Time Served, Good Time Credits Records and Release Records. Notwithstanding, no action has been taken to correct plaintiff's records."*
At ¶8, *"The DC Jail Records continue to erroneously failed to credit the plaintiff With time served during the period June 23, 2004 through December 19, 2004."* At 5, *"Wherefore, the plaintiff pray that this Honorable Court Order the Warden Larry Corbett, and the Director of the DC Department of Corrections, Elwood York, Jr. to correct plaintiff's records to reflect credit for the time served while Incarcerated in the City of Alexandria while under sentence in the District of Columbia from June 23, 2004.*

6.   Plaintiff's Complaint on May 25, 2005 against the DC Jail that it had miscalculated the release date of the Respondent

7.   **Simon Banks' affidavit filed in** *Banks v. Smith,* **04-903**, at ¶¶ ##7-9 stating:
*"7. At the March 13, 2005, meeting with defendant Corbett in defendant Corbett's office, the plaintiff informed defendant Corbett that …………*
*"8. Defendant Corbett promised the plaintiff that he would have the Record s Office correct plaintiff's release date and record for time served. The Plaintiff informed defendant Corbett that the DC Jail's Records Office failed to provide plaintiff credit for time incarcerated in Alexandria, Virginia when plaintiff was transferred from the DC Jail to Virginia while under sentence in the DC Jail, pursuant to a detainer issued by the City of Alexandria. This is when and while Judge Kramer had issued a bench warrant and detainer on plaintiff from June 23, 2004 the date it was determined that plaintiff by mistake transferred to the City of Alexandria. The plaintiff's transfer was facilitated by Superior Court Judge who released plaintiff in open court one week   prior to plaintiff being transferred to Virginia on June 23, 2004 and returned to the DC Jail on December 19, 2004"*

8.   **Simon Banks' affidavit filed in** *Banks v. Smith*, **04-903**, at ¶ #19 stating: *On March 2, 2005 the Plaintiff telephoned the records office at the D.C. Jail after speaking with the C&P Officer regarding Plaintiff's release date which was in error and the mail person whom answered the records office telephone abruptly told the Plaintiff to go back to the C&P Officer and hung the phone up.*

9.   **Simon Banks' affidavit filed in** *Banks v. Smith*, **04-903**, at ¶ #22 stating: *On March 9, 2005 Plaintiff wrote a letter to Larry Corbett, Acting Warden, regarding correction of time served records pertaining to the release date ---*

14

10. **Simon Banks' affidavit filed in** *Banks v. York,* **05-1514 (ESH] dated July 6, 2005**, which provides at ¶¶ ##7-9 stating:
    "*7. At the March 13, 2005, meeting with defendant Corbett in defendant Corbett's office, the plaintiff informed defendant Corbett that …………*
    "*8. Defendant Corbett promised the plaintiff that he would have the Record s Office correct plaintiff's release date and record for time served. The Plaintiff informed defendant Corbett that the DC Jail's Records Office failed to provide plaintiff credit for time incarcerated in Alexandria, Virginia when plaintiff was transferred from the DC Jail to Virginia while under sentence in the DC Jail, pursuant to a detainer issued by the City of Alexandria. This is when and while Judge Kramer had issued a bench warrant and detainer on plaintiff from June 23, 2004 the date it was determined that plaintiff by mistake transferred to the City of Alexandria. The plaintiff's transfer was facilitated by Superior Court Judge who released plaintiff in open court one week prior to plaintiff being transferred to Virginia on June 23, 2004 and returned to the DC Jail on December 19, 2004*

*11.* **Simon Banks' affidavit filed in** *Banks v. York,* **05-1514 (ESH) dated July 6, 2005**, which provides at ¶ #19 stating: *On March 2, 2005 the Plaintiff telephoned the records office at the D.C. Jail after speaking with the C&P Officer regarding Plaintiff's release date which was in error and the mail person whom answered the records office telephone abruptly told the Plaintiff to go back to the C&P Officer and hung the phone up.*"

*12.* **Simon Banks' affidavit filed in** *Banks v. York,* **05-1514 (Doc 1, 4) (ESH) dated July 6, 2005,** which provides at ¶22: at ¶ #22 stating: *On March 9, 2005 Plaintiff wrote a letter to Larry Corbett, Acting Warden, regarding correction of time served records pertaining to the release date ---*

13. **Simon Banks' complaint (civil action Doc 2 7-29-2005) filed in** *Banks v. York,* **05-1514 (ESH) dated May 12, 2005,** which allege at ¶Z5 provides:
    **"INCORRECTLY SUBJECTING THE PLAINTIFF TO AN EXTRA SIX MONTHS OF CONFINEMENT BY SETTING PLAINTIFF'S RELEASE DATE SIX MONTHS AFTER EXPIRATIONO OF SENTENCE**

    *Defendants' York and Corbett incorrectly subjected the plaintiff to an extra six months of confinement by setting plaintiff's release date six months after expiration of the sentence. In this case the Plaintiff was under a bench warrant and the detainer issued by Judge Noel Kramer in July 23, 2004 although plaintiff was released to Virginia authority pursuant to a scheme and plan to subject plaintiff to trial in the state of Virginia and to subject the plaintiff to enhanced sentence. The actions of defendant York and Corbett by failing to credit the plaintiff with time incarcerated in the state of Virginia between July 23, 2004 through December 19, 2004, was intentional*

15

14. **Simon Banks' Interrogatories submitted to counsel for acting warden DC Jail Robert Clay, 3-21-6, in (civil action) filed in *Banks v. York,* 05-1514 (ESH) dated May 12, 2005,** which at Interrogatory Number 23 provides: *"If you contend that DOC correctly computed plaintiff's release date and Correctly credited plaintiff with all jail time plaintiff is entitled to be accredited with, state each fact upon which you rely in support of your contention and describe/state why you did not credit plaintiff with the six months plaintiff was detained in the Alexandria City Jail although plaintiff was serving four consecutive six month sentences imposed upon plaintiff prior to plaintiff being released to the Virginia Authorities on its detainer on June 23, 2004.*

These interrogatories are continuing in character and require you to update them when you receive updated or corrective information.

These interrogatories require you to answer them within 30 days from receipt, under oath or affirmation.

_____/S/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
571 970 8327
drsbanks@msn.com,

16