UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL A. BARNES, et al | |
| Plaintiffs | Civil Action No:  **06-315 (RCL)** |
| v. | Next Event: None scheduled |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | |
| Defendant | |

**PLAINTIFFS' PARTIALLY REDACTED MOTION TO COMPEL PRODUCTION**

**OF DATA FROM CERTAIN JACCS FIELDS AND RELATED**

**DOCUMENTATION REQUESTED IN PLAINTIFFS' 4TH DOCUMENT**

**PRODUCTION REQUESTS**

Plaintiffs respectfully move this Court to compel Defendant District of Columbia

to produce to plaintiffs electronic data from certain fields in JACCS[1] ("JACCS data")

and also JACCS documentation such as data dictionaries ("JACCS documents") (both

described below) related to understanding the functions and capabilities of the JACCS

data base.  Plaintiffs need the JACCS documents to develop "queries[2]" to run in the

JACCS data for use in the process of calculating the number of over detentions (and

---

[1] JACCS is the District's primary inmate management systems.  The system has fields to capture information about each inmate's booking cycle (or period of incarceration) such as Commitment Date, Release Date and Exit Date and last court date.

[2] A "query" is a search throughout the JACCS data for all inmates who meet certain criteria during a defined time period, for example, all inmates released from the DC Jail during September of 2006. For example, in this case, plaintiffs use queries to identify identify **on a class wide basis** lists of inmates who were *potentially* held past their Release Dates and court returns who were strip searched after a judge ordered their releases.

lengths of over detention hours) and the number of court return strip searches to establish "ongoing constitutional violations" for the liability prongs of plaintiffs' claims.  Warren v. District of Columbia, 353 F.3d 36, 39 D.C. 2004).  Moreover, plaintiffs also need the JACCS data and documents for use in the scheduled dispositive motions, for example, plaintiffs need to convert information obtained informally in this case and in the Bynum case into a Rule 56(e) format for use in the dispositive motions.  Finally, plaintiffs need JACCS data to understand and verify certain deposition testimony and DOC processes for handling inmates.  Many of the practices of handling inmates which defendant's witnesses have testified to can only be verified by analyzing JACCS data entries made during the alleged practices.  How the documents requested in plaintiffs' 4th document production requests relate to using JACCS data to verify specific practices or processes used by the DOC is discussed in a section of the motion that has been redacted and filed under seal pursuant to the protective order in the case.

Defendant objects to the production of the JACCS materials requested by plaintiffs' fourth document production requests on the ground that the requests relate only to damages, and thus are beyond the scope of the Court's Scheduling Order (docket # 65, dated October 31, 2009).  Significantly, opposing counsel do not object to the document production requests on the ground that the material relates to both liability and damages.  Rather, the District's objection is that the sole use for the JACCS materials is for determining damages.  During the Bynum case and during this case plaintiffs experts and the District's experts have had extensive discussions

about how plaintiffs plan to use the JACCS materials for liability issues and so defendant's counsel and defendant's technical staff are aware of just how plaintiffs intend to use the JACCS materials to establish liability on their claims.  Therefore, as framed, defendant's objections are unfounded.

## CONSENT SOUGHT BUT NOT OBTAINED

Plaintiffs have attempted unsuccessfully to obtain production of the documents listed herein from the District informally by letter, email and phone calls.  Fed. R. Civ. P. 37.  Therefore, Plaintiffs as movants have in good faith conferred with the defendant's counsel in an effort to obtain the documents without court action.

## HOW REQUESTED JACCS DATA AND DOCUMENTS RELATE TO LIABILITY

Plaintiffs need information about over detentions and court return strip searches for use in establishing liability on their over detention and strip search claims by establishing, for example, the number of over detentions, the number of over detention hours, and the number of court returns entitled to release who were subjected to strip searches after being ordered released by a judge during the class period (and certain periods within the class period) and how the numbers of over detentions and court return strip searches have moved (increased or decreased) over the class period and sub-periods of the class period.

