UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL A. BARNES, et al<br><br>                    Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br><br>                    Defendant | Civil Action No:    **06-315 (RCL)**<br><br>Next Event: None scheduled |

**PLAINTIFFS' PARTIALLY REDACTED REPLY TO THE DISTRICT'S OPPOSITION (DOCKET # 95) TO PLAINTIFFS' MOTION TO COMPEL JACCS DATA (DOCKET # 86)**

On 3/8/10 the District produced on a disc in response to Request # 2 of plaintiffs' 4th document production requests ("Request # 2") which asked for JACCS data from 19 JACCS tables identified by name and other tables identified by function for the date range 9/1/05 to the date of production. However, as plaintiffs informed the District before the District filed its opposition **(docket # 95)**, the JACCS data the District produced in response to Request # 2 does not satisfy Request # 2 as explained in detail below in the redacted section.

The District's JACCS data production ("October 2009 Eight Table Data Update") covers only some of the date range specified in Request # 2 and the October 2009 Eight Table Data Update provides data from only *some* fields of *only some* JACCS tables instead of **all fields** from the **19 tables identified by name** (and other functionally defined tables) in Request # 2.

Therefore, the District's October 2009 Eight Table Data Update provided on a disc on 3/9/10 is incomplete. Moreover, the District's legal objection to providing any response at all from 10/19/09 (date of original response) to 3/9/10 is not substantially justified.

1

**INTRODUCTION**

Request # 2 asked the District to produce from the JACCS database for the date range from 9/1/05 to the date of production; (1) all data from all fields of 19 tables identified by table name (using the table names in column A of the JACCS Data Dictionary JACCS in plaintiffs' possession); and (2) all data from all fields in any additional tables[1] needed to determine the exact location of a given inmate at any point in time on or after September 1, 2005; and (3) all data from all fields in any additional tables that include fields populated at R&D Control and/or R&D Processing, MHU, Superior Court and all of the half-way houses from whom in-custody defendants were released from 9/1/05 to present (and as supplemented to the termination of the case).

The District states that plaintiffs' email dated 3/11/10 "fail[s] to identify exactly what is supposedly lacking from the information provided." First, the opposition including the footnote omits any mention of the correspondence between the plaintiffs and the District which has been going on since October 2009 in which plaintiffs have repeatedly specifically explained to the District why an update of records to the fields and tables the District produced in mediation District Eight Table Data Runs (like the ones the District promised on 10/19/09 and produced on 3/9/10, the October 2009 Eight Table Data Update) does not satisfy plaintiffs' Request # 2 for additional JACCS tables and fields. Plaintiffs have labored "to identify exactly what is supposedly lacking" for months. Plaintiffs' Exhibit # 7, Plaintiffs' Exhibit # 8. The opposition thereby attempts by a selective presentation of emails to create the impression that the District did not and could not know how or why **the 3/8/10 production** of a **file created (Plaintiffs' Exhibit # 11) 10/19/09 containing nothing but an update of records to the fields and tables the District produced in mediation**

---

[1] Plaintiffs requested, in addition to the 19 enumerated fields, tables in two "functional requests," that is all tables needed to perform certain functions, because plaintiffs do not know which tables in addition to the 19 requested tables, if any, are required for this function.

does not satisfy **the 9/16/09 Request # 2 for JACCS data from all fields in 19 enumerated tables for the date range 9/1/05 to the present**. Moreover, the District omits from the text of plaintiffs' email text (discussed below in the redacted section) specifically informing the District why the disc does not satisfy Request # 2. Additionally, this footnote omits crucial correspondence between the **March 8, 2010** email transmitting the requests and the **March 11, 2010** email reply detailing the inadequacy of the production. Thirdly, the opposition including the footnote also disregards how the inadequacy of the request is apparent from the legend on the disc and the name of the file in light of the specificity of the request and the whole history of JACCS discovery in this case. Moreover, plaintiffs' motion specified the details of the request and the text of the motion make it clear that an update to earlier limited productions do not contain all the fields and tables specified in Request # 2. Finally, the opposition including the footnote attempts by a selective presentation of emails to shift to plaintiffs' the District's responsibility for not making an adequate production in response plaintiffs' request for JACCS data in Request # 2. It is the District's burden to compare the contents of the disc to the list of tables requested in # 2 and to make sure they match and to discuss the production with its JACCS experts given plaintiffs' specific explanation of why a data run of the 8 tables produced by the District in mediation would not satisfy Request # 2.

