# Defendant's Exhibit No. 10

William Claiborne
717 D Street, NW
Suite 210
Washington, DC 20004

March 9, 2010

Grace Graham, Esq.
Denise Baker, Esq.
Assistant Attorney General
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001

 Re: <u>Barnes v. District of Columbia; plaintiffs' third document production requests</u>

This is a response to Andy's letter dated February 26, 2010. It seemed to me in yesterday's call that every time I tried to explain plaintiffs' productions and responses to the District's interrogatories you kept saying over and over that you had produced thousands of documents and plaintiffs were obligated to respond to the District's interrogatories in a narrative format. Since I did not want to continue with the call in that way since I did not consider it a discussion in the sense of an exchange of viewpoints I told you I would call today with Ms. White. Ms. White is out sick. So, I thought I would address in a letter some of the issues raised in Andy's letter and the telecon we had yesterday. The documents described below that plaintiffs will use to supplement their responses are too big to email and so plaintiffs will send them by messenger tomorrow on a disc in pdf format. Please let me know if you would like to discuss these issues further.

<u>Named plaintiffs' interrogatories</u>. Andy's letter states the District has named plaintiff Peterson's interrogatory responses but does not have any responses from any other named plaintiffs.

I responded the same day by email stating "I will respond to this letter in full but I want to stress at this point that we have provided signed interrogatories

1

from all named plaintiffs and additionally from Razina Jones (whom, as I told Denise and Grace at the time we filed responses) we intend to add as a named plaintiff." Andy replied the same day, "We have signed responses from David Peterson, Maurice Williams, and Regina Jones."

On Saturday I re-sent Andy the interrogatory responses from all named plaintiffs **except for Carl Barnes** and I also sent an interrogatory response from Razina Jones. **We do not have responses from Carl Barnes to submit at this time**.

<u>Which document responds to which portion of the interrogatories;</u> **It is sufficient for plaintiffs to provide docments without providing a narrative response by relating documents to individual interrogatories**. One of the issues Andy raised in his letter and which you both raised yesterday is your contention that plaintiffs must either specify which pages (or which portions of pages) of which documents are responsive to which portions of the interrogatories, or plaintiffs must respond to the interrogatories in narrative form. First of all, plaintiffs have been treating each of interrogatories # 1 and # 2 as just one interrogatory. If you contend that each subpart of each interrogatory is a separate interrogatory please let me know because that affects how many of the interrogatories plaintiffs must respond to.

Moreover, even if each of the interrogatories and its subparts is just one interrogatory then plaintiffs' production of the documents in the manner in which plaintiff provided them is sufficient under Fed. R. Civ. P. 33(d). Plaintiffs are under no obligation to specify which pages (or which portions of pages) of which documents are responsive to which portions or subparts of the interrogatories. Fed. R. Civ. P. 33(d) permits a party to produce or identify business records in lieu of a narrative answer to "an interrogatory." Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 33 states in part: "The subdivision gives the party an option to make the records available and place the **burden** of research on the party who seeks the information." (emphasis added)

The Rule requires only that the responding party specify "the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Plaintiffs have more than satisfied their obligations under the rule by identifying which documents are responsive to which interrogatory.

2

Under Fed. R. Civ. P. 33(d) "The records must be offered "in a manner that permits the same direct and economical access that is available to the [responding] party. If compilations and summaries exist, these should be made available." <u>U.S. ex rel. Englund v. Los Angeles County</u>, 235 F.R.D. 675 (E.D.Cal. 2006). Plaintiffs did provide all "compilations and summaries" that we have. Moreover, plaintiffs provided an index to all the affidavits listing them by name and Bates number on an Excel spreadsheet. In fact, the spreadsheet even indexed the affiants and affidavits with the Bates numbers, name of affiants, Exhibit numbers, Description, PDID of affiant, whether strip searched, whether overdetained, Release Date, Exit Date, and days overdetained. P00483 (Excel spreadsheet).

