UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL A. BARNES, et al<br><br>          Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE<br>DISTRICT OF COLUMBIA,<br><br>          Defendant | Civil Action No:   **06-315 (RCL)**<br><br>Next Event: None scheduled |

## NOTICE

## PLAINTIFFS' OBJECTIONS TO DISTRICT OF COLUMBIA'S PROPOSED TRIAL PLAN AND AMENDMENTS TO PLAINTIFFS' PROPOSED TRIAL PLAN

## I.  INTRODUCTION

Plaintiffs moved this Court for leave to submit an analysis of the issues raised by the District in its proposal in order to assist the Court in resolving issues presented by trying general damages using the Dellums[1] method, and

---

[1] Dellums v. Powell was a lawsuit brought in 1971 in the United States District Court by U.S. Representative Ronald Dellums individually and by nine persons seeking to represent a class of all persons arrested on the steps of the United States Capitol on May 5, 1971 while engaged in a protest against the war in Vietnam. Persons named as defendants included various

on other issues (docket # 321).  The <u>Dellums</u> method refers to the method employed by the district court and approved by the Court of Appeals in <u>Dellums v. Powell</u> by which a class of about 1,200 protestors ( <u>Dellums I</u>, 566 F.2d at 191) tried their claim for **compensatory** damages on their false arrest/ false imprisonment/ Fourth Amendment claims (and certain other claims) on an aggregate[2] basis using a group of plaintiffs that was not chosen by a randomly selected, statistically valid sample of plaintiffs and by subdividing the class into "sub classes" or groups based on length[3] of

_____

officials of the United States and of the District of Columbia and the District itself.

The appeals in the lawsuit generated several appellate opinions including: Dellums v. Powell, 566 F.2d 167, 173 (D.C. Cir. 1977) (Dellums I) (dealing with appeals by the then chief of the MPD, James M. Powell); Dellums v. Powell, 566 F.2d 216, 218 (D.C. Cir. 1977)(Dellums II)(Court of Appeals considers appeals taken by Metropolitan Police Chief Jerry V. Wilson and the District of Columbia from a final judgment entered on jury verdicts in the trial); and Dellums v. Powell, 660 F.2d 802, 804 (C.A.D.C., 1981)(post remand dealing with malicious prosecution claim).  Dellums I and Dellums II both address damages issues raised by the district court's trying damages on an aggregate basis.

[2] Plaintiffs herein use the term "aggregate" rather than "class wide" because the parties and court subdivided the class into groups based on length of detention.

[3] The periods were: (1) for12 hours or less of detention; (2) for 12 to 24 hours of detention; (3) for 24 to 48 hours of detention; and (4) for 48 to 72 hours of detention.  Dellums I, 566 F.2d at 174, n.6.  Class members were placed into the appropriate group based on length of detention as shown in applicable records.

detention.  566 F.2d 167 (D.C. Cir. 1977). The Court of Appeals approved[4] the use of a trial on damages for the false arrest/ false imprisonment/ Fourth Amendment claims using a sample of about 60 class members chosen out of a class of about 1,200 by the plaintiffs.

Plaintiffs have now reviewed the District's proposed trial plan (docket # 317) and carefully analyzed Augustin v. Jablonsky, 2011 WL 4953982, 16 (E.D.N.Y. 2011)(decertifying damages class after trial of general damages on an

---

[4] In Dellums I (dealing with appeal by then MPD Chief Powell) the Court of Appeals described the various amounts awarded by the jury, 566 F.2d at 174 n.6, evaluated and approved the award on the false arrest/ false imprisonment claim as consistent with defendant Powell's "substantive rights" and Fed. R. Civ. Proc. 23(b)(3), 566 F.2d at 189 and n.56,

held "Nor do we think that determination of damages in this case requires individualization," Id.  In Dellums II[4], the Court of Appeals evaluated certain challenges to the jury's aggregate damages award on the Eighth Amendment claim and sua sponte considered certain other issues related to damages. The discussion in Dellums II makes clear that the Court of Appeals had carefully considered and approved the trial of compensatory damages (including on an aggregate basis using a "simple sample," not a statistical sample."  566 F.2d at 227-228.  The discussion also makes clear that the jury was charged that, in setting the damages for false arrest and false imprisonment, that it could "consider both the length of time that plaintiffs were held and the treatment and conditions of detention to which they were subjected." and that it **should consider as elements of damages any humiliation and the deprivation of any right caused by the loss of liberty.**"  Id. Thus the Court of Appeals clearing approved the award of compensatory damages using a simple sample because the class was subdivided on the length of time that plaintiffs were held.  Id.

aggregate basis using ten class members chosen by each party), the case highlighted by the District in its proposal, e.g. p. 10, and the Augustin Court's order *certifying* a damages class, Augustin v. Jablonsky, 99-3126, E.D.N.Y. March 27, 2008  (DRH)(docket # 64)(attached), and plaintiffs have consulted with their statistics expert.

