**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **CARL A. BARNES, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 06-315 (RCL)** |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____

**MEMORANDUM AND ORDER**

Before the Court are defendant's Motion [331] to Compel Discovery Responses, defendant's Second Motion [333] to Compel Discovery Responses, and plaintiffs' Motion [335] for a Protective Order from Defendant's Deposition Notice.  Upon consideration of the motions, oppositions, replies, the entire record in this case, and the applicable law, the Court will grant in part and deny in part defendant's Motion [331] to Compel Discovery Responses, deny defendant's Second Motion [333] to Compel Discovery Responses, and grant in part and deny in part plaintiffs' Motion [335] for a Protective Order.

## I.       BACKGROUND

The Court assumes familiarity with its prior opinions, which set forth the background of this class-action litigation in greater detail.  *See, e.g.*, *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 265 (D.D.C. 2011).

In a June 2011 Memorandum Opinion, the Court granted plaintiffs' Motion for Summary Judgment as to the District of Columbia's liability for any overdetentions at its jails, throughout the class period, caused by the Department of Corrections' application of the so-called "10 p.m. cut-off" rule, and granted plaintiffs' Motion as to all overdetentions that occurred from

September 1, 2005 to December 31, 2006. *Id.* at 286. The Court granted the District's Motion for Summary Judgment as to overdetentions occurring from February 26, 2008 forward that were not caused by the DOC's enforcement of the 10 p.m. cut-off rule. *Id.* The Court denied both parties' motions as to the District's liability for overdetentions that occurred from January 1, 2007 to February 25, 2008 (the "Disputed" or "Trial Period") that were *not* caused by the DOC's enforcement of the 10 p.m. cut-off rule. *Id.* at 286 & n. 18. The District's liability for that subset of overdetentions remains undetermined pending trial.

Following these rulings, and at the request of the parties, the Court ordered limited, additional discovery in December 2011. *See Barnes v. District of Columbia*, 278 F.R.D. 14, 18 (D.D.C. 2011). The parties' competing trial proposals each assumed the need for additional fact and expert discovery prior to the trial of the remaining liability issues, and the Court—responding to and agreeing with the District's concerns—restricted that discovery "to such discovery as will assist the parties in determining how many overdetentions occurred during the disputed period." *Id.* The Court made clear that further discovery on "process" and related issues would not be permitted. *Id.* at 23. The Court ordered the parties to update their expert reports no later than February 10, 2012, and ordered that this additional discovery period would close on April 6, 2012—three days from now. *Id.*

Between January 13, 2012 and March 6, 2012 the District served four sets of interrogatories and requests for production on plaintiffs, seeking information about plaintiffs' contentions regarding the number of overdetentions during the Trial Period, as well as more granular requests calling for plaintiffs to supply the District with breakdowns of their overdetentions figures by various categories of information. Plaintiffs' responses to two of those

sets of interrogatories, as well as the scope of an upcoming deposition of plaintiffs' statistical expert, are in dispute in the instant motions.

## II.      LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure state that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Parties served with discovery are not generally required to *create* documents in order to respond to such discovery, since Rule 34 of the Federal Rules of Civil Procedure only requires production of documents already in existence. *See Wagener v. SBC Pension Benefit Plan-Non-Bargained Program*, No. 1:03-CV-00769, 2007 WL 915209, at *4 (D.D.C. Mar. 26, 2007).

## III.     ANALYSIS

### A.  Defendant's Motion [331] to Compel Discovery Responses

In this first Motion to Compel, the District challenges plaintiffs' responses to four interrogatories: 1, 2, 5, and 6. Def.'s Mot. Compel [331] 1. Interrogatory No. 1 seeks, in short, the overall number of overdetentions during the Trial Period. Def.'s Interrogs. [335-2] 5. Interrogatory No. 2 seeks the number of overdetentions during the Trial Period that plaintiffs contend were caused by the 10 p.m. cut-off rule. *Id.* at 6. Interrogatory No. 5 seeks the number of overdetentions (the time period is not specified) in which an inmate was sent to the Medical Holding Unit before being overdetained. *Id.* Interrogatory No. 6 seeks a breakdown ("for all periods at issue") of the number of inmates who were overdetained for certain lengths of time— "less than 2 hours," "2 or more hours but less than 4 hours," and so forth. *Id.*