As this Court stated in certifying both claims as class claims, "The dominant issues in this case, as in <u>Bynum</u>, go to liability--whether the over detentions amount to an unconstitutional municipal policy and whether the strip search policy is similarly

unconstitutional. **These issues dwarf whatever unique issues might arise at the damages stage**.” <u>Barnes</u>, 242 F.R.D. at 123. (internal citations omitted) (emphasis added)

Moreover, the process of using JACCS data to identify class members and also for use in establishing custom and practice in both claims is a process that was litigated and settled in the <u>Bynum</u> case.  Using DOC computer data to establish custom and practice of over detentions and strip searches by identifying individuals who were overdetained and strip searched (and thus identifying the number of individuals who were overdetained and strip searched and how those numbers changed over time) is a subject that was addressed by the Court in <u>Bynum</u>:

> Indeed, the strategy that plaintiffs suggested to identify the overdetention class suggests a potential model for this class [court return strip search class] as well.  In the overdetention class, plaintiffs intend to compare records of inmates' scheduled release date and actual release date. Here, plaintiffs could compare court appearance dates with release dates to find those plaintiffs who would have been strip searched during out-processing.  This Court is satisfied that there are no formidable difficulties that are likely to be encountered in the management of this action if it is maintained as a class. As this Court found in its certification of the overdetention class, the present forum is also appropriate for the strip search class because of the identity of the defendant.

<u>Bynum v. District of Columbia</u>, 217 F.R.D. 43, 50 (D.D.C. 2003).  (second motion to certify strip search class).  This passage quoted above deals with identifying class members using DOC computer data to identify individuals who were overdetained and strip searched.  However, the same evidence is also relevant to establishing custom and practice of over detentions and strip searches because identifying individuals who were overdetained and strip searched also produces **number** of individuals who were

overdetained and strip searched.  "The evidence that plaintiffs have presented in support of class certification is presumably the same evidence that plaintiffs will rely upon to prove the merits of their case at trial."  Bynum v. District of Columbia, 214 F.R.D. 27, 31 (D.D.C. 2003).

## The Number Of Over Detentions (And Over Detention Hours) And Strip Searches Occurring Over The Class Period Are Relevant To Establishing The District's Liability On Plaintiffs' Claims

Of course the number of over detentions and over detention hours and strip searches and how the numbers have changed over the class period and within sub-periods of the class period are relevant to liability.  Green v. Baca, 226 F.R.D. 624 (C.D. Cal. 2005) opinion clarified by Green v. Baca, WL 283361 (C.D. Cal. 2005). "These issues dwarf whatever unique issues might arise at the damages stage." Barnes, 242 F.R.D. at 123. (internal citations omitted).

In their proposed trial plan submitted in support of their motion to certify (docket # 7) plaintiffs identified as the key issues involving determination of liability on the over detention claim and the strip search claim the following:

> The central issues to be determined in the liability phase are: (1) whether the District has a pattern and practice of overdetaining inmates in the DC Jail or CTF or a halfway house after a judicial officer has ordered their release; (2) whether the District violates the constitutional rights of inmates by overdetaining inmates after a judicial officer has ordered their release; (3) what length of overdetention constitutes an unconstitutional overdetention; (4) whether the District has a pattern and practice of subjecting inmates to suspicionless strip searches after a judicial officer has ordered their release; (5) whether the District violates the constitutional rights of  inmates by subjecting inmates to

suspicionless strip searches after a judicial officer has ordered their release.  These issues can probably be determined on a motion for summary judgment on the applicable legal standard.

Plaintiffs' proposed trial plan, page 4, Plaintiffs' Exhibit # 27, motion to certify, (docket # 7).  Moreover, pages 7 and 8 of the proposed trial plan (styled methods of proof and discovery under Section I- Trial of Liability), detail how plaintiffs intend to establish liability using JACCS data and sampling (among other methods).  The District never made any objections to plaintiffs' proposed trial plan in its opposition to the motion to certify.