The District also states in its opposition on page two (**quoting from language from an opposition filed under seal pursuant to a protective order the Court entered on the District's motion, a motion the plaintiffs opposed**) that plaintiffs "concede" that "JACCS data cannot be relied on to identify over detentions" and so, "Accordingly, plaintiffs have acknowledged that JACCS data cannot be utilized on the key question in this phase of discovery, i.e., whether there is liability." The District is creating a false impression here in this statement about how plaintiffs (and the District) use JACCS data to identify over detentions **by reproducing one phrase but not all sentences of a paragraph from plaintiffs' opposition**.

The phrase quoted in isolation (as the District quotes it) creates a false impression of what plaintiffs are saying about their need for the JACCS data because, a few lines down in the same paragraph in which the phrase the District has quoted in isolation appears in full (in both the original and the revised versions of the opposition), plaintiffs explain how the JACCS data is useful in determining liability, as is explained below in the redacted section.

Moreover, the argument based on the selective presentation of a single phrase from an entire paragraph glosses over **the difference between an over detention (person held past his Release Date) and a "potential" late releases (person maybe held past his Release Date)** as the parties have been using the terminology since the Bynum case.  Plaintiffs devoted 5 ½ pages of their motion to compel responses to their 4th document production requests (which is what the District is opposing) to explaining how JACCS data yields "potential" late releases but not actual late releases, and how one could utilize a combination of lists of "potential" late releases generated by JACCS and manual examination of the jackets to separate over detentions (actual late releases) from "potential" late releases to ascertain the number of over detentions and over detention hours and to make observations about persons subjected to post release strip searches.  Motion to compel, pages 9-14.  Anyone who understands the distinction between an over detention (actual late release) and a "potential" late release (a potential over detention, that is, some shown as over detained in a query run in the JACCS data) knows why the JACCS data request is still useful.  Even if the JACCS data by itself cannot be used by itself to identify over detentions it can be used to identify "potential" late releases and to generate lists of "potential" late releases.  Anyone who has been paying attention to JACCS discovery in this case understands the distinction between an over detention (actual late release) and a "potential" late release.  An over detention is someone released after his Release Date and a "potential" late release is someone who, based on a query in the JACCS data, may have been released after his Release Date.  The District itself discusses this concept of over detentions and

4

"potential" late releases at length in its late release report submitted in <u>Bynum</u> attached hereto and to plaintiffs' opposition to the District's motion for a protective order as Plaintiffs' Exhibit # 1.  In the report the District explained how it used a combination of lists of "potential" late releases generated from JACCS combined with manual examination of the jackets to determine over detentions.

The District's contentions on plaintiffs' use of the data dictionary and the data entry matrix are equally ludicrous.  The District states "In the interim" plaintiffs' counsel used the JACCS data dictionary and the JACCS Data Entry Responsibilities matrix in the deposition of Lee Gazlay as though plaintiffs were using in a deposition documents it was meanwhile requesting in a motion to compel.  Plaintiffs have old versions of these documents and want all versions used, especially any more recent versions.  For example, the version of the JACCS Data Entry Responsibilities Matrix (request # 5) plaintiffs have (and have shown to the District repeatedly) is from December 2001 and was produced in <u>Bynum</u>, not in this case.  December 2001 is before MHU came online and before the DOC began making courthouse releases.  Plaintiffs cannot tell from the District's first or second responses whether they have all versions or even the most recent versions of the JACCS documents requested in requests #1, # 3 and # 5.

**DISCUSSION**

This portion of the reply and all exhibits are filed under seal pursuant to the protective order entered in this case, (docket # 64)

| | |
|---|---|
| Respectfully submitted,<br><br>   /sig/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br>Counsel for the Named Plaintiffs and the Classes<br>717 D Street, NW , Suite 210<br>Washington, DC 20004<br>Phone 202/824-0700 | |

| | |
|---|---|
| Respectfully submitted<br><br>_____<br>Barrett S. Litt, Esq.<br>pro haec vice<br>Litt, Estuar, Harrison & Kitson, LLP<br>1055 Wilshire Boulevard<br>Suite 1880<br>Los Angeles, California 90017<br><br>Phone (213)-482-6310<br>Fax (213)-380-4585 | Respectfully submitted,<br><br>_____<br>Paul J. Estuar, Esq.<br>pro haec vice<br>Litt, Estuar, Harrison & Kitson, LLP<br>1055 Wilshire Boulevard<br>Suite 1880<br>Los Angeles, California 90017<br><br>Phone (213)-482-6310<br>Fax (213)-380-4585 |