Plaintiffs conducted a manual examination of certain jackets to determine whether those persons had been over-detained. Two spreadsheets showing the results of the manual examination of certain jackets to determine whether those persons had been over-detained were produced as P00486/ Informal Discovery 2; P00487/ Informal Discovery 3 in plaintiffs' second supplemental responses. The spreadsheets showing the information plaintiffs collected from the jackets we sampled was broken down by whether the jackets related to the over detention claim or the strip search claim. In fact, the spreadsheets we gave the District even had links in them linking each jacket (in pdf format) to the spreadsheet, so the user could pull up the jacket simply by clicking on the link. Moreover, plaintiffs made all productions in electronic format.

Communications regarding over detentions were collected by individual and topic. For example, we indexed email traffic and attachments between W. Claiborne and M. Amato re Carl Lynch's over detention as follows:

| Email traffic and attachments between W. Claiborne and M Amato re Carl Lynch overdetention and courthouse release proposal | |
|---|---|
| Lynch court view contempt 05-Fel-3095 | P00412-P00417 |
| E-mail to MCA transmitting Lynch court view | P00418 |
| MCA Response on Lynch | P00419 |
| E-mail to MCA re Lynch court view | P00422-P00423 |
| E-mail to MCA Lynch + Orders | P00424-P00426 |
| Page 2 Contempt case CourtView prinout | P00427 |
| Courthouse release e-mail to MCA | P00428 |

3

| Sheriff's Ex to Directive | P00429-P00435 |
| --- | --- |
| SCT-Court Release Proposal to SCT | P00436-P00450 |
| Sheriff's Directive | P00451-P00456 |
| Release Analysis Report | P00457-P00462 |
| Update on Revision Funds | P00463-P00464 |
| Notice e-mail to Maria re Carl | P00465 |

We indexed and summarized grievances as follows:

Grievances:

1) James Jones filed a grievance while incarcerated on 4/24/06 complaining of overdetention and strip search on his behalf and all others similarly situated.  Plaintiffs do not have a copy of the grievance.  But, attached is an affidavit from Mr. Jones describing how, when and where he filed his grievance.  [1449-500873 to 1449-500873]
2) David Peterson filed a grievance while incarcerated on 2/22/06 complaining of over-detention and strip search on his behalf and all others similarly situated.  We do not have a copy of the grievance.  Attached is an affidavit from Mr. Peterson describing how, when and where he filed his grievance.  [1449-500805 to 1449-500806]  Sgt Murphy at DC Jail told Peterson he would submit Peterson's grievance 1449-500805
3) Attached is a copy of a grievance filed by Carl Lynch submitted via email to Maria Amato, Esq. on 2/18/07 along with a copy of the transmittal email.  P000326  P000419.1/.2.  Lt Mayweather told Ralph Robinson about 2/18/07 that there was no way for Carl Lynch to file a grievance where he was and Lt Mayweather refused to accept Mr. Lynch's grievance P000465.  Maria Amato said in an email to W Claiborne that she would forward Mr. Lynch's grievance to the Warden P000419.1

Information needed to supplement plaintiffs' responses.  The District complains because plaintiffs have not responded to the District's interrogatories to "state the complete factual basis for all claims of over detention against the District of Columbia" and to "state the complete factual basis for all claims of unlawful strip-searching against the District of Columbia."  Andy's letter specifically states that plaintiffs have not supplemented their responses since **October 2009**.  But, at the same time, the District is withholding information from plaintiffs which plaintiffs have requested and which plaintiffs specifically explained they needed to respond

4

further to the interrogatories.  I**t is sufficient for a party lacking information to respond to interrogatories to state that it is unable, at the time the answer is provided, to provide the information requested but will supplement its answers as information becomes available**.  Covad Communications Co. v. Revonet, Inc., 258 F.R.D. 17, 20 (D.D.C. 2009).  We cannot specify which interrogatory documents relate to until we get the documents.  Likewise, we cannot provide facts in response to the interrogatories until we get the facts.