Plaintiffs now propose in the damages phase of the trial bifurcating[5] the trial of "general" damages from the trial of "special" damages (the remaining compensatory damages including emotional distress damages) just like the court did in Augustin v. Jablonsky, 2011 WL 4953982, 16 (E.D.N.Y. 2011).  Thus, as we detail below, plaintiffs now propose a two phase process for trying damages: (1) **in phase 1**, use the Dellums method to try "general" damages on an aggregate basis for both claims; and

then (2) **in phase 2**, if needed (as determined after the trial of "general" damages using the Dellums method), try the remaining components of compensatory damages ("special" damages) either on an aggregate basis by using a sample chosen by a statistically significant random sampling method or in indivi

_____

[5] "Bifurcation" or even "polyfurcation" of issues including damages issues is a common practice in class actions and is supported by either Fed. R. Civ. Proc. 23(b)(3) or 23 (c)(4).

dual damages trials. <u>Neal v. Director, District of Columbia Dept. of Corrections,</u>1995 WL 517246, 3 (D.D.C. 1995)(discussing innovative methods of handli

ng damages trials in a class context).

The parties agree on many of the concepts underlying plaintiffs' plan to bifurcate the damages trial.  For example, both parties have proposed trying damages in this case for both claims on an aggregate basis by using a sample[6] of the class instead of all class members.  District's proposal (docket # 317), p. 8 (but "general[7] damages" only, basically adopting the definition of "general"

---

[6] <u>As used herein, unless defined otherwise, the word sample (used by itself or in the phrase "simple sample" or "Dellums sample" or "Dellums-Augustin sample" simply means a fraction of the total classes, not necessarily a statistically valid sampl</u>

<u>e chosen by a statistically significant random sampling method.  However, such a sample in the context of a trial on general damages is still a representative sample. The term "statistically valid sample" or "statistical sample" means a statistically valid sample chosen by a statistically significant random sampling metho</u>

<u>d.</u>

[7] <u>Both parties essentially adopt the definition of "general" damages set out in Augustin v. Jablonsky, 2011 WL 4953982, 16 (E.D.N.Y. 2011), discussed below) for the strip search claim and plaintiffs propose the definition of "general" damages for the over-detention claim that is set out in Kerman and Phillips.  According to Kerman, 374 F.3d at 125-126, "The damages</u>

damages set out in <u>Augustin v. Jablonsky</u>, 2011 WL 4953982, 16 (E.D.N.Y. 2011), discussed below); Plaintiffs' proposal (docket # 319), p. 21.  Moreover, both

parties agree that in this case "general" damages are presumed to class members for both classes.  District's proposal p. 10 (discussing Augustin).

However, the parties differ on whether any sample of class members used to try damages on an aggregate basis must be a statistically significant randomly chosen sample, or a simple <u>Dellums</u>-type sample / <u>Augustin</u>-type sample, and the parties differ on the range of damages (only general damages or all compensatory damages) that can be tried using sampling.

For example, plaintiffs proposed (docket # 319) trying damages for both claims using a modified form of the <u>Dellums</u> method.  <u>Dellums v Powell</u>, 566 F.2d at 189.  In <u>Dellums,</u> the Court of Appeals upheld a jury's award of a lump sum of compensatory damages, and a distribution matrix of damages

---

<u>recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty."  The Phillips Court said: "Given the very nature of the tort, then, it is in our view appropriate for a jury in a false arrest case to consider loss of liberty per se as a basis for the award of compensatory damages."  458 A.2d at 725.</u>

for unlawful arrests and illegal detentions based on the arrests.  <u>Id</u>.  The jury in <u>Dellums</u> decided on a lump sum for a class of protestors arrested without probable cause and illegally detained for varying periods.  It then set a schedule according to which damages were assigned to subclasses based upon length of illegal incarceration.  The district court then assigned class members to a subclass based upon the detention records

of the government.  <u>Id</u>.  The <u>Dellums</u> Court specifically stated, "Nor do we think that determination of damages in this case requires individualization."  <u>Id</u>.  <u>Dellums</u> allowed all compensatory damages to be tried on an aggregate basis without the use of a statistically valid random sample.

Plaintiffs now propose that general damages be tried on an aggregate basis, and that since general damages are common to all class members and so do not require "individuation" beyond subdividing the over-detention class into sub-classes based on length of over-detention, <u>Dellums</u>, 566 F.2d at 189, plaintiffs the use of a <u>Dellums</u>-type sample, not a statistically significant random sampling method, is appropriate (at least initially).  For example, in the <u>Augustin</u> case, the case highlighted by the District in its proposal, p. 10, the Court permitted each party to "call up to ten fact witnesses from the class ... [to] testify solely concer

ning the details of the search without any information concerning the effect that the search had upon them" personally.  2011 WL 4953982, 2. Plaintiffs propose that each party choose "ten fact witnesses from the class". Augustin, 2011 WL 4953982, 2.

The Dellums method refers to the method employed by the district court and approved by the Court of Appeals in Dellums v. Powell. There, a class of about 1,200 protestors tried their claim for **compensatory** damages on their false arrest/ false imprisonment/ Fourth Amendment claims (and certain other claims) on an aggregate[8] basis using a group of plaintiffs that was not chosen by a randomly selected, statistically valid sample of plaintiffs. The class was subdivided into "sub classes" or groups based on length[9] of detention.  566 F.2d 167 (D.C. Cir. 1977).  The Dellums Court held that subdividing the false imprisonment class into subgroups based on lengths of over-detention provided all the individuation needed to protect defendants' "substantive rights" and to comply with Fed. R. Civ. Proc. 23.  Dellums, n.6.

_____

[8] Plaintiffs herein use the term "aggregate" rather than "class wide" because the parties and court subdivided the class into groups based on length of detention.