The parties raise numerous arguments in their Motions, but their disputes concerning plaintiffs' responses to each of these interrogatories emerge from a single disagreement about the scope of the discovery ordered by the Court. The District contends that the only overdetentions

that are relevant to the upcoming liability trial are those that were *not* caused by the 10 p.m. cut-off rule, a position that is reasonable given that it tracks the language of the Court's June 2011 Memorandum Opinion.  *See Barnes*, 793 F. Supp. 2d at 286 & n.18.  Consequently, the District believes that it is evidence of this subset of overdetentions about which plaintiffs need to make a contention in order to prevail at trial, and that doing so necessarily requires determining the number of 10 p.m. cut-off rule overdetentions during the Trial Period so that they can be excluded.  Plaintiffs argue that the plain language of the Court's December 2011 Order limited additional discovery to the number of *overall* overdetentions during the Trial Period, without specifying that this number had to exclude overdetentions caused by the 10 p.m. cut-off rule. Plaintiffs do not explain how the District's remaining liability could be legitimately ascertained using evidence that is interspersed with overdetentions for which the District has already been found liable.

Upon consideration of the parties' arguments, the Court agrees with the District that the purpose of the Court's December 2011 discovery Order was to permit the parties to ascertain the number of *disputed* overdetentions during the Trial Period.  While plaintiffs are not wrong in pointing out that the Court's discovery Order did not explicitly state that the 10 p.m. cut-off rule overdetentions had to be excluded from the parties' overdetention estimates for the Trial Period, that requirement is easily inferred from the fact that summary judgment was awarded to plaintiffs for *all* 10 p.m. cut-off rule overdetentions and from the Court's previous statements explaining that the 10 p.m. cut-off rule overdetentions would be excluded from the trial of the remaining liability issues.  *See, e.g.*, 793 F. Supp. 2d at 286 & n.18.  It is the District's liability for that limited subset of overdetentions, not "10 p.m. cut-off" rule overdetentions, that the trial will determine.  An overdetention figure from plaintiffs that fails to exclude these 10 p.m. cut-off

overdetentions will be unhelpful and misleading to the jury and will prejudice the District, and the Court will not permit the jury to see it.

Accordingly, the Court will order plaintiffs to revise their responses to Interrogatories Nos. 1 and 2 by stating how many overdetentions they contend occurred during the Trial Period (excluding from that number the number of overdetentions that they contend were caused by the DOC's enforcement of the 10 p.m. cut-off rule) and also by stating how many 10 p.m. cut-off rule overdetentions they contend occurred during the Trial Period.  As requested by the District, plaintiffs must also explain in full in their responses how they arrived at these figures.  The Court recognizes that ordering a party to create a document that doesn't exist or to perform analyses it hasn't yet performed is somewhat unusual.  However, although courts may not use Rule 34 of the Federal Rules of Civil Procedure to order parties to create a document to satisfy discovery requests, there is no "hard and fast rule" that courts may never order parties to prepare documents or sort through data.  *See In re Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder*, 2007 WL 1983780, *15–16 (Fed. Cl. May 25, 2007).  In the circumstances of this case, where plaintiffs' failure to perform the required analysis would almost certainly result in the exclusion of that key evidence prior to trial, and where that analysis can be performed comparatively easily using computerized data plaintiffs have in their possession, ordering plaintiffs to create the requested information is reasonable.

However, as to the remaining Interrogatories—Nos. 5 and 6—as well as the District's request in Interrogatory No. 1 for the overdetention figures to be broken down into "CRER" and "non-CRER"[1] overdetentions, the Court will deny the District's Motion to Compel.