The extent of the over detention problem is obviously relevant to liability.  For example, the extent of the over detention problem is relevant to showing the existence and the continuing nature of the over detention problem (what the Warren Court called "ongoing constitutional violations").  In fact, just showing the existence of an over detention or strip search custom is crucial to the case – for example, if there were no over detention problem there would be no case.  Likewise, proving that a practice of strip searches in fact existed is crucial to proving a strip search[3] claim.

So-called "other acts" evidence is relevant to the central liability issue-whether defendant had an unconstitutional policy and custom that led to plaintiff's over-detention.  The most direct way of establishing a "custom or practice" is showing a pattern of violations over time.  See City of Canton v. Harris, 489 U.S. 378, 398 (1989)(O'Connor, J., concurring in part) ("[R]espondent thus had every incentive to

_____

[3] In Bynum, DC Jail staff did not make entries in JACCS to record that an inmate was strip searched upon his return to the DC Jail.  However, since the evidence showed that the District had a policy and practice of subjecting all inmates entering the DC Jail to strip searches, even those entering the DC Jail for release determinations and out-processing, court return strip search class members could be found by using JACCS data to find all persons released from the DC Jail.

adduce proof at trial of *a pattern of violations* to support her claim that the city had an unwritten custom of denying medical care to emotionally ill detainees" (emphasis added)); <u>Mortimer v. Baca</u>, --- F.3d ----, 2010 WL 396091 (C.A.9 (Cal.)). <u>West v. Tillman</u>, 496 F.3d 1328-29; <u>Green v. Baca</u>, 226 F.R.D. 624 (C.D. Cal. 2005) <u>opinion clarified</u> <u>by</u> <u>Green v. Baca</u>, WL 283361 (C.D. Cal. 2005).  (The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.)(internal quotation marks and citations and alterations omitted).

The number of over detentions in a given period of times and whether they have decreased or increased over time is also relevant to the existence of a custom of over detentions, notice to the District of the custom, and whether the District was taking steps to resolve the problem and whether the steps were effective or just window dressing.

For example, how could plaintiffs prove an over detention claim in the absence of any evidence of over detentions?  Conversely, a showing that the number of over detentions has steadily increased over the course of the class period would surely buttress any over detention claim.  Logically the larger the numbers of over detentions the plaintiffs show the stronger is the over detention claim on liability.  For example, a showing that the number of over detentions has steadily increased over the course of the class period would highlight's the District's deliberate indifference to the rights of inmates entitled to release by showing that the District is maintaining a policy of inaction in the face of a custom of late releases.  A rising or steady number of over

7

detentions over all or part of the course of the class period would support plaintiffs'
contention that the District implemented or allowed a policy or custom of deliberate
inaction in the face of systemic over detentions by maintaining a release system that
"simply delays all releases until the system, in its sweet time, and with the resources
it chooses . . . is ready to make releases." Berry v. Baca, 379 F.3d 764 (9th Cir. 2004
(on remand and on re-appeal).

On the other hand, a showing that the number of over detentions stopped or
tapered off in the first months of the class period would suggest that the District
successfully addressed the over detention problem early on and thus would support a
defense that the District was not deliberately indifferent.  Surely the District is
conducting or has conducted such analyses of the data (the same analyses plaintiffs
need the JACCS materials to conduct) to see whether the analysis supports these
defenses.

The number of court return strip searches (established by the number of strip
search class members) and the how that number has changed over time has the same
evidentiary value.  On the court return strip search claim plaintiffs contend that the
District has a practice of subjecting large numbers of court returns entitled to release
to blanket strip searches by putting them back in their housing units while their
releases are being processed.  Thus, the number of over detentions and strip searches
which occurred during the class period (and within certain sub-periods of the class
period) relate directly to liability.

The extent of any over detention or strip search customs are also relevant to

showing that the District was aware of problems that needed to be addressed.