For example, on **September 16, 2009** plaintiffs requested JACCS data and documentation in plaintiffs' 4th document production requests and we still have not received the data.  We explained numerous times that we needed the data and documents to develop information about over detentions.

By email dated **Thu, Oct 15, 2009 we stated:**

> We have not previously received all of the information in our 4th document production request.
>
> For example, Gazley & Godwin have previously never provided movement data.  Lt Watson testified in his deposition that persons sent from CTF to the courthouses came over from CTF to the DC Jail on a catwalk and their location in the jail was entered as R&D so that info should be in the movement fields.  Also, Lt Watson testified in his deposition that the locations of persons held in the R&D Control and released before 10 would be reflected in the movement fields.

By letter dated October 19, 2009 we explained:

> Plaintiffs need the JACCS data to identify persons who were over detained and the lengths of their over detentions to establish that there was a pattern of overdetentions during the class period and the District acquiesced in the pattern of overdetentions.  We also need the JACCS data to show that the District held many court returns entitled to release till the next morning because of the 10:00 pm cut off rule.
>
> Also, we need comprehensive information about historical and current fields and codes in JACCS for the class period and we do not have that.  For example, codes changed from COR to COR-nhu, COR-Jail and COR Superior Court over time and we need

5

> documentation showing when those changes occurred. There may be other changes we don't know about.

With respect to the strip search claims we stated in our second supplemental responses:

> For example, on the strip search claims plaintiffs were surprised to learn just recently that the District did not start holding court returns entitled to release or potentially entitled to release at MHU until 3/27/0. The 30(b)(6) deponent Watford explained that court returns entitled to release were held at the R&D control. He said inmate movement data would show whether court returns entitled to release were held in R&D control pending release. We have requested that data and we need to have our experts review it. I asked Watford questions about what data entry fields the R&D staff populated and he did not know. We learned only at the end of mediation that the JACCS data did not reflect actual release locations.

We still have not received the data we requested in the 4th document production requests. My courier picked up a disc from your office today. My experts will review it as soon as we can, but we will not have completed our review until after Wednesday.

Furthermore, plaintiffs requested 560 jackets to perform a sample of over detentions and over detention hours and to make observations about strip search members and the District is resisting production of those jackets.

Moreover, in order to make observations about the District's strip search policies and practices regarding court returns entitled to release released from the DC Jail during the period between 9/1/05 and 3/26/06 we need reliable information about the strip search practices. Moreover, through the 30(b)(6) deponent Watford plaintiffs learned for the first time on August 24, 2009 that certain potential court returns entitled to release were held in cages in R&D Control (and thus according to Watford) not strip searched during the period 9/1/05 to 3/26/06. Watford stated in his deposition that housing and movement data in JACCS reflects whether a court returns entitled to release in this period was held in R&D Control or returned to general population pending his release. Plaintiffs have requested the housing and movement data in JACCS and will analyze it upon receipt from the District.

Sgt Graham suggested that the R&D staff on the second shift during the period did not segregate court returns entitled to release to avoid subjecting them to release.  We have requested logs for R&D Control and R&D Processing and we are still missing most R&D Processing log pages for the key period 9/1/05 and 3/26/06.  Moreover, I have been asking you for weeks to confirm whether Brian Melchoir worked in R&D Processing on the third shift for the key period 9/1/05 and 3/26/06 so we can depose him and you have not done so.  I have asked for socials for three of the four officers you identified as no longer employed by the District so we can locate and serve them and you are refusing to provide the data even though protection against disclosure of the socials is guaranteed by the protective order in the case.