[9] The periods were: (1) for12 hours or less of detention; (2) for 12 to 24 hours of detention; (3) for 24 to 48 hours of detention; and (4) for 48 to 72 hours of detention.  Dellums I, 566 F.2d at 174, n.6.  Class members were placed into the appropriate group based on length of detention as shown in applicable records.

Conversely, the District proposed (docket # 317) using "statistical sampling" to try only[10] "general" (as opposed to all compensatory) damages on an aggregate basis for both claims.  District's proposal, p. 8 ("A statistically valid, random sample of all class members to determine **general** damages on an aggregate basis is the only way to ensure fairness[11] to the District.")(emphasis added).

The District does not expressly define the term "general" damages in its proposal but, given the District's reliance on Augustin in its proposal, e.g. District's proposal p. 10, it is clear that by "general" damages the District means to adopt the definition of general damages employed in Augustin.  See Augustin v. Jablonsky, 2011 WL 4953982, 1 (E.D.N.Y. 2011).  Thus, defendant is proposing a modified statistical sampling approach because

---

[10] Augustin approved a plan of trying ***general*** damages using a Dellums-type sample.  2011 WL 4953982, 2.  The District did not explain why it proposed using a statistically valid sample to general damages instead of the Dellums-type sample used by the Augustine court.

[11] The District does not explain its contention that using a statistically valid sample to try only ***general*** damages "is the only way to ensure fairness to the District." The Augustin Court approved a plan to try general damages using a Dellums-type sample, not a statistically valid sample.  2011 WL 4953982, 2. The Augustin Court permitted each party to "call up to ten fact witnesses from the class ... [to] testify solely concerning the details of the search without any information concerning the effect that the search had upon them" personally.  Id.  Thus, the Augustin Court did not use a statistically valid sample to try general damages as the District does.

whereas cases using "statistical sampling" (<u>Hilao, v. Estate of Marcos</u>, 103 F.3d 767 (9th Cir. 1996)) to try compensatory damages tried **all compensatory damages** (including mental distress), the District, relying on <u>Augustin</u>, proposes trying only "general" damages using statistical sampling.

The District in its proposal did accept the premise of <u>Augustin v. Jablonsky</u>, 2011 WL 4953982, 16 (E.D.N.Y. 2011) that, at least for the strip search claim, a measure of "general" damages is presumed for each class member, and that the general damages could be tried on an aggregate basis. <u>E.g.</u>, District's proposal, p. 10; <u>Augustin</u>, 2011 WL 4953982, 2.  <u>Augustin</u> held "that an injury to human dignity was necessarily entailed in being strip searched and thus was common to each member of the class as to its cause and the resulting general, or presumed—as distinct from the special— damages sustained." <u>Augustin v. Jablonsky</u>, 2011 WL 4953982, 1 (E.D.N.Y. 2011).

The preceding discussion of the parties' proposals demonstrates that, in order to sort out the differences between the parties' proposals for trying damages on an aggregate basis and choosing between the two proposals, the following concepts must be clarified, and the two proposed plans must be analyzed in light of these concepts:  (1) the two different types of samples that can be used to try damages on an aggregate basis, a simple sample composed of a portion of the class, however chosen, or a sample chosen by a

statistically significant random sampling method; (2) the range or type of damages that can be tried using each type of sample, i.e. only "general" damages or the full range of compensatory damages including emotional distress damages; and (3) whether and what type of damages can be "presumed" to have been suffered by class members.

These concepts are discussed in detail below with a focus on which sampling method is most appropriate and reasonable for the different types of damages.  As discussed below, plaintiffs believe that the range of damages to be tried on an aggregate basis (general damages or all compensatory damages including emotional distress damages) is a function of the type of sampling method (Dellums-type sample or statistically valid sample) chosen. For example, using a statistically significant random sampling method of selecting a sample supports a trial of all types of compensatory damages. Hilao, v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1996).  Conversely, using a sample of class members chosen by the parties without a statistically significant random sampling method, that is, the Dellums-Augustin method, supports at least a trial of "general" damages (as the term is "general" damages used in Augustin and Kerman[12]).

_____

[12] Kerman v. City of New York, 374 F.3d 93, 126 (2d Cir. 2004) (damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm,

Given that trying damages using a valid statistical sample would consume far more time, money and labor than trying general damages using a simple <u>Dellums</u> sample, the issue for resolution here is which type of sample to use, and which type of damages to try.  As explained below, plaintiffs propose a two phase trial with the initial phase consisting of trying general damages using a simple <u>Dellums</u> sample, a second phase trying the remaining compensatory damages including emotional distress damages using a statistically valid sample on an aggregate basis or in individual trials.

## II. ANALYSIS OF THREE MAJOR CONCEPTS INVOLVED IN TRYING DAMAGES ON AN AGGREGATE BASIS AND APPLICATION OF THE CONCEPTS TO THIS CASE

### 1.  In general

Trying damages on an aggregate basis involves two basic decisions: (1) picking a sampling method; and (2) deciding the range of damages to be tried on an aggregate basis.  As stated above, and discussed below, plaintiffs believe that the range of damages to be tried on an aggregate basis (general damages or all compensatory damages including emotional distress damages)

---

embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty).

is a function of the type of sampling method (<u>Dellums</u>-type sample or statistically valid sample) chosen.