---

[1] As explained by the District, the term "CRER" stands for "Court Return Entitled to Release," and indicates an inmate who left the DOC's correctional facilities to attend a court hearing and who was entitled to be released upon his or her return to jail.  Def.'s Mot. Compel [331] 3 n.1.  A "non-CRER" is an individual who is entitled to be released without a court appearance, such as a person whose sentence has expired.  *Id.*

Interrogatories Nos. 5 and 6 call for information about the number of inmates overdetained after being sent to MHU and a breakdown of overdetentions by duration.  Def.'s Mem. [331] 4, 5.  As to Interrogatory No. 5, the District believes that "whether or not an individual was sent to [the Medical Holding Unit] before being overdetained affects whether or not they were subject to the 10 p.m. cut-off rule."  *Id.* at 8.  As to Interrogatory 6, the District believes that how long a person was overdetained reflects the likelihood that their overdetention was caused by the 10 p.m. cut-off rule.  *Id.* at 8.  However, while the Court recognizes that this information might be helpful to the District, plaintiffs claim to not possess it, the District hasn't demonstrated an especially strong need for it, and the Court will not order plaintiffs to create it.  Unlike the information about 10 p.m. cut-off rule overdetentions for the Trial Period, plaintiffs' failure to develop this information is not patently improper.  Plaintiffs' tactical decision not to delve into the distinctions the District believes should be probed could prove to be a problem for them at trial, should the jury find that the District's figures took into account more information and were more detailed than plaintiffs' figures.  Furthermore, to the extent that the District believes plaintiffs' failure to consider these (and other) distinctions in its overdetention numbers for the Trial Period raises questions about the credibility, reliability, and admissibility of plaintiffs' statistical evidence, the District can raise these issues during depositions of plaintiffs' experts and in a pretrial motion.  In sum, ordering plaintiffs to *create* such information is hardly necessary, likely burdensome, and sure to prolong this litigation.[2]

---

[2] The Court also denies the District's Motion, and its Second Motion [333] to Compel, to the extent that these ask the Court to order plaintiffs to pay the District's expenses incurred in making these motions.  The Court finds that each parties' conduct with respect to these motions was substantially justified and that other circumstances make an award of expenses to either party unjust.  *See* Fed. R. Civ. P. 37(a)(5)(B), 37(a)(5)(C).  Plaintiffs' discussion of Federal Rule of Civil Procedure 37(d)(1)(B) is inapposite, Pls.' Opp'n [332] 4–10, as the authority for the award of *expenses* (requested by the District) is grounded in Rule 37(a)(5), and the District has not specifically sought sanctions under the rule cited by plaintiffs.

**B.  Defendant's Second Motion [333] to Compel Discovery Responses**

In its Second Motion [333] to Compel, the District challenges plaintiffs' responses to several interrogatories, largely on the same grounds as its first Motion to Compel.  The District asked plaintiffs for a monthly breakdown of the number of CRER overdetentions during the Trial Period (Interrogatory No. 7), Def.'s Mem. [333] 2; a monthly breakdown of the number of non-CRER overdetentions during the Trial Period (Interrogatory No. 8), *id.* at 4; a monthly breakdown of the number of CRER overdetentions caused by the 10 p.m. cut-off rule during the entire class period (Interrogatory No. 9), *id.* at 6; a monthly breakdown of the number of non-CRER overdetentions caused by the 10 p.m. cut-off rule during the entire class period (Interrogatory No. 10), *id.* at 7; a monthly breakdown of CRER overdetentions, by length of overdetention, for the entire class period (Interrogatory No. 11), *id.* at 9; and a monthly breakdown of non-CRER overdetentions, by length of overdetention, for the entire class period (Interrogatory No. 12).  *Id.* at 11.  In response to each of these interrogatories, plaintiffs responded, *inter alia*, that they "have not conducted the analysis required by this interrogatory and do not plan to do so unless ordered."  *See, e.g., id.* at 3.