## **Queries In JACCS Data And Manual Examination Of Samples Of Inmate "Jackets" Can Be Used To Analyze The Number Of Over Detentions (and over detention hours) And Strip Searches Occurring Over The Class Period**

Both parties in <u>Bynum</u> and plaintiffs in this case (and presumably defendant) have used JACCS queries in the JACCS data (in conjunction with manual examinations of inmate jackets) in the process of calculating over detentions and strip searches on a class wide basis during the class period for liability purposes, as explained below[4].  For example, defendant used this method to prepare the late release reports for the Court in the <u>Bynum</u> case.

However, because JACCS lacks certain functions or because the DOC staff do not always populate JACCS fields as they should, queries run in JACCS data can only identify "potential" late releases and potential post release strip searches on a class wide basis instead of actual late releases or post release strip searches on a class wide basis.  Therefore, calculating the number (and increase/decrease) of over detentions, lengths of over detentions and the number of post release strip searches during the class period (and certain periods within the class period) and how the numbers of over detentions and court return strip searches have moved (increased or decreased) over the class period and sub-periods of the class period on a class wide basis **is a two step process** requiring use of both (1) JACCS queries and (2) manual examination of at

---

[4] The discussion in the un-redacted portion of this motion is based on information obtained in <u>Bynum</u> which is not subject to the protective order in this case.

least some jackets.

Step 1 is running queries in JACCS to generate lists of "potential" late releases and potential post release strip searches. Step 2 is conducting some type of manual examination of some inmate jackets to obtain data not captured in JACCS or not captured accurately. Each one of these steps is explained below separately for over detentions and post release strip searches.

<u>Over detentions</u>. To determine whether an inmate was over detained for a particular booking cycle one needs at least the inmate's Commitment Date, Release Date (inmates' scheduled release date) and Exit Date (and actual release date) for the particular booking cycle or period of detention. JACCS does have fields which capture the Commitment Date and the Exit Date. Moreover, JACCS does also have fields intended to capture the Release Date for each charge for court ordered releases (as used herein court ordered releases means inmates given court ordered release or time served which almost always happens when the in-custody-defendant is present at a court hearing) and "EXPs," that is, persons released upon expiration of their sentences (for persons serving determinate sentences and sanctions).

Moreover, JACCS also has fields which can be used as "proxies" for a Release Date field for court ordered releases if the Release Date field is not populated or not populated reliably. One example of a "proxy" for the Release Date is the last court appearance date field. The last court appearance date field in JACCS captures the date of an inmate's last court appearance. Because almost all court returns receive release orders for the last case(s) on which they are being held at their last court

appearance, the last court appearance date is usually the same date as the Release Date.  Therefore, the last court appearance date can serve as a proxy[5] for the Release Date.  The last court appearance date is a "proxy" for the Release Date rather than being the "same" as the actual Release Date because the last court appearance date is only the same as the Release Date sometimes but not always.  Therefore, queries run in JACCS data can only identify  "potential" Release Dates," and thus "potential" late releases and potential post release strip searches on a class wide basis instead of actual late releases or post release strip searches on a class wide basis.

Moreover, sometimes there is information in a jacket that has not been entered into JACCS, for example, whether an inmate was subject to a detainer or a warrant, which affects the release decision.

Therefore, some manual examination of the inmate jackets can produce the inmate's Release Date and thus one can determine whether a potential over detention is in fact an actual over detention.

There are at least two ways to combine JACCS queries and manual examinations of jackets to obtain calculate over detentions and lengths of over detentions on a class wide basis.  One is to run a query in JACCS using one or more proxies for the Release Date to obtain a list of "potential" late releases.  Then, the jackets of the "potential" late releases are manually examined one by one to see which of the "potential" late releases are in fact actual releases.  This is the methodology the District used in conducting the District's analysis of the releases in the first year after

---

[5] There are other "proxies" for Release Date not discussed herein.

the end of the <u>Bynum</u> class period to calculate how many releases in that year were late releases (over detentions).  Significantly, the report also demonstrates how JACCS material can be used to calculate over detentions for a purpose other than damages inquiries.