<u>Early contention interrogatories force parties to articulate theories of their case not yet fully developed</u>.  As I explained in plaintiffs' second supplemental responses, the major reasons for delaying contention interrogatories until after discovery has matured are: they are burdensome in the early stages of discovery and early contention interrogatories force parties to articulate theories of their case not yet fully developed.  <u>Storie v. United States</u>, 793 F. Supp. 221, 142 F.R.D. 317, 319 (E.D. Mo. 1992). <u>cited</u> <u>in</u>  <u>Abbott</u>, 155 F.R.D. at 527.

One example from this case illustrates the burdens of forcing parties to articulate theories of their case not yet fully developed.  For example, plaintiffs conducted a manual examination of certain jackets to determine whether court returns had been strip searched at the DC Jail after becoming entitled to release at their court appearances.  One of the criteria in the case was release location because our working method for identifying strip search persons involves ascertaining the release location and the strip search practice at that location.  <u>See</u> Dr. Kriegler's declaration attached as Plaintiffs' Exhibit # 5 to plaintiffs revised opposition to the District's motion for a protective order.

Plaintiffs relied on the release locations specified in the Release Authorization Forms in the jackets in obtaining release locations from the jackets.  We believed at that time that the practice for searching at the DC Jail was to strip search all persons entering the Jail.  After plaintiffs had conducted an analysis of about 350 jackets, the District informed plaintiffs that the release location data in JACCS for the period 9/1/05 to 10/9/06 did not reliably reflect the actual release location because all releases had been coded in JACCS even though some had been made from MHU, and therefore the release locations on the Release Authorization Forms were not reliable for

7

releases made from MHU. Since actual release location is one of the criteria of membership in the strip search class plaintiffs had to collect release location data from other sources and will have to re-do the analysis.

Moreover, we still have not nailed down the strip search practices applied to court returns potentially entitled to release who were returned to the DC Jail during 9/1/05 and 3/26/06 and other parts of the class period because we have not received from the District the information specified above. Therefore, we are still developing methods for determining actual release location and re-analyzing the jackets used in the strip search sample. Moreover, we are still developing the facts of the strip search practices. Therefore, we are reluctant to conduct final analyses and express theories based on the analyses until we know we have all the relevant data.

Under Rule 33 it is sufficient for a party lacking information to state that it is unable, at the time the answer is provided, to provide the information requested but will supplement its answers as information becomes available. Fed. R. Civ. P. 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). The answer must be "true, explicit, responsive, complete, and candid." However, because the responding party has a continuing duty to supplement its answer, **it is sufficient for a party to state that it is unable, at the time the answer is provided, to provide the information requested but will supplement its answers as information becomes available**. Covad Communications Co. v. Revonet, Inc., 258 F.R.D. 17, 20 (D.D.C. 2009).

Your first interrogatory asks plaintiffs to "state the complete factual basis for all claims of overdetention against the District of Columbia." I also explained that we lacked information needed to develop and to articulate our theories of the case which we had not yet fully developed. I then specified examples of facts plaintiffs need to respond to the interrogatory and to develop our theories of the case.

Random shuffle of 500 on time COR releases from first six months of Barnes class period. This spreadsheet has the names and other information of 500 court returns released from DC Jail on the date of their last court appearances during the period 9/1/05 to 3/26/06. These names are a random shuffle of 500 of all the on time COR releases from first six months of Barnes class period. These names contain a subset of names which could function as a statistically valid sample of all the on time COR releases from first six

8

months of <u>Barnes</u> class period.  Moreover, plaintiffs believe these persons have information about their Release Dates and the type of searches they received before being released from DC Jail during the period 9/1/05 to 3/26/06.

<u>Phone call with Cpl Coleman</u>.  Plaintiffs' counsel have had one phone conversation with Steven Coleman on Sunday March 7, 2010 about resetting the time for his deposition noticed on the subpoena.  Plaintiffs' counsel also discussed other matters with Mr. Coleman on Sunday March 7, 2010.  The subject matter of the "other matters" is being withheld on the basis of the work product doctrine.  Plaintiffs will provide a privilege log listing this conversation.