There are two general methods of trying damages on an aggregate basis -- the <u>Dellums</u> method using a "simple sample", illustrated of course by <u>Dellums (all compensatory damages) and Augustin (general damages only)</u>, and "statistical sampling," best illustrated by <u>Hilao, v. Estate of Marcos</u>, 103 F.3d 767 (9th Cir. 1996). As for the range of damages to be tried on an aggregate basis using a sample of the class, parties can try the full range of damages or limit the damages tried to "general" damages.  <u>See</u> <u>e.g.</u> <u>Dellums II</u>, 566 F.2d at 227-228 (quoting jury instructions describing elements of damages).

## 2. Type of sample used

There are two general methods of trying damages on an aggregate basis -- the <u>Dellums</u> method using a "simple sample", illustrated of course by <u>Dellums</u>, and "statistical sampling," best illustrated by <u>Hilao, v. Estate of Marcos</u>, 103 F.3d 767 (9th Cir. 1996).  The major difference between the two methods is the method of choosing the sample.   One significance of the different methods of choosing a sample is that the range of damages to be tried on an aggregate basis (general damages or all compensatory damages including emotional distress damages) is a function of the type of sampling method (<u>Dellums</u>-type sample or statistically valid sample) chosen.  For

13

example, using a statistically significant random sampling method of selecting a sample supports a trial of all types of compensatory damages. Hilao, v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1996).  Conversely, using a sample of class members chosen by the parties without a statistically significant random sampling method, that is, the Dellums-Augustin method, supports at least a trial of "general" damages.

As discussed above, in Dellums the district court used a sample of plaintiffs chosen by the plaintiffs without using a statistically significant random sampling method to try compensatory damages for a class of persons on several different claims including a false arrest/ false imprisonment and Fourth Amendment claims (the "false arrest/ false imprisonment claims"), and an Eighth Amendment conditions of confinement claim.  The Court of Appeals made clear that using this method to try damages for the false arrest/ false imprisonment claims violated neither Rule 23(b)(3) nor any substantive rights of the defendants in the case.  Dellums I, at 174 n.6.  The Dellums Court approved the use of a Dellums-type sample to try all compensatory damages permissible in a false imprisonment case, not just general damages.  See e.g. Dellums II, 566 F.2d at 227-228 (quoting jury instructions describing elements of damages). Thus, the Dellums opinions hold that the Dellums method supports a trial of all compensatory damages even though the sample was **not chosen** using a statistically significant

random sampling method.

The "statistical sampling" method used by <u>Hilao</u> does use a statistically significant random sampling method of choosing the sample of the class members.  The statistically significant random sampling method, that is, using a sample chosen by a statistically significant random sampling method, supports an award of all types of compensatory damages.  <u>Hilao, v. Estate of Marcos</u>, 103 F.3d 767 (9th Cir. 1996).

Because there is ample support for using a <u>Dellums</u>-type sample to try general damages on an aggregate basis and plaintiffs propose restricting the initial phase of the damages trial to a trial of general damages using a <u>Dellums</u>-type sample plaintiffs focus their discussion on the <u>Dellums</u> method. Plaintiffs believe the burden is on the District to show why a method using a statistically significant random sampling method to choose a sample for a trial restricted to general damages.

Using a <u>Dellums</u>-type sample to try general damages is also the most conservative use of the <u>Dellums</u> method.  <u>Dellums</u> approved the use of a <u>Dellums</u>-type sample to try all compensatory damages permissible in a false imprisonment case, not just general damages.  <u>See</u> <u>e.g.</u> <u>Dellums II</u>, 566 F.2d at 227-228 (quoting jury instructions describing elements of damages). Therefore, using a <u>Dellums</u>-type sample to try just general damages is well within the range of damages approved by the <u>Dellums</u> Court.

Plaintiffs restrict the <u>Dellums</u> method to because the <u>Dellums</u> method does not use a statistically valid sample, and so Plaintiffs restrict the <u>Dellums</u> method to damages common to all class members.  <u>Augustin</u> also approved the use of a <u>Dellums</u>-type sample to try general damages thus providing additional support for plaintiffs to try general damages on an aggregate basis using a <u>Dellums</u>-type sample.  <u>See</u> <u>e.g.</u>, Augustine unpublished damages certification order.  <u>Augustin v. Jablonsky</u>,  2011 WL 4953982, 16 (E.D.N.Y. 2011).

**Statistical sampling using a sample chosen by a statistically significant random sampling method produces at least as accurate results as individual trials for compensatory damages.**  <u>Justice Improved: The Unrecognized Benefits of Aggregation and Sampling in the Trial of Mass Torts</u>**,** Michael J. Saks and Peter David Blanck, April, 1992 44 Stan. L. Rev. 815, 851 (1992).  **In fact, statistical sampling actually produces more accurate results than individual trials.**  44 Stan. L. Rev. at 851.  Therefore statistical sampling can be used for determining compensatory damages on a class-wide or aggregate basis. <u>Hilao, v. Estate of Marcos</u>, 103 F.3d 767 (9th Cir. 1996).

**3.  The concept of General damages and the how the concept affects trial of damages**

16

Defendant concedes, as do plaintiffs, that there are objective general damages or ""presumed emotional distress damages," common to all members.  Defendant's proposal at 10 citing Augustin at 5.  Defendant generally concedes the existence of general damages in the over-detention claim as well.  Moreover, case law clearly establishes the concept of presumed, general damages for every class member in the over-detention claim.  See e.g., Kerman v. City of New York, 374 F.3d 93, 126 (2d Cir. 2004); Phillips v. District of Columbia, 458 A.2d 722, 725 (D.C. 1983).