For the same reasons specified in the Court's discussion of the District's first Motion to Compel, the Court will deny the District's Second Motion to Compel as to each of these interrogatories.  Plaintiffs and their expert claim that they have not performed at this time the analyses that would be responsive to these interrogatories.  Plaintiffs are not required to create documents to answer the District's interrogatories.  *See* Fed. R. Civ. P. 34; *see also Wagener*, 2007 WL 915209, at *4.  The District has not demonstrated an especially strong need for this information, such that the Court might depart from the general rule and order plaintiffs to create it.  However, once again, to the extent that the District believes that plaintiffs, by not undertaking

the analyses required to respond to these interrogatories, have failed to consider important distinctions in the development of their number of disputed overdetentions for the Trial Period, such concerns can be raised during a deposition of plaintiffs' expert and in a pretrial motion.

### C. Plaintiffs' Motion [335] for a Protective Order

The Court's explanation above largely disposes of plaintiffs' Motion [335] for a Protective Order. In plaintiffs' Motion, they argue that the District's interrogatories generally "exceed the limited scope of the court's Trial Plan." Pls.' Mot. Protective Order [335] 6. Plaintiffs are concerned that the District will seek to depose Dr. Kriegler, their statistical expert, on issues outside the scope of this limited discovery. *Id.* at 5.

Plaintiffs' Motion will be granted in part and denied in part. The Court will grant plaintiffs' Motion to the extent that it seeks to preclude the District from deposing Dr. Kriegler on the issue of the number of post-release strip searches during the class period and the percentage of the strip-search class that was returned to the D.C. Jail or CTF and released on time according to Dr. Kriegler's analysis of the JACCS data. These areas are outside the scope of the limited discovery ordered by the Court in December 2011. Plaintiffs' Motion is denied, however, to the extent that it seeks to preclude the District from asking plaintiffs' statistical expert questions in the following areas: (1) how many 10 p.m. cut-off rule overdetentions occurred during the Trial Period; (2) how many overdetentions, broken down by duration, occurred during the Trial Period; (3) how many of the total number of overdetentions (including and excluding 10 p.m. cut-off rule overdetentions) constituted CRERs and non-CRERs; (4) how many overdetained inmates were sent to MHU before being overdetained; (5) overdetention breakdowns by month, and by CRER and non-CRER, during the Trial Period; and (6) the number of 10 p.m. cut-off rule overdetentions, broken down by month and by CRER and non-

CRER, during the Trial Period.  While the Court, as discussed in the context of its discussion of the District's motions to compel, will not compel plaintiffs to perform analyses that would answer questions in these areas (with the exception of the 10 p.m. cut-off rule analyses the Court has already discussed), the District is entitled to ask plaintiffs' expert at his deposition whether these analyses have been performed, as well as to explore in such a deposition the question of whether the statistical expert's failure to consider these distinctions has an impact on the reliability of the expert's conclusions regarding the number of overdetentions (excluding 10 p.m. cut-off overdetentions) that occurred during the Trial Period.

## IV.   CONCLUSION

Accordingly, it is hereby

ORDERED that defendant's Motion [331] to Compel is GRANTED IN PART AND DENIED IN PART.  Specifically, defendant's Motion is GRANTED as to Interrogatories Nos. 1 and 2 (with the exception of its request within Interrogatory No. 1 to have plaintiffs break down the overdetention figures by CRER and non-CRER overdetentions), but otherwise is DENIED; and it is further

ORDERED that defendant's Second Motion [333] to Compel is DENIED; and it is further

ORDERED that plaintiffs' Motion [335] for a Protective Order is GRANTED IN PART AND DENIED IN PART.  Specifically, plaintiffs' Motion is GRANTED as to its request to preclude the District from asking their statistical expert questions about the number of post-release strip searches during the class period and the percentage of the strip-search class that was returned to the D.C. Jail or CTF and released on time according to Dr. Kriegler's analysis of the JACCS data.  Plaintiffs' Motion is otherwise DENIED.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on April 3, 2012.