A second more efficient way to analyze which "potential" late releases (generated by JACCS queries) are actual late releases is the method used by the plaintiffs: "stratified sampling."  In this method, in step 1, just as defendant does, plaintiffs first run a query in the JACCS data to generate a list of "potential" late releases.  But then, instead of doing a manual examination of each of the jackets on the list of "potential" late releases, plaintiffs' experts organize the list of "potential" late releases into segments or "strata" on the basis of criteria they have developed, and then select a sample from each of the "strata" on the list.  Then, plaintiffs do a manual examination of a statistically valid sample of the jackets in each strata and provide the experts with the number of actual over detentions and the number of on-time releases in each strata.  Then the experts use these numbers to extrapolate the total number of over detentions and over detention hours for the class for the class period (or portions of the class period, e.g. the first year).

What is the same in the two methods though is that each party is using JACCS queries and manual examinations of jackets to determine over detentions and periods of over detention to establish liability (or in the District's case, an alleged lack of liability) and not to determine damages.

However, what the difference between defendant's and plaintiffs' methodologies

is what is most important.  While defendant has to do a manual examination of every single jacket on the list of "potential" late releases to obtain the Release Date for each jacket, plaintiffs only have to examine about 10%[6] of the "potential" late release jackets to obtain essentially the same data.  Thus, plaintiffs' method significantly reduces the number over detention jackets plaintiffs have to manually examine, and so plaintiffs' method also significantly reduces the number over detention jackets the District must produce to plaintiffs.  However, and most importantly, **plaintiffs' methodology enables plaintiffs to use JACCS data and a limited manual examinations of jackets to determine on a class wide basis the number of over detentions and the over detention hours and the number of strip searches during the class period and sub-periods of the class period**.

<u>Court return strip searches</u>.  Plaintiffs use the same two step analysis to calculate the number of post release strip searches during the class period (and certain periods within the class period) and how the numbers of court return strip searches have moved (increased or decreased) over the class period and sub-periods of the class period on a class wide basis.  That is, plaintiffs run a JACCS query to generate a list of potential strip search class members and then uses sampling to calculate the number of strip searches in a given period.  Some of the fields in the strip search query are different and plaintiffs have to review[7] documents and verify discovery responses and deposition testimony in addition to the inmate jackets but the methodology is the

---

[6] The "10%" figure is only an approximation of the actual percentage.  The exact percentage of the sample is determined by plaintiffs' experts using reliable statistical methods.
[7] Why plaintiffs have to review documents in addition to the inmate jackets is explained below in the redacted section of the motion.

same.  Plaintiffs' experts, after a review of JACCS documents and other materials,

develop a strip search query, generate a list of potential post release strip searches,

and select statistically significant samples of jackets for manual examination.

Plaintiffs review the jackets, they compile numbers of post release strip searches, and

plaintiffs' experts extrapolate the numbers for totals of court returns entitled to

release who were strip searched before release for the class period and sub-periods of

the class period.

**PLAINTIFFS' 4th DOCUMENT PRODUCTION REQUESTS AND THE
DISTRICT'S OBJECTIONS**

Plaintiffs propounded their fourth set of document production requests to

defendant on about 9/16/09.  Plaintiffs fourth set of document production requests

included the four requests listed below for which defendant did not produce

documents:

Document production request # 1:

All versions of the JACCS Data Dictionary that are (or were) in use from
September 1, 2005 to Present Day including a listing of every field in the JACCS
system that has been in use since 9/1/05 to the present, the screen name of the
field, and the technical name of the field.

District's objection to document production request # 1.

The District objects to production of the requested documents.  Discovery
requests are limited and circumscribed by this Court's Order dated
October 31, 2009, docket # 65, which bifurcated this action between
liability and damages, and stayed damages discovery.  The data
dictionary is not a document that lends itself to analysis of liability as it

14

lists computer database fields.  The only possible use of information related to the JACCS database is to identify potential class members, which relates to the damages inquiry, not liability.

Document production request # 2:

A <u>JACCS Data Production</u>, to include data from following tables (using the table names in column A of the attached JACCS Data Dictionary) for all inmates released on or after September 1, 2005:

[document production request # 2 included a request for records from certain specified JACCS tables as well as a request for records needed to perform certain functions and records from fields populated by certain posts and locations]

District's objection to document production request # 2.