<u>Privilege log</u>.  Plaintiffs are considering the issue of the privilege log raised in Andy's letter and will address that issue in a letter or email in a few days or early next week.

Plaintiffs are considering the other issues raised in Andy's letter and will address those issues in a letter or email in a few days or early next week.

<u>Supplemental responses</u>.  That said, plaintiffs hereby supplement their responses to the District's interrogatories and document production requests as follows:

<u>Interrogatory # 1 and # 2</u>.  Dr. Kriegler's declaration and exhibits attached as Plaintiffs' Exhibit # 5 to plaintiffs revised opposition to defendant's motion for a protective order.

<u>Interrogatory # 1 and # 2</u>.  Mr. Day's declaration and attachment attached as Plaintiffs' Exhibit # 6 to plaintiffs revised opposition to defendant's motion for a protective order.

<u>Interrogatory # 1 and # 2</u>.  Mr. Day's attachment A to Plaintiffs' Exhibit # 6.

<u>Interrogatory # 1 and # 2</u>.  The Rule 1007 summary of over detentions which the District attributed to the 10:00 pm cut-off rule or to the 10:00 pm cut-off rule in combination with one or more other reasons attached as Attachment A to Plaintiffs' Exhibit # 6 to plaintiffs revised opposition to defendant's motion for a protective order.

<u>Interrogatory # 1 and # 2</u>.  Documents in named plaintiffs' files and in the files of persons produced by the District in response to plaintiffs' document

production requests and attached as Plaintiffs' Exhibit # 3 to plaintiffs revised opposition to defendant's motion for a protective order.

Interrogatory # 1.  Spreadsheets created by Sean Day showing data collected from institutional jackets for the over detention sample prepared pursuant to FRE 1007 has previously been produced to the District as P00486/ Informal Discovery 2; P00487/ Informal Discovery 3 as stated in our second supplemental responses.

Interrogatory # 1 and # 2.  Spreadsheets created by Sean Day showing data collected from institutional jackets for the strip search sample prepared pursuant to FRE 1007 has previously been produced to the District and are attached hereto.

Interrogatory # 1 and # 2.  Spreadsheets showing random shuffle of 500 on time COR releases from first six months of Barnes class period.

Interrogatory # 1 and # 2.  The Rule 1007 summary of over detentions which the District attributed to the 10:00 pm cut-off rule or to the 10:00 pm cut-off rule in combination with one or more other reasons attached as Attachment A to Plaintiffs' Exhibit # 6 to plaintiffs revised opposition to defendant's motion for a protective order.

Interrogatory # 1 and # 2.  Documents in named plaintiffs' files and in the files of persons produced by the District in response to plaintiffs' document production requests and attached as Plaintiffs' Exhibit # 3 to plaintiffs revised opposition to defendant's motion for a protective order.

Interrogatory # 1 and # 2.  Spreadsheets created by Sean Day showing data collected from institutional jackets for the over detention sample prepared pursuant to FRE 1007 has previously been produced to the District as P00486/ Informal Discovery 2; P00487/ Informal Discovery 3 as stated in our second supplemental responses.

Interrogatory # 1 and # 2.  Spreadsheets created by Sean Day showing data collected from institutional jackets for the strip search sample prepared pursuant to FRE 1007 has previously been produced to the District and are attached hereto.

Interrogatory # 1 and # 2.  Spreadsheets showing random shuffle of 500 on time COR releases from first six months of Barnes class period.

<u>Interrogatory # 1 and # 2</u>.  Steven Smith affidavit.

<u>Interrogatory # 1 and # 2</u>.  Court return chart.

<u>Interrogatory # 1 and # 2</u>.  the report by Karen Schneider entitled "Review of Paperflow Process between the Superior Court, the United States Marshals Service, and the Department of Corrections."  Bates ## 15303 to 15399.

The documents referenced above are too big to email and plaintiffs will send them by messenger tomorrow.

Sincerely yours,
/wc/
William Claiborne