Both parties essentially adopt the definition of "general" damages set out in Augustin v. Jablonsky, 2011 WL 4953982, 16 (E.D.N.Y. 2011), discussed below) for the strip search claim and plaintiffs propose the definition of "general" damages for the over-detention claim that is set out in Kerman and Phillips.  According to Kerman, 374 F.3d at 125-126, "The damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty."  The Phillips Court said: "Given the very nature of the tort, then, it is in our view appropriate for a jury in a false arrest case to consider loss of liberty per se as a basis for the award of compensatory damages."  458 A.2d at 725.

17

Plaintiffs discuss below the concept of general damages in the over-detention claim and the strip search claim.  Plaintiffs discuss the concept of general damages in the over-detention claim first because (1) it is so well established in the law, both generally and in District of Columbia common law, see Kerman and Phillips; and (2) the Augustin Court relied on the concept of general damages in false imprisonment cases (which are virtually identical to over-detention claims) especially Kerman, in formulating its theory of general damages in the strip search claim.  Plaintiffs then separately discuss the concept of general damages in the strip search claim.

General damages in false imprisonment/ over-detention claims.  The common law of the District of Columbia recognizes the concept of general damages in false imprisonment cases (which are virtually identical to over-detention claims).  See e.g., Phillips, 458 A.2d at725 (liberty interest in a false imprisonment case is a per se stand-alone element of damages even where plaintiff waives all emotional distress and other damages).  New York law, and federal courts applying New York law false imprisonment law to Fourth Amendment[13] § 1983 cases, also recognize the concept of general damages in false imprisonment cases.

---

[13] The starting point for damages in § 1983 cases is the common law measure of damages in the applicable state.  Carey v. Piphus, 435 U.S. 247, 258 (1978).

Plaintiffs discuss the concept of general damages in the over-detention claim under New York law as enunciated by the Second Circuit in <u>Kernam</u> before discussing the concept in District of Columbia common law because (1) the discussion is so well developed in <u>Kerman</u>; and (2) the <u>Augustin</u> Court relies on the concept of general damages in false imprisonment cases as developed by the Second Circuit in <u>Kerman</u> in formulating its theory of general damages in the strip search claim.

<u>Kerman</u> deals in part with a plaintiff (Kerman) who a jury found (1) was arrested without probable cause; and (2) as a proximate cause of the arrest held for at least several hours in a New York mental hospital.  The jury found that the false seizure and subsequent false imprisonment violated both New York common law and the Fourth Amendment, but the jury awarded plaintiff Kerman only nominal damages on these claims.  On Appeal to the Second Circuit Kerman contended that in light of the fact that he had prevailed on the unlawful seizure and false imprisonment claims, he was entitled to an award of more than nominal damages.  <u>Kerman v. City of New York</u>, 374 F.3d 93, 122 (2d Cir. 2004).  Kerman contended that he should have a new trial on damages because he was entitled to compensation[14] as a

_____

[14] New York common law, like District of Columbia common law, recognizes several elements of damages for false seizure/ false arrest/ false imprisonment claims including economic damages, physical injury, mental

matter of law because he and his brother had testified to his emotional

distress and an expert had also testified to his emotional damages. <u>Kerman v.</u>

<u>City of New York</u>, 374 F.3d 93, 123 (2d Cir. 2004).

The Court of Appeals construed the verdict to hold that the jury had

not credited Kerman and his brother's testimony about his emotional distress

and that the expert testimony applied to another segment of time in the case.

But, the Court held that, even absent emotional distress type damages in a

false seizure/ false arrest/ false imprisonment type case, "where the plaintiff

was indisputably deprived of his liberty, and the conduct of the defendant

responsible for the deprivation was found to be unlawful, we have held that

the plaintiff is entitled to compensatory, not merely nominal,

damages." <u>Kerman v. City of New York</u>, 374 F.3d 93, 125 (2d Cir. 2004).

Moreover, relying on common law damages principles and New York

state common law, the Court held that the damages recoverable for loss of

liberty for the period spent in a wrongful confinement are separable from

---

suffering or psychological injury, and loss of liberty.  Kerman, 374 F.3d at
122; Phillips, 458 A.2d at 725.  These cases are consistent with traditional
common-law principles governing entitlement to damages for the tort of false
imprisonment. That tort "is complete with even a brief restraint of the
plaintiff's freedom"; "it is not necessary that any damage result from it other
than the confinement itself." Prosser & Keeton, The Law of Torts § 11, at 48
(5th ed. 1984) ("Prosser & Keeton").

damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty. Kerman v. City of New York, 374 F.3d 93, 125-126 (2d Cir. 2004).

Finally, the Kerman Court held that such loss of liberty damages are "presumed" in that the loss of time, and loss of freedom, is inherent in any unlawful detention and is compensable as "general damages" for unlawful imprisonment without the need for pleading or proof. Kerman, citing McCormick on Damages § 107, at 375.  As discussed below in the next section on "presumed damages", the Kerman Court also held that this concept of "presumed damages" did not violate the Supreme Court's rule that plaintiffs in civil rights cases are entitled only to compensatory damages for actual injuries suffered.  Kerman discussing Carey v. Piphus, 435 U.S. at 262 and Stachura, 477 U.S. 299, 310-11 (1986).