The District objects to production of the requested documents.  Discovery requests are limited and circumscribed by this Court's Order dated October 31, 2009, docket # 65, which bifurcated this action between liability and damages, and stayed damages discovery.  The data dictionary [sic] is not a document that lends itself to analysis of liability as it lists computer database fields.  The only possible use of information related to the JACCS database is to identify potential class members, which relates to the damages inquiry, not liability.

Document production request # 3:

<u>Code tables</u> for all categorical (i.e., pull-down menu) fields within one or more tables listed in (2) which were in use from 9/1/05 to present.

District's objection to document production request # 3.

The District objects to production of the requested documents.  Discovery requests are limited and circumscribed by this Court's Order dated October 31, 2009, docket # 65, which bifurcated this action between liability and damages, and stayed damages discovery.  The code tables are not documents that lend themselves itself to analysis of liability as it lists computer database codes.  The only possible use of information related to the JACCS database is to identify potential class members, which relates to the damages inquiry, not liability.

<u>Document production request # 5</u>:

All versions of a complete JACCS Data Entry Responsibilities[8] Matrix, which identifies which division of the Department of Corrections is responsible for populating the fields on each screen.

<u>District's objection to document production request # 5.</u>

The District objects to production of the requested documents.  Discovery requests are limited and circumscribed by this Court's Order dated October 31, 2009, docket # 65, which bifurcated this action between liability and damages, and stayed damages discovery.  The matrices lists persons performing database entry.  As no individual is sued in their individual or official capacity, this request does not lend itself to a liability analysis.

<u>Document production request # 6</u>:

<u>Additional Documentation</u>:
  a.  Documents describing officers' practices/procedures regarding the commitment and release processes for court ordered releases.
  b.  Documents describing the procedures that include the term "strip search" or "body cavity search."

<u>District's objection to document production request # 6.</u>

The District objects to request # 6 as it is ambiguous and vague.  After careful review and consideration of the stated request, the District has no documents that responds to this request # 6a.  [The District produced a document in response to 6b.]

<u>Production Format</u>: Plaintiffs specified the production format for defendant to use as follows so plaintiffs would get the data in electronic format:

Please include items (1) through (6) on one or more CD/DVD-ROMs.  Please provide the JACCS Data Production either i) in one or more Microsoft Access Databases, in which there is one spreadsheet for each JACCS data table listed in (2), or ii) in multiple Comma Separated Value (.CSV) or flat text (.TXT) files, one corresponding to each JACCS data table listed in (2).

---

[8] Plaintiffs attached to this request for illustrative purposes a copy of a <u>JACCS Data Entry Responsibilities Matrix</u> produced by defendant to plaintiffs in <u>Bynum</u>, which identifies which division or post of the Department of Corrections populates which fields in JACCS.

**HOW THE REQUESTED DOCUMENTS RELATE TO SPECIFIC ISSUES**

The following discussion analyzes how the requested documents relate to specific issues in the case.

[REDACTED and filed under seal]

| | |
|---|---|
| Respectfully submitted,<br><br>___ /sig/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br>Counsel for the Named Plaintiffs and the Classes<br>717 D Street, NW , Suite 210<br>Washington, DC 20004<br>Phone 202/824-0700 | |
| Respectfully submitted<br><br>_____<br>Barrett S. Litt, Esq.<br>pro haec vice<br>Litt, Estuar, Harrison & Kitson, LLP<br>1055 Wilshire Boulevard<br>Suite 1880<br>Los Angeles, California 90017<br><br>Phone (213)-482-6310<br>Fax (213)-380-4585 | Respectfully submitted,<br><br>_____<br>Paul J. Estuar, Esq.<br>pro haec vice<br>Litt, Estuar, Harrison & Kitson, LLP<br>1055 Wilshire Boulevard<br>Suite 1880<br>Los Angeles, California 90017<br><br>Phone (213)-482-6310<br>Fax (213)-380-4585 |