General damages in strip search claims.  The District in its proposal did accept the premise of Augustin v. Jablonsky, 2011 WL 4953982, 16 (E.D.N.Y. 2011) that, at least for the strip search claim, a measure of "general" damages is presumed for each class member.  District's proposal, p. 11. Augustin held "that an injury to human dignity was necessarily entailed in being strip searched and thus was common to each member of the class as to

its cause and the resulting general, or presumed—as distinct from the special—damages sustained." <u>Augustin v. Jablonsky</u>, 2011 WL 4953982, 1 (E.D.N.Y. 2011).

As mentioned above, Plaintiffs believe that the correct characterization of such general damages in the strip search context is "injury to human and personal dignity and privacy", both of which are inherent in the very nature of a strip search. <u>See</u>, <u>e.g.</u>, <u>Blackburn v. Snow</u>, 771 F.2d 556, 564 (1st Cir. 1985) ("body cavity searches are 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission'," quoting <u>Marybeth G. v. City of Chicago</u>, 723 F.2d 1263, 1273 (7th Cir.1983)); <u>Hunter v. Auger</u>, 672 F.2d 668, 674 (8th Cir.1982) ("a strip search, regardless of how professionally and courteously conducted, is an embarrassing and humiliating experience," involving an "extensive intrusion on personal privacy"); <u>Kennedy v. Los Angeles Police Dep't.</u>, 901 F.2d 702, 711 (9th Cir.1990) ("[s]trip searches involving the visual exploration of body cavities are dehumanizing and humiliating"); <u>Bell v. Wolfish</u>, 441 U.S. at 576-77, 594, 99 S.Ct. at 1893-94, 1903 (Marshall, J., dissenting) ("body cavity searches ⋯ represent one of the most grievous offenses against personal dignity and common decency").

4. **Presumed Damages**

Both parties agree, following <u>Augustin</u> and Phillips, that in this case "general" damages are presumed to class members for both classes.  District's proposal p. 10 (discussing Augustin). <u>Augustin</u> held "that an injury to human dignity was necessarily entailed in being strip searched and thus was common to each member of the class as to its cause and the resulting general, or presumed—as distinct from the special—damages sustained." <u>Augustin v. Jablonsky</u>, 2011 WL 4953982, 1 (E.D.N.Y. 2011).

The District of Columbia Court of Appeals also views deprivation of liberty per se as an appropriate element of damages in false arrest/ false imprisonment cases.  <u>Phillips</u>, 458 A.2d  at 725.

Sometimes trying damages, especially emotional damages, on an aggregate basis is criticized because defendants claim that it requires a "presumption" that each class member has suffered injury and deprives them of their right to have each class member prove his individual damages.  This type of presumption is said to relieve plaintiffs of their burden of proving causation.  <u>See</u> <u>e.g.</u> <u>Cimino v. Raymark Indus., Inc.</u>, 151 F.3d 297, 321 (5th Cir. 1998); <u>In re Fibreboard Corp.</u>, 893 F.2d 706, 709 (5th Cir. 1990).  But these cases are distinguishable.  First, these Fifth Circuit cases invalidating the use of statistics to extrapolate findings of liability from a group of representative plaintiffs to all plaintiffs (in place of individual jury verdicts as to each plaintiff) are based on a peculiar feature of Texas law

requiring that causation issues be decided on an individual basis.  Id.

Second, this causation issue is not present in a general damages trial because as both parties concede, e.g. District's proposal p. 10, general damages happen to all class members equally.  Augustin, relying on the Kerman Court's analysis of "general" damages, held "that an injury to human dignity was necessarily entailed in being strip searched and thus was common to each member of the class as to its cause and the resulting general, or presumed—as distinct from the special—damages sustained."  2011 WL 4953982, 1.  The District of Columbia Court of Appeals also views deprivation of liberty per se as an appropriate element of damages in false arrest/ false imprisonment cases.  Phillips, 458 A.2d  at 725.

The Supreme Court has said that only actual damages are compensable in a § 1983 case.  However, because general damages are inherent in the claim itself, they may be "presumed" in the sense that they can be inferred from the tort itself.  Kerman has an extensive discussion of this point showing why general damages are consistent with the Supreme Court cases. 374 F.3d at 130. Thus, Dellums held that false imprisonment damages did not require "individuation" when the class was divided into sub groups based on the length of over-detention.

In contrast, the issue of whether any class members did not suffer compensatory damages can be accounted for in a trial of emotional damages using statistical sampling because the sample group from which a statistical sample will be drawn would be limited to those who filed claims, not the class as a whole. Presumably, because this is a self-selected group seeking additional damages, they will have special damages. Nonetheless, the sample chosen will account for whether they do or do not because, if class members are chosen as part of the sample and do not respond to discovery, that fact would be accounted for in the formula for extrapolating to the class as a whole. For example, if 500 class members sought special damages, and a sample of 100 was selected, and 10 did not respond to discovery, another 10 were found to have no special damages, and 80 were found to have special damages, the formula would divide the aggregate damages award by 100, thus accounting for those not responding or found to have no damage.

 Hilao dealt with this issue.  Hilao, 103 F.3d 783.  Certain class members did not submit damages questionnaires or submitted invalid questionnaires.  Id.  A formula was used to reduce the total aggregate damages defendant was liable for to account for persons who did not suffer damages (i.e. did not submit damages questionnaires).   Id. Moreover, Dellums held that false imprisonment damages did not require individuation

when the class was divided into sub groups based on the length of over-detention.  The <u>Dellums</u> Court concluded that careful division of the class into sub-groups based on length of over-detention provided all the individuation that was required, even for an award of emotional damages. Moreover, there is a line of District of Columbia Circuit Court of Appeals cases construing <u>Carey v. Piphus</u>, 435 U.S. at 262 and <u>Stachura</u>, 477 U.S. at 310-11 to hold that in certain cases emotional damages can be presumed or inferred from the wrongful conduct.  <u>See</u> <u>e.g.</u> <u>Berger v. Iron Workers Reinforced Rodmen Local 201</u>, 843 F.2d 1395, 1413 (D.C. 1998).

### III.  TWO PHASE TRIALS SUMMARY OF PLAINTIFFS' PROPOSED TWO PHASE PLAN FOR SEPARATELY TRYING GENERAL DAMAGES AND THE REMAINING COMPONENTS OF COMPENSATORY DAMAGES[15]

Because "general" damages are "presumed" and common to the class,

---

[15] <u>For this phase if it goes forward, unlike for the first phase, Plaintiffs propose that class notice would be provided advising class members of 1) the results of phase 1; 2) and giving class members the choice of simply filing for the phase 1 money and not pursuing further damages, or filing a claim form for the phase 1 money and also seeking additional damages. From those who file to seek further damages, a determination can be made of choosing a random sample from among them, or, if the number is small, holding individual hearings/trials. Because Phase 1 money will be awarded to all class members, the time to collect that money would be kept open.</u>

<u>Augustine</u>, 2011 WL 4953982, 2 District's proposal p. 10, and thus require no individuation beyond subdividing the over-detention class into sub-classes based on length of over-detention, <u>Dellums</u> (over-detention), <u>Augustin</u> (strip search), and are either conceded by both parties (strip search "general" damages) or well established in the law (over-detention "general" damages), plaintiffs have concluded that the best method for trying compensatory damages in the aggregate is the statistically significant random sampling method, but that the Dellums approach is appropriate for trying general damages in the aggregate.

The <u>Augustin</u> Court also concluded that using a <u>Dellums</u>-type sample was an appropriate method to try general damages on an aggregate basis. 2011 WL 4953982, 2.  The Augustin Court also employed the two phase process.  It tried the general damages on an aggregate basis using a <u>Dellums</u>-type sample of plaintiffs and then decided on the next step after that initial trial was concluded.

Thus, plaintiffs propose a two phase[16] process for trying damages: (1) **in phase 1**, use the <u>Dellums</u> method to try "general" damages on an aggregate basis for both claims; and then (2) **in phase 2**, if needed (as determined after

---

[16] <u>"Bifurcation" or even "polyfurcation" of issues including damages issues is a common practice in class actions and is supported by either Fed. R. Civ. Proc. 23(b)(3) or 23 (c)(4).</u>

the trial of "general damages using the <u>Dellums</u> method), try the remaining components of compensatory damages either on an aggregate basis by using a sample chosen by a statistically significant random sampling method or in individual damages trials.[17]  <u>Carnegie; Neal v. Director, District of Columbia Dept. of Corrections</u>,1995 WL 517246, 3 (D.D.C. 1995).

Trying compensatory damages such as emotional distress in individual trials following an aggregate trial of general damages would significantly increase the expenditure of court resources and attorney's fees.  However, the court could use innovative methods such as requiring the District to establish a fund of attorneys' fees and appointing the Class Counsel to recruit members of the plaintiffs' bar to assist Class Counsel by having members of the plaintiffs' bar represent individual plaintiffs in individual trials.  <u>Neal</u>,1995 WL 517246, 3.  "Class counsel [would] recruit and coordinate the work of these additional counsel."  <u>Id</u>.  If the District did not consent to the use of magistrate judges or special masters to assist in conducting such trials, "the

---

[17] <u>For this phase if it goes forward, unlike for the first phase, Plaintiffs propose that class notice would be provided advising class members of 1) the results of phase 1; 2) and giving class members the choice of simply filing for the phase 1 money and not pursuing further damages, or filing a claim form for the phase 1 money and also seeking additional damages. From those who file to seek further damages, a determination can be made of choosing a random sample from among them, or, if the number is small, holding individual hearings/trials. Because Phase 1 money will be awarded to all class members, the time to collect that money would be kept open.</u>

Court [could] seek assistance from judges who have taken senior status, from visiting judges upon designation by the Chief Justice…" <u>Neal</u>, 1995 WL 517246, 4

For the second phase if it goes forward, unlike for the first phase, Plaintiffs propose that class notice would be provided. Such notice would advise class members of the results of phase 1, and give class members the choice of simply filing for the phase 1 money and not pursuing further damages, or filing a claim form for the phase 1 money and also seeking additional damages.

Those who file to seek further damages would comprise the group seeking special damages beyond the general damages already determined. If that group is sufficiently large, a random sample would be drawn to try special damages. If the number is small, those special damages would be determined based on individual hearings/trials.

Because Phase 1 money will be awarded to all class members, the time to collect that money would be kept open for a considerable period of time. (Plaintiffs suggest 1-2 years.) Any money not collected at that point would be awarded in the form of a *cy pres* award to an organization, or for a purpose, identified by the Court (after proposals from the parties). This is a well-recognized doctrine for precisely situations such as this. See, e.g., *Nachshin v. AOL, LLC*, __ *F.3d* __ 2011 WL 5839610 (9th Cir. Nov. 21, 2011) ("The *cy*

*pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. *See Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1307–08 (9th Cir.1990). *Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity"); *Diamond Chem. Co., Inc. v. Akzo Nobel Chemicals B.V.*, 2007 WL 2007447 (D.D.C. July 10, 2007) ("In sum, exercising the Court's discretion to fashion *cy pres* awards, and considering the objectives of the Sherman Act, the nature of the underlying suit, the interests of the class members, and the geographic scope of this case, … the Court concludes that Class Plaintiff's proposed *cy pres* distribution of the Remaining Settlement Fund is appropriate."). The cy pres approach is appropriate because general damages can be determined for the class in the aggregate.[18]

This approach would greatly reduce the time and expense of selecting a sample, and the time and expense of conducting discovery for the phase 1 trial of "general" damages.  A trial of "general" damages using the <u>Dellums</u>

---

[18] <u>In the unlikely event that there were more claims for the funds than were available, no monies would be paid once the funds were exhausted, so the District would never be at risk of paying more than what was determined to be the aggregate general damages.</u>

method would require only 10-30 plaintiffs chosen by each side, whereas a trial using a sample chosen by an expert using a statistically significant random sampling method could require several times that (the exact amount of which has not yet been determined).

Similarly, as detailed below, discovery in a trial of "general" damages would be de minimis because the components of compensatory damages (all subjective, individual emotional distress type damages such as mental anguish, embarrassment, and humiliation, and special economic damages such as lost wages and medical expenses, etc.) would not be at issue.

Given the simplified method of selecting a sample and the bare-bones discovery needed in a trial of general damages using the Dellums method, the savings in actual trial prep and actual trial time become manifest. One other benefit to this two phase method is that, should the Court decide to accept the District's proposal of choosing a court-appointed expert to select a statistically valid sample using a statistically significant random sampling method despite Plaintiffs' objection, the parties could proceed with the trial of general damages while the Court was selecting an expert to choose the sample.

Finally, as a practical matter, a bifurcated trial of general damages would provide a stopping point between the trial on general damages and the

trial on the remaining components of compensatory damages (e.g., emotional distress, lost wages, medical expenses, etc.) at which the parties could re-evaluate the case for settlement purposes in light of the jury's award for general damages.

IV.     DISCOVERY NEEDED FOR A TRIAL ON GENERAL DAMAGES
        USING THE <u>DELLUMS</u> METHOD

As stated above, discovery in the trial of general damages could be kept to a minimum.  Each party could pick its own witnesses using its own criteria.

Similarly, discovery in a trial of "general" damages would be <u>de minimis</u> because the components of compensatory damages (all subjective, individual emotional distress type damages such as mental anguish, embarrassment, and humiliation, and special economic damages such as lost wages and medical expenses, etc.) would not be at issue.  For example, on the over-detention claim the only component of "general" damages that would be at issue is the "damages recoverable for loss of liberty for the period spent in a wrongful confinement."  <u>Kerman v. City of New York</u>, 374 F.3d 93, 126 (2d Cir. 2004) (damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even

absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty). The District of Columbia Court of Appeals also views deprivation of liberty per se as an appropriate element of damages in false arrest/ false imprisonment cases. Phillips v. District of Columbia, 458 A.2d 722, 725 (D.C. 1983).

In fact, on the over-detention claim, the District would not even need discovery of an individual's prior arrest or criminal history such as previous incarcerations. Phillips, 458 A.2d at 723. Such data is only relevant to the elements of over-detention damages such as mental anguish, embarrassment, and humiliation. Id. (appellant made a tactical decision to dismiss his defamation claims as well as all claims for mental anguish resulting from the alleged false arrest to avoid appellees' introduction of evidence regarding his extensive record of prior arrests, which the trial court had ruled would be admissible to rebut appellant's claims of mental anguish, embarrassment, and humiliation).

The same is true for the strip search claim. Augustin, relying on the Kerman Court's analysis of "general" damages, held "that an injury to human dignity was necessarily entailed in being strip searched and thus was common to each member of the class as to its cause and the resulting general, or presumed—as distinct from the special—damages sustained." 2011 WL

4953982, 1. Plaintiffs suggest that the <u>Augustin</u> court defined the concept of "general damages" too narrowly, and that general damages for a strip search should be defined as an "injury to human and personal dignity and privacy," which we believe more accurately describes the general damage.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /sig/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br>Counsel for the Named Plaintiffs and the Classes<br>717 D Street, NW , Suite 210<br>Washington, DC 20004<br>Phone 202/824-0700 |  /sig/ Ralph D. Robinson<br>RALPH D. ROBINSON<br>D.C. Bar #441797<br><br>8160 Skelton Circle<br>Falls Church, VA 22042<br>Phone 703/846-0596 |
| Respectfully submitted<br>_____<br>Barrett S. Litt, Esq.<br>pro haec vice<br>Litt, Estuar, Harrison & Kitson, LLP<br>1055 Wilshire Boulevard<br>Suite 1880<br>Los Angeles, California 90017<br><br>Phone (213)-482-6310<br>Fax (213)-380-4585 | Respectfully submitted,<br>_____<br>Paul J. Estuar, Esq.<br>pro haec vice<br>Litt, Estuar, Harrison & Kitson, LLP<br>1055 Wilshire Boulevard<br>Suite 1880<br>Los Angeles, California 90017<br><br>Phone (213)-482-6310<br>Fax (213)-380-4585 |