## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL A. BARNES, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     06-cv-315 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION[*]

Before the Court are three discovery motions: defendant's Motion to Compel Discovery Responses or Preclude Plaintiffs from Using Certain Evidence, May 22, 2012, ECF No. 351; defendant's Motion to Strike, Or, In the Alternative, For Extension of Time and Leave to Designate Rebuttal Expert(s), June 29, 2012, ECF No. 365; and plaintiffs' Non-Consent Amended and Re-Stated Motion to Compel Production of the Release Discrepancy Database, June 25, 2012, ECF No. 362.  Upon consideration of the motions, the oppositions and replies thereto, and the record herein, the Court will deny in part and grant in part defendant's Motion to Compel [351] and deny defendant's Motion to Strike [365].  The Court will also deny defendant's Motion in the Alternative for Extension of Time and Leave to Designate Rebuttal Expert(s) [365].  The Court will reopen discovery for 28 days to allow the depositions of plaintiffs' expert witnesses, instead of the 74 days requested by the defendant.  Furthermore, the Court will grant in part and deny in part plaintiffs' Motion to Compel [362].

## I.    BACKGROUND

This case concerns the District of Columbia Department of Corrections' ("DOC") practice of overdetaining and strip searching its inmates.  The plaintiffs, former inmates subject

---

[*] Following defendant District of Columbia's Motion to Clarify the Record, Sept. 27, 2012, ECF No. 394, the Court decided to make two non-material changes to clarify the factual record.  *See* ECF No. 396.  Those changes are reflected in footnote 11 (page 22 of the ECF version) and Part.III.E. (pp. 24–25).

to overdetentions and strip searches, filed a class action against the District of Columbia ("District") over six years ago. Compl., Feb. 23, 2006, ECF No. 1. This long-running case is virtually identical to a prior case before this Court, *Bynum v. District of Columbia*, Civil Action No. 02-956 (RCL) (filed in 2002). Given this extensive history, the Court assumes familiarity with its prior opinions, which set forth the background of this class-action litigation in greater detail. *See, e.g., Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 265 (D.D.C. 2011) (ECF No. 307) (discussing background of case up to summary judgment stage).[1]

In June 2011, the Court granted plaintiffs' Motion for Summary Judgment as to the District of Columbia's liability for any overdetentions at its jails, throughout the class period, caused by the DOC's application of the so-called "10 p.m. cut-off" rule, and all overdetentions occurring from September 1, 2005 to December 31, 2006. *Id.* at 286. The Court granted the District's Motion for Summary Judgment as to overdetentions occurring from February 26, 2008 forward that were not caused by the DOC's enforcement of the 10 p.m. cut-off rule. *Id.* The Court denied both parties' motions as to the District's liability for overdetentions that occurred from January 1, 2007 to February 25, 2008 (the "disputed" or "Trial Period") that were not caused by the DOC's enforcement of the 10 p.m. cut-off rule. *Id.* at 286 & n.18. The District's liability for that subset of overdetentions remains undetermined pending trial.

Following these rulings, the Court ordered limited, additional discovery in December 2011. *See Barnes v. District of Columbia*, 278 F.R.D. 14, 18 (D.D.C. 2011) (ECF No. 328). The parties' competing trial proposals each assumed the need for additional fact and expert discovery prior to trying the remaining liability issues, and the Court—responding to and agreeing with the

---

[1] Considering some of the parties' current motions—which frequently raise issues that could have been resolved by carefully reading the prior Orders of this Court—assuming familiarity might be a stretch. The following three paragraphs of this background section are taken, largely, from the Court's description in *Barnes v. District of Columbia*, 281 F.R.D. 53, 53–54 (D.D.C. 2012).

District's concerns—restricted that discovery "to such...as will assist the parties in determining how many overdetentions occurred during the disputed period." *Id.* The Court made clear that it would not permit further discovery on "process" and related issues. *Id*. at 23. The Court ordered the parties to update their expert reports by February 10, 2012, and ordered that this additional discovery period would close on April 6, 2012. *Id*.

Between January 13, 2012 and March 6, 2012, the District served four sets of interrogatories and requests for production on plaintiffs, seeking information about plaintiffs' contentions regarding the number of overdetentions during the Trial Period. Plaintiffs' responses to two of those sets of interrogatories, as well as the scope of an upcoming deposition of plaintiffs' statistical expert, were in dispute. These disputes were rooted in a disagreement as to the proper scope of discovery. The District contended that the only overdetentions that are relevant to the upcoming liability trial are those not caused by the 10 p.m. cut-off rule. Consequently, the District believed that plaintiffs needed to determine the number of 10 p.m. cut-off rule overdetentions during the Trial Period so that those overdetentions could be excluded. Plaintiffs argued that the plain language of the Court's December 2011 Order limited additional discovery to the number of overall overdetentions during the Trial Period, without specifying that this number had to exclude overdetentions caused by the 10 p.m. cut-off rule. *See Barnes v. District of Columbia*, 281 F.R.D. 53, 55 (D.D.C. 2012) (ECF No. 336) (summarizing parties' discovery disputes).

On April 3, 2012, the Court resolved these discovery disputes in a Memorandum Opinion.[2] *Barnes*, 281 F.R.D. 53. The Court considered both parties' positions "substantially justified," *id*. at 56 n.2, but ultimately agreed "with the District that the purpose of the Court's

---

[2] The Court will refer to this opinion and order as "April 3rd Discovery Opinion" herein.

December 2011 discovery Order was to permit the parties to ascertain the number of disputed overdetentions during the Trial Period." *Id*. at 55. To this end, the Court ordered the plaintiffs to answer the District's Interrogatory 1 (seeking overall number of overdetentions during Trial Period) and Interrogatory 2 (seeking number of overdetentions during Trial Period caused by 10 p.m. cut-off rule). *Id*. The Court "recognize[d] that ordering a party to create a document that doesn't exist or to perform analyses it hasn't yet performed is somewhat unusual," but decided:

> In the circumstances of this case, where plaintiffs' failure to perform the required analysis would almost certainly result in the exclusion of that key evidence prior to trial, and where that analysis can be performed comparatively easily using computerized data plaintiffs have in their possession, ordering plaintiffs to create the requested information is reasonable.

*Id*. at 55–56.[3] To allow for the completion of this additional analysis, the Court extended discovery first until April 25, 2012 (Minute Order, Apr. 24, 2012), then until June 11, 2012 (Order, Apr. 27, 2012, ECF No. 345), and ultimately until June 14, 2012 (Minute Order, June 12, 2012). The plaintiffs filed two supplemental expert reports and one set of errata on June 14, 2012. *See* Sealed Documents, June 14, 2012, ECF No. 360.

On May 22, 2012, before the amended discovery deadlines had passed, the District filed a Motion to Compel interrogatory responses and preclude plaintiffs from introducing certain evidence. ECF No. 351. Upon receipt of the plaintiffs' supplemental expert reports and errata, the District filed a Motion to Strike the expert reports. ECF No. 365. In the alternative, the District requested additional time to complete discovery and leave to designate rebuttal experts. *Id*. These motions are related to one another, and the Court considers them in turn.

While creating the supplemental expert reports, the plaintiffs claim that their experts discovered that the District's production was incomplete. The plaintiffs filed, on June 22, 2012,

---

[3] This Opinion also denied parties' motions to compel as to several other interrogatories and outlined the proper scope of the interrogatory of plaintiffs' expert Dr. Krieger. *Id*. at 55–57.

their Non-Consent Amended and Re-Stated Motion to Compel Production of the Release Discrepancy Database.  ECF No. 362.  This opinion also resolves this motion.

## II.   LEGAL STANDARD

### A.  Motion to Compel

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  This right is subject to Rule 26(b)(2)(C), which limits discovery that is, *inter alia*, unreasonably duplicative, burdensome, or expensive.  A party may submit to another party interrogatories that "relate to any matter that may be inquired into under Rule 26(b)."  F.R.C.P. 33(a).

When a party fails to respond to a proper discovery request or interrogatory, the other party may—after first attempting to resolve the issue by conferring with the other party—file a motion to compel.  F.R.C.P. 37(a)(1).  Courts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel.  *See*, *e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–52 (1978); *Harris v. Koenig*, 271 F.R.D. 356, 363 (D.D.C. 2010); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 529–30 (D.D.C. 2006) (Lamberth, J.).  An appellate court will review a district court's decision whether to compel discovery for an abuse of discretion.  *See Libscomb v. Winter*, 2009 WL 1153442, *1 (D.C. Cir Apr. 3, 2009) (affirming district court because "appellant has not shown the district court abused its discretion in denying his motion to compel discovery.").  Courts may, if appropriate, consider motions to compel filed after discovery has closed.  *See Lurie v. Mid-Atlantic Permanente Medical Group, P.C.*, 262 F.R.D. 29, 31 (D.D.C. 2009) (Lamberth, C.J.) ("[C]ourts routinely consider motions related to discovery, even though they are filed outside the

discovery period.").

Interrogatories, as a part of the discovery process, help litigants prepare for trial by narrowing the issues and determining what evidence they will need at trial. 8b CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 2162 (3d ed. 2012). Parties must answer interrogatories "fully" with "true, explicit, responsive, complete and candid" answers. *Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007). "The party objecting to…discovery bears the burden of 'show[ing] why discovery should not be permitted,'" *Alexander v. F.B.I.*, 193 F.R.D. 1, 3 (D.D.C. 2000) (internal citations omitted), while the party seeking to compel discovery has the burden of proving that a discovery response is inadequate. *Equal Rights Ctr.*, 246 F.R.D. at 32. Courts treat evasive or incomplete answers to interrogatories as a failure to respond. F.R.C.P. 37(a)(4).

### B.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court may strike all or part of a pleading for insufficiency, redundancy, immateriality, impertinence, or scandalousness. *See* F.R.C.P 12(f); *Judicial Watch, Inc. v. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004). Under this Rule, "pleading" encompasses expert reports. *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 474 F. Supp. 2d 75, 79 (D.D.C. 2007) (Lamberth, J.) (providing standard of review for motion to strike expert report, applying 12(f)). These motions are strongly disfavored, and the decision of whether to strike all or part of a pleading rests within the sound discretion of the Court. *See Judicial Watch*, 224 F.R.D. at 263 (collecting authorities); 2-12 MOORE'S FEDERAL PRACTICE-CIVIL § 12.37 (2006). A "motion to strike is considered an exceptional remedy and is generally disfavored," *Larouche v. Dep't of the Treasury*, 2000 WL 805214 at *13, (D.D.C. Mar. 31, 2000) (citing MOORE'S at § 12.37), and the proponent of such a

motion must carry a "formidable burden." *Judicial Watch*, 224 F.R.D. at 264.

Defendant seeks to strike supplemental and amended expert reports, so the legal standards for filing and amending expert reports are relevant. Rule 26(A)(2)(d) states:

> A party must [disclose expert testimony] at the time and in the sequence that the court orders. Absent a stipulation or court order, the disclosures must be made: at least 90 days before the date set for trial or for the case to be ready for trial; or if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party…, within 30 days after the other party's disclosure.

F.R.C.P. 26(A)(2)(d) (original formatting omitted). The Rules further state:

> A party who has made a disclosure under Rule 26(a)…must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information had not otherwise been made known to the parties during the discovery process or in writing; or as ordered by the court.

F.R.C.P. 26(e) (original formatting omitted). Courts do not allow supplemental or amended reports simply at the whim of a party; they are permitted: "(1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete." *Mineba Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (citing *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)).

## C. Extension of Time

The Rules provide that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or on motion made after the time has expired if the party failed to act because of excusable neglect." F.R.C.P. 6(b). Specifically pertaining to scheduling orders, Federal Rule 16(b) and Local Rule 16.4 allow the Court to modify the discovery deadlines of a scheduling order "upon a showing of good cause." *Myrdal v. District of Columbia*, 2007 WL 1655875, *2 (D.D.C. June 7, 2012) (Lamberth, J.).

Deciding whether to extend discovery is within the sound discretion of the trial court. *See, e.g.*, *U.S. v. Microsoft Corp.*, 253 F.3d 34, 100 (D.C. Cir. 2001) ("[T]he trial court [has] wide latitude to receive evidence as it sees fit."); *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F. 3d 1007, 1012 (D.C. Cir. 1997) ("Trial courts exercise considerable discretion in handling discovery matters[.]"). In deciding whether good cause exists under Rules 16(b) and 16.4 to amend a scheduling order, the Court primarily considers the diligence of the party in seeking discovery before the deadline. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment….If the party was not diligent, the inquiry should end."); *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc*., 2007 WL 1589496, *6 (D.D.C. June 1, 2007) (collecting cases, quoting *Johnson*).

### D.  Leave to Designate Rebuttal Experts

Rule 26(A)(2)(d)(ii) allows a party to designate a rebuttal expert "within 30 days after the other party's disclosure." Rebuttal experts are used "solely to contradict or rebut evidence on the same subject matter identified by another party." F.R.C.P. 26(A)(2)(d)(ii). There is no freestanding Rule that specifically addresses the designation and disclosure of rebuttal experts vis-à-vis supplemental or amended expert reports. Some Courts have held that, when a party had previously failed to designate a rebuttal expert, that party does not necessarily get another chance after a report is amended. *See Hubbard v. Potter*, 247 F.R.D. 27, 31 (D.D.C. 2008) (denying motion to strike supplemental expert report and denying leave to designate rebuttal experts). Other Courts, when faced with a report containing significant changes filed during or near trial, have gone as far as striking the entire supplemental report. *See Minebea*, 231 F.R.D. at 6 (striking supplemental expert reports submitted during trial).

Ultimately, granting leave is within the discretion of the Court.  Rule 26(a)(2)(C) states that "[expert witness] disclosures shall be made at the times and in the sequence directed by the court."  From "the language of Rule 26(a)(2)(C), the Court has the authority to control the timing and sequence in which expert designations are made" including whether a party can make a designation of an expert for the purposes of rebuttal.  *Estate of Vaughn v. KIA Motors America, Inc.*, 2006 WL 1806454, *2 (S.D. Miss. June 29, 2006).

## III.    DISCUSSION

### A.  Defendant's Motion to Compel Answers to Interrogatories No. 1 and 2

The District's current Motion to Compel relates to a previous Order of the Court resolving several discovery motions.  On April 3, 2012, the Court ruled on two motions by the defendant to compel discovery responses and a motion by the plaintiffs for a protective order. *Barnes*, 281 F.R.D. 53.  The District challenged plaintiffs' responses to Interrogatories 1, 2, 5, and 6.  *Id*. at 55.  As previously summarized by the Court:

> Interrogatory No. 1 seeks, in short, the overall number of overdetentions during the Trial Period.  Interrogatory No. 2 seeks the number of the overdetentions during the Trial Period that plaintiffs contend were caused by the 10 p.m. cut-off rule. Interrogatory No. 5 seeks the number of overdetentions (the time period is not specified) in which an inmate was sent to the Medical Holding Unit before being overdetained.  Interrogatory No. 6 seeks a breakdown ("for all periods at issue") of the number of inmates who were overdetained for certain lengths of time—"less than 2 hours," "2 or more hours but less than 4 hours," and so forth.

*Id*. (citations omitted).  This Court denied defendant's motion to compel as to Interrogatories 5 and 6, *id*. at 56, but granted the motion[4] as to Interrogatories 1 and 2.  *Id*. at 55.  To this end:

> [T]he Court will order plaintiffs to revise their responses to Interrogatories Nos. 1

---

[4] With limitations.  This Court did not grant "the District's request in Interrogatory No. 1 for the overdetention figures to be broken down into "CRER" and "non-CRER" overdetentions." 281 F.R.D. at 56.  "CRER" stands for "Court Return Entitled to Release" and "indicates an inmate who left the DOC's correctional facilities to attend a court hearing and who was entitled to be released upon his or her return to jail."  *Id*. at 56 n.1.

and 2 by stating how many overdetentions they contend occurred during the Trial
Period (excluding from that number the number of overdetentions that they
contend were caused by the DOC's enforcement of the 10 p.m. cut-off rule) and
also by stating how many 10 p.m. cut-off rule overdetentions they contend
occurred during the Trial Period.  As requested by the District, plaintiffs must also
explain in full in their responses how they arrived at these figures.  The Court
recognizes that ordering a party to create a document that doesn't exist or to
perform analyses it hasn't yet performed is somewhat unusual….In the
circumstances of this case, where plaintiffs' failure to perform the required
analysis would almost certainly result in the exclusion of that key evidence prior
to trial, and where that analysis can be performed comparatively easily using
computerized data plaintiffs have in their possession, ordering plaintiffs to create
the requested information is reasonable.

*Id*. at 55–56.  In their present motion, the District claims—despite the Court's April 3rd Order—

that it still has not received satisfactory responses to Interrogatories 1 and 2.  Def.'s Mem. ISO

its Mot. to Compel 2–3, May 22, 2012, ECF No. 351.

The Court's December 2011 Trial Plan opened a period of limited discovery to close on

April 6, 2012.  *Barnes*, 278 F.R.D. at 18.  After this Court issued its April 3rd Discovery Opinion,

the parties each moved to extend the discovery deadline to accommodate the discovery

compelled by the Order.  *See* ECF docket entries 337, 338, 339, 343.  On April 27, 2012 this

Court resolved those motions and set the deadline for extended discovery for June 11, 2012,

adding:  "[T]he Court shall permit the District to depose both [plaintiffs' experts] Dr. Kriegler

and Mr. Day, at its option.  No further extensions of discovery will be permitted."  ECF No. 345.

On June 12, 2012, the Court issued a Minute Order granting an additional extension of time,

ordering the plaintiffs to "produce the [expert] reports and all related discoverable material no

later than 12:00 AM on Thursday June 14, 2012."  On June 14, 2012, the plaintiffs submitted

their supplemental expert reports per the Court's Order.  *See* ECF No. 360.

When granting defendant's earlier motion to compel as to Interrogatories 1 and 2, this

Court expected that the answers may come via supplemental expert reports.  This Court carefully

considered the appropriateness of ordering plaintiffs to create new documents or perform new

analyses, and ultimately decided that so ordering was "reasonable."  281 F.R.D. at 55–56.  The

Court extended discovery so plaintiffs could respond to Interrogatories 1 and 2 with

supplemental reports identifying the requested information and explaining their methodologies.

The District may have misunderstood the Court's April 3rd Discovery Opinion, because on May

22, 2012 it filed a renewed motion to compel.  At that time, the plaintiffs had until June 11, 2012

to file reports answering the interrogatories.  Therefore, the District's May 22nd motion to compel

was premature; the plaintiffs still had time to file their responses.

In any event, the plaintiffs timely filed expert reports aimed at clearly and fully

answering Interrogatories 1 and 2.  Supplemental Report of Sean R. Day, June 14, 2012, ECF

No. 360-2; Third Supplemental Expert Report of Brian Kriegler, Ph.D., June 14, 2012, ECF No.

360-3.  When these reports came in, the defendant filed a Motion to Strike; the Court declines to

strike these reports, for the reasons discussed in Part III.C. *infra*.  The defendant may dispute the

accuracy and methodologies of the reports, and they are free to do via deposition.  However,

plaintiffs answered Interrogatories 1 and 2 in the manner and time allowed by the Court.

Therefore, the defendant's Motion to Compel as to Interrogatories 1 and 2 is denied.

### B.  Defendant's Motion to Compel Answer to Interrogatory No. 13

The District also seeks to compel plaintiffs to answer Interrogatory 13, which reads:

> Please identify each fact witness (by name, address at which the person can be
> served a deposition notice such as a home address, phone number, and social
> security number) you intend to call during the liability phase of the trial and also
> please state each fact you expect the witness to testify to.

Def.'s Fourth Set of Interrogs. & Req. for Produc. of Docs. 5, Mar. 6, 2012, ECF No.

351-1.  The plaintiffs responded:

> Plaintiffs have not yet had an opportunity to revise their trial strategy in response
> to the Discovery Revision Order [docket # 336] and so plaintiffs reserve the right
> to supplement its responses but at this point plaintiffs reserve the right to call all

> fact witnesses on the defendant's responses to plaintiffs [*sic*] interrogatories. Plaintiffs will state (subjection [*sic*] to objections provided by the rules and other law) "each fact you expect the witness to testify to" when the District responds to plaintiffs' interrogatory and tells plaintiffs what those facts are.

Pls.' Resp. to Def.'s Fourth Set of Doc. Prodc. Req. 1, Apr. 25, 2012, ECF No. 351-2.  The plaintiffs then listed two witnesses, Razina Jones and Judith Jamison, and indicated that these witnesses "may be contacted through plaintiffs' counsel."  *Id*. at 2.

As with the dispute over Interrogatories 1 and 2, the dispute over Interrogatory 13 relates to another discovery ruling of the Court.  When the District filed its Motion to Compel, the plaintiffs had a similar motion pending.  On April 16, 2012, the plaintiffs filed a Motion to Compel Responses to Plaintiffs' 2-10-12 Liability Interrogatories and Document Production Requests to Defendant.  ECF No. 341.  In this motion, plaintiffs sought an answer to an interrogatory virtually identical to the District's Interrogatory No. 13.  The plaintiffs submitted:

> Please identify (by name, address at which the person can be served a deposition subpoena such as a home address, phone number, and social security number) each fact witness whom you intend to call at trial and also please state each fact you expect the witness to testify to.

*See* Pls.' Mot. to Compel Resp. to its 2-10-12 Interrogs. 3.  To the plaintiffs' interrogatory, the District replied generally:

> The District objects to the extent that this Interrogatory seeks to replace, expand, or preempt the deadlines set by the Federal Rules of Civil Procedure and the Orders of this Court.  The District objects to the extent the information sought is unduly invasive of the privacy of witnesses who will willingly appear as current employees of the District, and affirmatively states that, where applicable, such witnesses may be deposed through arrangement with District counsel.  The District objects that the requested recitation of "each fact" to be attested to in evidence at trial in this class action involving thousands of detainees would be unduly burdensome and vexatious.

*See id*.  Subject to objections, the District provided responses for ten witness; some examples:

> Jeanette Myrick: Ms. Myrick can be reached through counsel for the District for the purposes of a deposition.  Ms. Myrick will testify regarding DOC Records

> Office procedures, including staffing and training; the inmate-release process; and discrepancy reports. . . .
>
> Sean Day: Mr. Day is an expert retained by Plaintiffs and whose contact information is already in Plaintiffs' possession. Mr. Day will testify regarding the methods he used to evaluate inmate jackets and prepare the data that was used by Dr. Kriegler in his expert reports.

*Id*. at 3–4. Plaintiffs argued that these responses were deficient because the District "stated the names of witnesses and the topics they would testify to but not 'each fact you expect the witness to testify to.'" *Id*. at 5.

On June 12, 2012—after the District filed its present Motion to Compel—this Court ruled on the plaintiffs' motion. This Court stated:

> [T]he plaintiffs' interrogatory asks for "each fact that each witness would testify to." The Court agrees with Defendant to an extent: this is a step too far. Providing a complete answer to this interrogatory would be impossible. However, defendant's other objection—that they could not answer such a question because they have not prepared their witnesses—is nonsensical. Defendant provided the names of their witnesses to plaintiffs presumably because the defense intends to call these witnesses at trial. Defendant must have some understanding of their own witnesses' testimony. Otherwise, naming them as witnesses would be both foolish and illogical….[D]efendant is ordered to provide a summary of the likely testimony of each of the ten witnesses it named in its response to plaintiffs' interrogatory[.]

*Barnes v. District of Columbia*, 2012 WL 3105218, *4 (D.D.C. June 12, 2012) (ECF No. 358).

If the plaintiffs thought the District's responses were deficient, surely they thought their responses were no better. The plaintiffs did not even attempt a brief summary of the facts to which each witness would attest. They did not include their two experts, who they concede will testify at trial. *See* Pls.' Opp'n to Def.'s Mot. to Compel 9, June 8, 2012, ECF No. 354. Instead, they simply referred to the witnesses' previous affidavits and interrogatory responses in their opposition papers. *Id*. at Exs. 1, 2. Basically, the plaintiffs played a game of discovery chicken, refusing to detail their witnesses until the District did the same. However, a party "is not

justified in providing insufficient answers just because [the other party] did." *Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 17, 24 (D.D.C. 2009).

The Court understands that the parties may try to gain a competitive advantage through gaming the discovery process. Such strategic maneuvers can cause headaches for courts, as they trudge through multiple discovery motions with no real issues in dispute. The parties drag their feet until prodded, hoping to gain an upper hand through delay. Plaintiffs had previously filed a motion to compel on a nearly identical question. Plaintiffs provided answers even less detailed than the defendant's, and even admit that they are waiting until "the District responds to plaintiffs' pending interrogatory." Pls.' Resp. to Def.'s Fourth Set of Doc. Prodc. Req. 1. The Court reminds plaintiffs that Federal Rule 37 gives the Court "broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 638, 642–43 (1976) (per curiam)); *see also D.L. v. District of Columbia*, 274 F.R.D. 320, 324–26 (D.D.C. 2011) (Lamberth, C.J.) (explaining wide discretion of trial courts to impose wide variety of sanctions). This case has been going on for over six years. The plaintiffs refused to do something they wanted the Court to demand the District to do. Discovery, at least for the liability phase, is nearing the finish line. If the plaintiffs persist in needlessly gumming up the process, sanctions—not a further warning—may be appropriate.

The plaintiffs are ordered to provide a narrative response to Interrogatory 13. The Court requires plaintiffs to answer the question in the same manner, and with the same level of detail, as the Court ordered the District. If the plaintiffs have any questions about what the Court requires, they may look at the Court's June 12, 2012 Memorandum and Order, in particular the language block-quoted above. *See Barnes*, 2012 WL 3105218, *4.

### C.  Defendant's Motion to Preclude Plaintiffs from Using Certain Evidence

The District also requests, within the motion to compel discussed above, that the Court preclude the plaintiffs from "using their experts' reports or testimony at trial."  Def.'s Mem. ISO its Mot. to Compel 5.  The District claims that the plaintiffs' failure "fully to answer Defendant's Interrogatory No. 13 and timely supplement their expert reports deprives the District of the chance to adequately test plaintiffs' experts' conclusions and prejudices the District's defense of this case."  *Id.  See also Williams v. Johnson*, 278 F.R.D. 10, 14 (D.D.C. 2011) ("[T]he sanction is automatic; '[i]f a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information…to supply evidence…at trial, unless the failure was substantially justified or harmless.") (quoting F.R.C.P. 37(c)(1)).  However, for the reasons discussed regarding the District's Motion to Strike *infra*, the Court does not agree with the District's assertion that plaintiffs' experts were "lying in wait to express new opinions at the last minute."  Def.'s Mem. ISO its Mot. to Compel 5 n.3 (quoting *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011)).  The plaintiffs' experts filed their reports within the time allotted by this Court.  Therefore, there is no need to preclude the plaintiffs from introducing this evidence.  *Cf. Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 28 n.16 (D.D.C. 2011) (denying motion to strike supplemental expert report when report filed "several months prior to trial, leaving defendants with sufficient time to adjust their trial preparation….Any harm they do experience, however, can be minimized by allowing defendants to depose the expert if they so choose.") (citing *Albert v. Warner-Lambert Co.*, 2002 WL 745822, *1 (D. Mass. Apr. 24, 2002) ("[I]n lieu of preclusion, the court will allow [the expert] to supplement his report contingent upon his being made available for up to four hours of additional direct deposition testimony at [plaintiff's] expense.")).

**D.  Defendant's Motion to Strike Plaintiffs' Supplemental Expert Reports**

As discussed in Part III.A. *supra*, the Court had directed the plaintiffs to respond to the District's Interrogatories 1 and 2 (requesting information about number of overdetentions during the trial period and overdetentions attributable to the 10 p.m. cut-off rule).  The Court took the somewhat unusual move of ordering the plaintiffs to produce new documents in response to the interrogatories.  *Barnes*, 281 F.R.D. at 55–56.  At that time, the Court expected the answers to come in the form of supplemental expert reports estimating the number of overdetentions and explaining the reasoning behind those numbers.  To permit the production of these reports, the Court reopened discovery until June 11, 2012, ECF No. 345, and ultimately extended the deadline via Minute Order to June 14.  By the amended deadline, the plaintiffs filed their amended expert reports answering Interrogatories 1 and 2.  *See* ECF No. 360.

When the District received these reports, instead of withdrawing their now-moot Motion to Compel answers to Interrogatories 1 and 2, it responded with a Motion to Strike, Or, In the Alternative, For Extension of Time and Leave to Designate Rebuttal Expert(s), June 29, 2012, ECF No. 365.  The District claims that the "latest expert reports radically alter their analysis and vastly increase their estimates of overdetentions in the Trial Period," and characterize the reports as eleventh hour filings.  Def.'s Mem. ISO its Mot. to Strike 1, 5.  The District asks the Court to strike the amended expert reports.  In the alternative, the District asks the Court to extend discovery for at least 74 days to allow the District to analyze the new reports and depose Dr. Kriegler and Mr. Day, the plaintiffs' experts.  The District also requests leave to designate potential rebuttal experts.  *Id*. at 12.

This is another example of the District apparently misunderstanding this Court's April 3rd Discovery Opinion.  In support of its Motion to Strike, the District dismissively states that

"plaintiffs had already asserted on multiple occasions that answering [Interrogatories 1 and 2] would require not just a supplemental discovery response, but for them to 'create documents that did not exist' and consult with their experts." *Id.* at 3.  The language the District quotes, however, originates from the Court—not the plaintiffs.  In its April 3rd Discovery Opinion, the Court stated, "The Court recognizes that ordering a party to *create a document that doesn't exist* or to perform analyses it hasn't yet performed is somewhat unusual…[yet] ordering plaintiffs to create the requested information is reasonable." *Barnes*, 281 F.R.D. at 55–56 (emphasis added). There can be no undue surprise that this information was coming because it was what the Court had ordered.[5]  Between this Motion to Strike and the premature May 22 Motion to Compel responses to Interrogatories 1 and 2, it seems that the District failed to examine or understand the Court's April 3rd Discovery Opinion.  The Court urges the District to study this Court's previous orders before filing additional motions.

It also seems that the District failed to examine or understand other orders of this Court. The District complains that the expert reports came "literally on the last day of discovery," and therefore caused undue surprise. Def.'s Mem. ISO its Mot. to Strike 5.  The plaintiffs filed their expert reports on June 14, 2012—the deadline established by the Court.  The defendant seems to think that the June 14th deadline applied to *all* aspects of the additional discovery, including the depositions of the experts based on the supplemental expert reports. Def.'s Mem. ISO its Mot. to Strike 4–6, 10–12.  The District characterizes the plaintiffs as "lying in wait" and "sandbagging [the District] with three new expert reports." *Id.* at 11.

If the District had just read the Court's orders extending time, it could have refrained

---

[5] The District objects to the form of the plaintiffs' answer.  Def.'s Mem. ISO its Mot. to Strike 2 n.3.  However, the plaintiffs answered this way because they were directed to do so by the Court's April 3rd Discovery Opinion.  281 F.R.D. at 55–56.  The District is not entitled to dictate the form of the plaintiffs' response. *Huthnance v. District of Columbia*, 255 F.R.D. 297, 300 (D.D.C. 2008).

from such dramatic language and taken a more measured approach.  In their April 23, 2012 Motion for a Nunc Pro Tunc Extension of All Discovery Deadlines, ECF No. 343, the plaintiffs stated:  "Plaintiffs now estimate that it will take until Monday, June 11, 2012 for Mr. Day to complete his investigation and analysis and to pass them on to Dr. Kriegler, and then for Dr. Kriegler to complete his investigation and analysis, and for both to complete and finalize their reports."  *Id*. at 6.   On April 27, 2012, the Court granted plaintiffs' motion, ordering: "Specifically, the discovery deadlines in this case are hereby extended until Monday, June 11, 2012.  Furthermore, the Court shall permit the District to depose both Dr. Kriegler and Mr. Day, at its option."  ECF No. 345.  On June 12, 2012, the Court entered a Minute Order "granting [plaintiffs'] Motion for Extension of Time to produce plaintiffs' experts' reports."  The Order continued:  "Plaintiffs are ordered to produce the reports and all related discoverable material no later than 12:00 AM on Thursday June 14, 2012."  From these filings, it should have been apparent to the District that it would receive the expert reports on the day of the deadline.

The Court understands that there might have been some ambiguity in its April 27th Order. The Court extended "the discovery deadlines in this case…until Monday, June 11, 2012," allowed "the District to depose both Dr. Kriegler and Mr. Day, at its option," but stated that "[n]o further extensions of discovery will be permitted."  ECF No. 345.  By this, the Court meant that the District could depose the experts, at its option, after it received the reports.  These depositions need not occur before June 11, as the Court considered the leave to take depositions an *additional* extension of discovery, beyond *which* "[n]o further extensions….[would] be permitted."  *Id*.  When the District received the reports on June 14, rather than asking the Court to clarify its April 27th Order to determine when and whether it could depose plaintiffs' experts,[6]

---

[6] Although no Federal Rule of Civil Procedure specifically governs "motions for clarification," these motions are generally recognized and allowed by federal courts.  *See U.S. v. Phillip Morris USA*

it cranked the dial up to eleven and filed a Motion to Strike.

The District claims that the supplemental reports depart so dramatically from the previous reports that the Court cannot consider them mere updates and must strike them. Def.'s Mem. ISO its Mot. to Strike 6. The District relies on *Mineba v. Papst*, 231 F.R.D. 3 at 6, wherein the Court struck an amended expert report where "[t]he nature of the second disclosure [was] so substantially different from the first that it [fell] far outside any reasonable notion of correcting an incomplete or inaccurate report." *Mineba* concerned an attempt by a party to amend their expert report during *trial*. *Id*. The *Mineba* opinion states that "[t]he purpose of Rule 26(a)(2) [governing timing of expert disclosures] is to prevent unfair surprise at trial." *Id*. at 5–6. Although this Court wants to finish discovery and proceed to trial as soon as possible, it has not yet set a trial date. Another case relied on by the District, *Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003), concerns an attempt by an expert to supplement his report after the close of discovery.[7] In the present case, plaintiffs filed their reports during the window of additional discovery set aside for this purpose. The supplemental reports were filed "as ordered by the court," F.R.C.P. 26(e)(1)(B), by its April 3rd Discovery Opinion directing plaintiffs to create documents responsive to Interrogatories 1 and 2. *Barnes*, 281 F.R.D. at 55–56. The plaintiffs filed Errata to the Second Supplemental Expert Report, ECF No. 360-3, to correct an incomplete or incorrect prior report, per Rule 26(e)(1)(A).

---

*Inc*., 793 F. Supp. 2d 164, 168–69 (D.D.C. 2011) (explaining motions for clarification). "The general purpose of" a classic "motion for clarification is to explain or clarify something ambiguous or vague[.]" *Resolution Trust Corp. v. KPMG Peat Marwick, et al.*, 1993 WL 211555, *2 (E.D. Pa. June 8, 1993).

[7] A third case relied on by the District, *U.S. ex rel. Purcell v. MWI Corp*., 824 F. Supp. 2d 12, 19 (D.D.C. 2011) did not concern the filing of supplemental expert reports. Rather, "the defendant failed to disclose two of its witnesses" *at all* during discovery, and for that reason the Court granted "the government's motion to strike those witnesses' declarations." *Id*. at 12. While this opinion contains strong passages that sound good for the District, the facts are dissimilar. Here, the plaintiffs submitted supplemental reports—written by experts whom have already been disclosed—pursuant to a Court order. This is very different from springing two entirely new witnesses on a party.

Motions to strike are strongly disfavored, and the decision of whether to strike all or part of a pleading or attachment thereto rests within the sound discretion of the Court.  *See supra* Part.II.B. (collecting cases).  As detailed in Part III.D *infra*, while the Court concedes that the supplemental reports are different from the prior reports, the Court does not see the changes as so dramatic and prejudicial to the District as to warrant striking the reports.  When considering strong sanctions a Court must consider less strict options.  *Bonds*, 93 F.3d at 808.  To the extent the supplemental reports introduce new issues, the Court can minimize any prejudice to the District through less severe means.  If parts of the plaintiffs' new reports contain irrelevant information, the Court may consider narrower motions to strike or *in limine* directed at removing only the irrelevant passages.  Moreover, allowing the District to depose the plaintiffs' experts ensures the District a fair opportunity to respond to the plaintiffs' reports.

The Rules require that parties disclose their expert reports "at the times and in the sequence that the Court orders." F.R.C.P. 26(a)(2)(D).  That is what the plaintiffs did.[8]  Pursuant to the Court's April 3rd Discovery Opinion and subsequent extensions for time, the plaintiffs filed supplemental expert reports answering defendant's Interrogatories 1 and 2.  The Court reopened discovery for this purpose and the plaintiffs filed those reports within that window.  Since the plaintiffs followed the Court's order and timely filed their supplemental expert reports, the Court will not strike them.

---

[8] The plaintiffs supplemented their expert reports under Rule 26(e)(1)(B), pursuant to this Court's April 3rd Discovery Opinion and subsequent extension orders.  Therefore, the Court does not need to consider the requirements of Rule 26(e)(1)(A), which some Courts have read more narrowly. *See Keener*, 181 F.R.D. at 640 (limiting supplementation under 26(e)(1)(A) to "correcting inaccuracies, or filling the interstices of an incomplete report based upon information that was not available at the time of the initial disclosure.").  In the course of preparing these supplemental reports, the plaintiffs revisited and revised an earlier report and filed errata thereto.  The plaintiffs did not revisit the earlier report *sua sponte* but discovered the inaccuracies as they prepared the reports ordered by this Court.  Therefore, this Court finds that this errata filing was proper under Rule 26(e)(1)(A), as the plaintiffs "learn[ed] that in some material respect the [earlier] disclosure or response [was] incomplete or incorrect" and the Court believes that the plaintiffs provided corrections in a timely manner after learning of the need for them.

### E.  Defendant's Motion to Extend and Grant Leave to Designate Rebuttal Experts

This Court has noted that it would give the District an opportunity to depose plaintiffs' experts Dr. Krieger and Mr. Day after the District received the supplemental expert reports.  *See* Order, Apr. 17, 2012, ECF No. 345 ("[T]he Court shall permit the District to depose both Dr. Kriegler and Mr. Day, at its option.").  Now that the plaintiffs have submitted their expert reports, the Court will reopen discovery for the limited purpose of allowing the District to depose plaintiffs' experts.  The Court does not believe it needs to reopen discovery for the full 74 days requested by the District.[9]  *See* Def.'s Mem. ISO its Mot. to Strike 12.  The District has had the expert reports for almost three months and has reviewed them when drafting its Motion to Strike and Reply in support thereto.  Therefore, the Court will reopen discovery for 28 days for the sole purpose of allowing the District to depose Dr. Kriegler and Mr. Day on issues relating to the expert reports they filed on June 14, 2012, and other matters as allowed by the prior orders of this Court.[10]

The Court will not reopen discovery to allow the District to designate rebuttal experts. While the Rules allow a party to designate a rebuttal expert within 30 days of receiving an opposing party's expert disclosure, F.R.C.P. 26(A)(2)(d)(ii), there is no separate rule conferring a right to designate a rebuttal expert upon receiving a supplemental or amended report from a previously-disclosed expert.  The Court *could* reopen discovery and grant leave upon a showing of good cause, as permitted by Federal Rule 16(b) and Local Rule 16.4.  A district court has considerable discretion in handling discovery and expert witnesses.  *See Food Lion*, 104 F.3d at

---

[9] In a bold move, the District states it needs "at the very least, 60 days to analyze" the supplemental reports.  Def.'s Mem. ISO its Mot. to Strike 12.  To put this in context, this is *twice* the length that Rule 26(A)(2)(d)(ii) would allow the District to designate a rebuttal expert after receiving an initial expert disclosure.

[10] For example, in its April 3rd Discovery Opinion, the Court clarified the permissible scope of the District's deposition of Dr. Kriegler.  *Barnes*, 281 F.R.D. at 57.  The parties are urged to review the prior orders of this Court before filing any additional motions to compel or motions for protective orders.

1012; F.R.C.P. 26(a)(2)(C).

The deadline for discovery—save for the allowance to depose plaintiffs' experts—has passed. The Court agrees with the plaintiffs that this request falls under Rule 16(b)—not Rule 6(b)—because it asks to modify the discovery deadlines contained in a scheduling order. *See Barnes*, 278 F.R.D. at 18 (establishing trial plan); *Myrdal*, 2007 WL 1655875, *2 (applying 16(b) to request to change discovery deadlines); *Mercury Ins.*, 2007 WL 1589495, *6 ("Filing an expert disclosure or a supplement thereto after the close of discovery requires leave of the Court pursuant to [F.R.C.P.] 16(b)."). Therefore, the District's request requires a showing that good cause exists to reopen and extend discovery, and the Rules give the Court considerable discretion in deciding whether to grant that request. *See Myrdal*, 2007 WL 1655875, *2.

There is no good cause where the District passed on several opportunities to timely designate a rebuttal expert. *See Johnson.*, 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment[.]"). On March 6, 2010, the District received Mr. Day's first report on his review of inmate jackets.[11] Def.'s Reply ISO its Mot. to Strike 2, Aug. 15, 2012, ECF No. 381. The District did not then designate a rebuttal expert. On November 15, 2010, Dr. Kriegler released his first expert report, estimating overdetentions based on a stratified random sample of inmate jackets provided by Mr. Day. *Id.* at 2–3. The District did not then designate a rebuttal expert. On December 2, 2010, Dr. Kriegler revised the numbers in his first expert report. *Id.* at 3. The District did not then designate a rebuttal expert. On December 13, 2010, Mr. Day filed a supplemental report based on additional

---

[11] An "inmate jacket" is a term referring to the inmate's physical file, which includes information about the inmate's term of sentence and time of release. The District also maintained an electronic database of inmate information, known as "JACCS," that was supposed to compile the information contained in the jackets. Starting in January 2007, the District began systematically tracking overdetentions through the production of Discrepancy Reports. The District did not produce these Discrepancy Reports to the Court until June 2011. For a more thorough discussion of how the District and plaintiffs determined and tracked overdetentions, see *Barnes*, 793 F. Supp. 2d at 265–72.

reviews of jackets.  *Id.* at 4.  The District did not then designate a rebuttal expert.  A day later, Dr. Kriegler again revised his first report based on Mr. Day's new report.  *Id*.  The District did not then designate a rebuttal expert.  On December 7, 2011, the Court reopened limited discovery until April 6, 2012; on February 14, 2012 Dr. Kriegler filed his Second Supplemental Report.  *Id*. at 4–5.  The District did not then designate a rebuttal expert.  From April 3, 2012 onwards, the Court extended discovery, eventually setting the deadline for plaintiffs' supplemental expert reports for June 14, 2012.  *Id.* at 5.  The District did not then designate a rebuttal expert.  At no time, in the almost two years since receiving the first report, did the District feel the need to designate a rebuttal expert.  It is only now, after all the extended deadlines have passed and the Court has stated that "[n]o further extensions of discovery will be permitted," Order, Apr. 27, 2012, ECF No. 345, that the District decides it might need an expert witness to rebut Mr. Day and Dr. Kriegler's reports.

If the plaintiffs submitted reports vastly different from their original reports, then the District might need another opportunity to designate a rebuttal expert.  Therefore, the Court must examine the supplemental reports and determine how they differ from the original reports.  First, bear in mind that the plaintiffs created the supplemental reports at the direction of the Court.  After summary judgment, only a subset of the facts remained in dispute.  The Court—so the plaintiffs could respond to interrogatories *posed by the District*—asked the plaintiffs to revise their data to focus only on the overdetentions in dispute.  *Barnes*, 281 F.R.D. at 55–56.  The Court understood that this might require additional analysis on the behalf of the plaintiffs' experts, and communicated as much in its April 3rd Discovery Opinion.  *Id*.  The District should have known such analysis was forthcoming, so it cannot claim shock when plaintiffs produced what they were asked to produce.

The District claims that the supplemental reports represent "an entirely new analysis—independent of both methodologies used in Dr. Kriegler's 2nd Report" and estimate a number of overdetentions during the Trial Period "almost one third greater than Dr. Kriegler's previous estimate." Def.'s Mem. ISO its Mot. to Strike 3–4 (original formatting omitted).  In particular, the District claims that Dr. Kriegler's Third Supplemental Report uses different data sources (the District's Discrepancy Reports instead of statistically sampled jacket data), employs different statistical methods (simple random sampling instead of stratified random sampling), and comes to different results (estimating 1,543 overdetentions instead of 1,180).  Id. at 6–7.  The District claims that Mr. Day's June 11th report differs from his previous report because it "involves the review of entries from a 'Review Spreadsheet' created by Dr. Kriegler from the District's Release Discrepancy Database" instead of "reviewing [a] random, statistically-selected assortment of inmate jackets."  Id. at 8.  The District claims that Dr. Kriegler's Errata to his Second Report simply revises the numbers upwards without any "justification for this correction."  Id. at 9.

The plaintiffs respond that these changes were justified and, in any event, do not require the District to designate a rebuttal expert.  The plaintiffs state that their reports were not prepared on a whim, but pursuant to Court order.  Pls.' Opp'n to Def.'s Mot. to Strike 16–17, Aug. 8, 2012, ECF No. 378.  They mention that after the plaintiffs told the Court and the District that they anticipated the need to do additional analysis, "the District's only response was to ask for leave to depose Mr. Day…[and] Dr. Kriegler upon receipt of their supplemental reports."  Id. at 19.  The plaintiffs contend that Mr. Day had previously analyzed the District Audit Analysis, which is "virtually identical in design and content to the Release Discrepancy Database" analyzed in Mr. Day's June 2012 report.  Id. at 20.  The District did not produce its Discrepancy

Reports to the Court until June 2011.  *Barnes*, 793 F. Supp. 2d at 270.  The change in data

sources, plaintiffs allege, reflects newly produced data that allows plaintiffs to separate out

overdetentions attributable to the 10 pm cut-off rule more accurately; but Mr. Day did not change

*how* he reviewed the data.  Pls.' Opp'n to Def.'s Mot. to Strike 26–32.  The plaintiffs explain in

detail the reasons why Dr. Kriegler shifted from a stratified random sample in his Second Report

to a simple random sample in his Third Report.  *See id. at* 43–45.  Regardless of the particulars

of why they made the change, plaintiffs state:

> The District does not state why adding a simple random sample of a stratified
> random sample instead of a stratified random sample…makes the analysis so
> novel that it requires an expert to understand it where before the District did not
> designate an expert.  Arguably, if the type of statistical analysis used in the Third
> Supplemental Report were more complicated than the type of analysis used in the
> Original Report and Second Supplemental Report, then this might support the
> District's claim to need an expert now where it did not before.  But the opposite is
> true—a statistical analysis using a stratified random sampling design is much
> more complex than one using a simple random sample[.]

*Id*. at 42–43.  This is perhaps the plaintiffs' most compelling argument.

In essence, the District's argument is that the supplemental expert reports and errata are

different.   Stratified random sampling is different from simple random sampling; the

Discrepancy Reports are different from jackets; 1,180 is different from 1,543.  What the District

fails to explain, however, is how these differences relate *to its request* to potentially designate

rebuttal experts.  From its previous inaction, the Court assumes that the District was perfectly

fine going into trial without a rebuttal expert when Dr. Kriegler's report used stratified random

sampling.  The District does not explain *how* the differences change the game—how the methods

and data sources used are different *such that* the District did not need a rebuttal expert before, but

may need one now.  It does not explain why the District felt it could adequately rebut, without an

expert, Dr. Kriegler's Second Supplemental Report, but *now* would be unduly prejudiced if the

Court does not allow it to designate an expert.  The District passed on multiple opportunities to designate a rebuttal expert.  Rule 16(b) requires a showing of good cause before the Court will alter the scheduling order.  The Court finds no such good cause exists, and the District has not convinced it otherwise.

If the District sees a problem with methods and data sources used in the supplemental reports, it can address them during its depositions of Mr. Day and Dr. Kriegler.   If the supplemental reports contain new, irrelevant information such as "producing expert opinions on a range of *other* topics, extending even to the idiosyncrasies of various employee-review techniques in the DOC Records Office," Def.'s Mem. ISO its Mot. to Strike 12, then the solution would be targeted motions *in limine* or motions to strike.  The solution is not to strike the whole report or allow the District to appoint an unnecessary expert to rebut irrelevant information.

Judge Facciola, when faced with a similar set of facts, came to a reasonable solution.  In *Hubbard v. Potter*, 247 F.R.D. 27, 31 (D.D.C. 2008), the defendant received a supplemental report from plaintiffs' expert.   In response, the defendant sought leave to designate rebuttal witnesses, claiming that he "would be prejudiced if not permitted to respond to [plaintiffs' expert's] conclusions in his second report." *Id*. Judge Facciola decided:

> Unfortunately for defendant, this argument comes too late.  As noted by plaintiffs, pursuant to the scheduling order…all expert designations were due on or before March 3, 2006, with rebuttal designations due on or before March 31, 2006.  At that point in time, defendant chose not to designate an expert witness.  It also chose not to designate a rebuttal expert witness.  On September 8, 2006, however, when plaintiffs' expert filed his supplemental report, defendant moved to strike, limit, or exclude the report on the grounds that it exceeded the subject matter of the first report.  In denying defendant's motion, the Court fashioned a practical solution to address defendant's concerns by allowing defendant to take a supplemental deposition of plaintiffs' expert.  Defendant has thus had ample opportunity to address the issues raised by plaintiffs' expert's supplemental report.  Defendant has identified no reason why the court should allow defendant to change its mind at this late date, when defendant was clearly given ample opportunity to 1) designate an expert witness, 2) designate a rebuttal expert, and

3) depose plaintiffs' expert on not one but two occasions, following the submission of both of plaintiffs' experts' reports.

*Id.* The facts in this case are similar. The District, after receiving the plaintiffs' previous expert reports, did not designate their own expert. When this Court reopened discovery so plaintiffs could create reports to answer Interrogatories 1 and 2, the District did not seek leave to designate experts. And in this case, instead of granting the District's motion to strike or leave to designate rebuttal experts, the Court will "fashion[] a practical solution to address defendant's concerns by allowing defendant to take a…deposition" of plaintiffs' experts.[12] *Id.* Recognizing Judge Facciola's wisdom and expertise resolving discovery disputes, this Court is confident following his lead. *See also Dormu*, 795 F. Supp. 2d at 28 n.16 (denying motion to strike supplemental expert report and allowing deposition of expert to minimize any harm or prejudice); *Warner*, 2002 WL 745822, *1 (allowing additional deposition of expert in lieu of precluding supplemental expert report).

At this stage, the Court will allow the District the opportunity to depose plaintiffs' experts, but nothing more. The Court does not feel that the changes reflected in the plaintiffs' supplemental reports provide good cause to amend the scheduling order to allow the designation of rebuttal experts, where the District had previously passed on several opportunities to so designate. Nevertheless, this does not foreclose the District's ability to designate rebuttal experts in the future if the plaintiffs continue to supplement and amend their expert reports. For example, if in response to the discovery compelled in the following section, plaintiffs file new amended expert reports, the Court might then consider whether leave to designate rebuttal experts is warranted.

---

[12] This Court feels that it has already fashioned this solution, and that it had already given the District leave to "depose both Dr. Kriegler and Mr. Day, at its option" after receipt of their supplemental reports. Order, Apr. 27, 2012, ECF No. 345. Nevertheless, the Court will "refashion" the solution and formally reopen discovery to allow for the depositions of Dr. Kriegler and Mr. Day.

### F.  Plaintiff's Motion to Compel Production of the Release Discrepancy Database

Finally, the Court considers the plaintiffs' June 26, 2012 Motion to Compel the Production of the Release Discrepancy Database.  ECF No. 362.  Plaintiffs' had originally filed a similar Motion to Compel before the end of discovery.  Non-Consent Mot. to Compel Prodc. of the Release Discrepancy Database, June 11, 2012, ECF No. 356.  However, this motion failed to include the required certification that the plaintiffs met and conferred with the District prior to filing.  *See* F.R.C.P. 37(a)(1).  After so conferring, the plaintiffs filed the present motion to supersede the previous defective motion.  *See* Pls.' Mot. to Compel 1; Def.'s Opp'n to Pls.' Mot. to Compel 3, July, 12, 2012, ECF No. 369.

In their Re-Stated Motion to Compel, the plaintiffs argue that they have not received all the data and documents they requested from the District.  *See* Pls.' Mot. to Compel 3–4.  A short history of how the District and plaintiffs have tracked overdetentions will be helpful.  Early in the original class period—from approximately 2005 to 2007—the District had no organized way to track inmate overdetentions.  The data for this period primarily came from analyses of inmates' physical files (commonly referred to as "jackets") and the DOC's data management system, called the Jail and Community Corrections System ("JACCS").  *See Barnes*, 793 F. Supp. 2d at 265–70.  To estimate overdetentions occurring during this early period, the plaintiffs' experts used a combination of the JACCS data and a stratified random sample of physical jackets.  *Id.* at 270–71.  Since the District had no competing data the Court could credit, the Court deemed plaintiffs' facts for this early period uncontested, and granted plaintiffs summary judgment as to the District's liability for overdetentions that occurred from September 1, 2005 to December 31, 2006.  *Id.* at 280.

Beginning in January 2007, the District finally began tracking overdetentions in a

systematic way.   The DOC began producing "Discrepancy Reports" listing individual overdetentions by month and noting the reasons for the overdetentions.   The District provided these reports to the plaintiffs following a June 2011 hearing before this Court.   *Id*. at 270.   For the purposes of these reports, the DOC defined an "overdetention" as "anyone released after 11:59 p.m. on the day they are ordered released, or alternatively, situations where the end of sentence calculation was computed incorrectly."   Souverain Decl. 2, June 7, 2011, ECF No. 301-2.   The DOC prepares these reports by running a query in the JACCS database to generate a "'Crystal Report,' which identifies the inmates who have been *potentially* over-detained.   The institutional file of each inmate on this list is then reviewed by hand and a notation is entered into Lotus Notes as to whether the inmate was over-detained or not."   *Id*. at 1–2 (emphasis in original).   This Court credited these Discrepancy Reports and found that they created a contested issue of material fact, precluding an award of summary judgment to either side.   *Barnes*, 793 F. Supp. 2d at 292–93.

After the Court resolved the cross-motions for summary judgment, the District's liability for overdetentions—not attributable to the 10 p.m. cut-off rule—that occurred between January 1, 2007 and February 25, 2008 remained in dispute.   *See Barnes*, 278 F.R.D. at 17.   The Court refers to this period, from January 2007 to February 2008, as the "disputed" or "Trial Period." *See id.*   Following this narrowing of the issues, the Court opened a window of "limited fact and expert discovery as to liability" permitting   "[o]nly such discovery as will assist the parties in determining how many overdetentions occurred from January 1, 2007 to February 25, 2008."   *Id*. at 23.   The Court stated that "[n]o discovery on 'process' and related issues shall be permitted." *Id*.   The Court reaffirmed and clarified the limited scope of additional discovery in its subsequent April 3rd Discovery Opinion.   *See Barnes*, 281 F.R.D. at 55–57.

Plaintiffs claim that the District has wrongfully withheld some of the underlying data the DOC used to create its Release Discrepancy Reports.  As noted above, the Reports are the result of District employees analyzing and compiling inmate data.  Plaintiffs refer to this underlying data as the "Release Discrepancy Database," and they claim they only received one version of it—what the plaintiffs call "Beta."  Plaintiffs seek, among other documents, the entire Release Discrepancy Database—what the plaintiffs call "Alpha."  *See* Pls.' Mot. to Compel 1–3.  They also seek the query the DOC used to analyze inmate data and generate the Crystal Reports and Release Discrepancy Database.  *See* Pls.' Reply ISO its Mot. to Compel 1–3, July 25, 2012, ECF No. 373.  The District counters that "plaintiffs have all the data they demanded, including all the underlying JACCS data used to generate the Release Discrepancy Database," and that plaintiffs' motion is untimely.  Def.'s Opp'n to Pls.' Mot. to Compel 8, 9–11, July 12, 2012, ECF No. 369.

### 1.  Timeliness of Plaintiffs' Motion to Compel

The lateness of plaintiffs' motion concerns the Court.  The plaintiffs filed this  motion on June 25, 2012—eleven days after the close of discovery, a deadline that had been extended multiple times to accommodate the plaintiffs.  *See* ECF docket entries 328, 339, 343, 345, 355; Minute Order, Apr. 23, 2012 (granting plaintiffs' Motion for Extension of Time, ECF No. 339); Minute Order, June 12, 2012 (granting plaintiff's Motion for Extension of Time, ECF No. 355). Based on this untimeliness, the Court might be justified in denying plaintiffs' motion to compel. *See Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) (ordering protective order against untimely discovery filing).  The District cites a long list of cases to support its position that this Court could deny plaintiffs' motion simply because it was filed after the close of discovery.  *See* Def.'s Opp'n to Pls.' Mot. to Compel 10–11 (citing, *e.g.*, *Klugel v. Clough*, 252 F.R.D. 53, 55–56 (D.D.C. 2008) (motion to compel coming two months after close

of discovery denied as untimely); *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008) (denying motion where plaintiff obtained allegedly incomplete document production "over three years prior to the filing of his motion.")).  However, if courts should deny *all* motions to compel filed after the close of discovery, that would be the rule; it is not so.  *Cf. Jinks-Umstead v. England*, 227 F.R.D. 143, 153 (D.D.C. 2005) (allowing untimely discovery notices to stand).

At the end of its paragraph arguing that this Court should deny plaintiffs' motion as untimely, the District included one citation to contrary authority.  Def.'s Opp'n to Pls.' Mot. to Compel 10–11.  This Court recognizes the case—*Lurie v. MAPMG*, 262 F.R.D. 29 (D.D.C. 2009) (Lamberth, C.J.)—as its own.  In that opinion, this Court stated:

> Although [defendant] contends that [plaintiff]'s motion to compel is untimely, it cites no authority for its position that a motion to compel filed outside the discovery period is untimely per se.  Indeed, to the contrary, courts routinely consider motions related to discovery, even though they are filed outside the discovery period, especially where the time of filing of such a motion is attributable, as it is here, to the parties' attempted settlement of the discovery dispute.  *See, e.g., McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP*, 243 F.R.D. 1, 11 (D.D.C. 2007) (noting that the federal rules contain no provision regarding the time of filing for a motion to compel and suggesting that a per se rule would create perverse incentives in discovery).

262 F.R.D. at 31.  This Court believes its discretion to manage its docket and oversee discovery cuts both ways.  While the Court is perfectly justified in denying an untimely motion if it comes too late (*see Dag*, 226 F.R.D. at 104), it may also exercise its discretion to permit motions to compel coming after the close of discovery.  *Jinks-Umstead*, 227 F.R.D. at 153; *Lurie*, 262 F.R.D. at 31.  The time of the filing does not end the inquiry.

Certainly Courts might be less willing to grant a discovery motion filed after a scheduling order's discovery deadline has passed, when the discovery deadlines have been extended several times over.  *Cf.*, *Lurie v. MAPMG*, 589 F. Supp. 2d (D.D.C. 2008) (Lamberth, J.) ("Given their heavy case loads, district courts require the effective case management tools provided by Rule

16.  Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.") (quoting *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)); *Johnson*, 975 F.2d at 610 ("A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril.'…[D]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier.") (quoting *Gestener Corp v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

On the other hand, since there is no rule "that a motion to compel filed outside the discovery period is untimely per se," *Lurie,* 262 F.R.D. at 31, plaintiffs do not have to meet the requirements of Federal Rule 16(b) and Local Rule 16.4 to file a motion to compel.  After all, they are not seeking an amendment to the scheduling order to reopen discovery; they are demanding the production of documents pursuant to requests served during the discovery period. Plaintiffs' are not asking for "new" discovery—they are asking for discovery they should have already received.  Therefore, while the "good cause" and "diligence" requirements of 16(b) may be helpful in determining whether plaintiffs' Motion to Compel comes too late, they do not control.  That said, the parties do not have free reign to file discovery motions long after discovery has closed, without any justification for the delay.

This Court feels that it has been very generous in extending discovery, while warning the parties that—at some point—discovery must end.  *See*, *e.g*., Order, Apr. 27, 2012, ECF No. 345 (extending discovery but stating, "No further extensions of discovery will be permitted."). However, unless there would be some undue prejudice to the parties, it is for the Court to decide when this generosity runs out.  In *Beale v. District of Columbia*, 545 F. Supp. 2d 8, 15–16 (D.D.C. 2008), the plaintiffs contended that the Judge Kay "bound himself to the deadlines for

the defendant's expert reports and the close of discovery…because he wrote [in an earlier Order]: 'There will be no further extensions of discovery.'" Judge Urbina eloquently responded:

> The plaintiffs forget a fundamental rule of litigation: the court's discretionary pronouncements are for it—not the parties—to enforce. A judge does not bind his own broad discretion when he runs a tight ship. And if, in furtherance of case management, a judge occasionally betrays the fact that his bark is scarier than his bite, that is not a grievance on which a losing party is entitled to rest a reversal.

545 F. Supp. 2d at 16 (citations omitted). This Court truly wishes, in the spirit of its April 27, 2012 Order, ECF No. 345, that discovery for the liability phase would be finished by now. However, the Court finds reason to partially grant plaintiffs' Motion to Compel, despite the fact that it was filed after the close of fact discovery.

The plaintiffs filed their motion less than two weeks after the close of additional discovery. The cases cited by the District, Def.'s Opp'n to Pls.' Mot. to Compel 10, deal with significantly longer delays. *See Klugel*, 252 F.R.D. at 55–56 (motion to compel filed two months after close of discovery); *Long*, 561 F. Supp. 2d at 91 (motion filed over three years after plaintiff received allegedly incomplete document production); *Suntrust Bank v. Blue Water Fiber, LP*, 210 F.R.D. 196, 201–202 (E.D. Mich. 2002) (motion filed 18 months after discovery closed); *Tim W. Koerner & Assocs., Inc.*, 492 F. Supp. 294, 298 (S.D. Tex. 1980) (motion filed nine months after plaintiff received allegedly defective production). Since "courts routinely consider motions related to discovery[] even though they are filed outside the discovery period," *Lurie*, 262 F.R.D. at 31, this Court finds that an eleven day delay does not necessarily disqualify plaintiffs' motion.

### 2. Substantive Merits of Plaintiffs' Motion to Compel

The timeliness of plaintiffs' motion will play a factor, but not control, the Court's disposition of plaintiffs' Motion to Compel. Therefore, the Court will consider the substantive

merits of plaintiffs' requests in greater detail.

Plaintiffs claim the information they seek relates to three previous document requests. Plaintiffs' Eighth Document Requests sought "[a] Release Processing System Data Production to include data from all fields and all tables for inmates released on or after September 1, 2005" and "all writings or documents related to any Lotus Notes system used in the commitment detention or release of inmates from any DOC facility including data in-putted into the system since 2005 and all writings or documents related to show how the system was created or is maintained or operated." *See* Def.'s Resp. to Pls.' Eighth Doc. Req. 4, 8, Mar. 29, 2010, ECF No. 366-4 (original formatting omitted). In the Document Requests Served in the Deposition Notice of Shirley Simmons, plaintiffs requested "[a]ny other reports or writings generated by or for the District of Columbia regarding late releases and erroneous releases." *See* Def.'s Resp. to Pls.' Doc. Req. Served in Dep. Notice of Shirley Simmons 8, March 23, 2010, ECF No. 366-6. The District argues that it produced everything responsive to these requests, subject to its objections limiting production to the class period; and, in any event, plaintiffs' requests come years after they should have realized the production was incomplete. *See* Def.'s Opp'n to Pls.' Mot. to Compel 4–11.

After ruling on summary judgment, the Court ordered the parties to focus their remaining discovery efforts on the "disputed" or "Trial Period." *Barnes*, 278 F.R.D. at 17. Despite this, plaintiffs seek discovery beyond the Trial Period, including "the entire Release Discrepancy Database for the class period to date." Pls.' Mot. to Compel 1. The document requests plaintiffs claim cover this all predate this Court's summary judgment ruling. *Compare Id*. at 10–13 (listing three document requests), *with Barnes*, 793 F. Supp. 2d at 292–93 (June 24, 2011).

Plaintiffs' Eighth Document Requests, quoted *supra*, came before March 29, 2010.[13]  *See* Def.'s Resp. to Pls.' Eighth Doc. Req. 10.  Plaintiffs' Document Request Served in Deposition Notice of Shirley Simmons, quoted *supra*, came before March 23, 2010.  *See* Def.'s Resp. to Pls.' Doc. Req. Served in Dep. Notice of Shirley Simmons 10.  When the Court restricted all additional discovery to the "Trial Period," it stated that "[d]iscovery beyond this narrow issue would needlessly prolong this litigation, since plaintiffs had ample opportunity to probe such issues prior to the close of liability-phase discovery."  278 F.R.D. at 18–19.  The Court finds no reason to reopen discovery beyond the disputed period.  To the extent the Court grants any part of plaintiffs' Motion to Compel, such production shall be limited to documents relating to alleged overdetentions occurring from January 1, 2007 to February 25, 2008, and any documents or writings that would aid plaintiffs in interpreting data from that period (even if such writings were created outside of the Trial Period).

### i.  Plaintiffs' Request for the Entire Release Discrepancy Database for the Class Period and All Documents Needed to Interpret the Data

First, the plaintiffs ask the Court to compel the District to produce:

the entire Release Discrepancy Database for the class period to date in native format or in an excel spreadsheet, as well as all documents needed to interpret the data in the database, such as the names of the fields, both the programmer names and the data entry field names, and to produce all writings on how the database was created and how it has been used by the District.

Pls.' Mot. to Compel 1–2.  As noted above, the Court will not permit any production beyond the Trial Period.  Therefore, plaintiffs are not entitled to production of "the *entire* Release Discrepancy Database" regardless of whether this information is responsive to an earlier document request.  The time for that discovery has long since passed, and the Court and parties

---

[13] The plaintiffs attached, as the exhibits to their Motion to Compel, the District's responses to their document requests instead of the original requests.  *See* Pls.' Sealed Exs., July 2, 2012, ECF Nos. 366-1–10.  The District's responses are dated, and logic dictates that the plaintiffs could not serve requests before the date the District responded.

have shifted their focus to the Trial Period.  In the next section, the Court considers whether the plaintiffs are entitled to the complete Release Discrepancy Database as it relates to the overdetentions that occurred during the Trial Period.[14]

The party filing a motion to compel has the burden of showing that the production they received is incomplete or inadequate.  *Equal Rights Ctr.*, 246 F.R.D. at 32.  There is a showing that the District withheld the query DOC used to analyze inmate data and generate the Crystal Reports and Release Discrepancy Database.[15]  *See* Pls.' Mot. to Compel 5–8; Pls.' Reply ISO its Mot. to Compel 1–4.  The "query" refers to the search algorithm the DOC ran against inmate data to identify potential overdetentions.  In essence, it is a set of software commands created by the District to help create the Discrepancy Reports.  As such, it is "electronically stored information" that counts as a "writing" under Federal Rule 34(a)(1)(A).  The Court also agrees with plaintiffs that the query is a "writing generated by or for the government of the District…regarding late releases or erroneous releases" relating to "documents needed to interpret the data in the database."  *See* Pls.' Reply ISO its Mot. to Compel 3.  The query is clearly relevant to the case.  In order for the plaintiffs to understand fully the District's Discrepancy Reports, they need to have all the underlying data and information on how the DOC prepared the Reports.  The query the DOC used is a critical piece of this—it selected which

---

[14] Although the Court separates the plaintiffs' motion into two "requests," there is some overlap between the two.

[15] The District moved for leave to file a surreply, claiming that "plaintiffs in their Reply raise for the first time the issue of whether the District produced the disputed query[.]"  Def.'s Mot. for Leave to File Surreply, Aug. 2, 2012, ECF No. 376.  This Court, noting that "surreplies are generally disfavored," denied the District's motion.  Memorandum and Order, Sept. 5, 2012, ECF No. 386 (quoting *Glass v. LaHood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011)).  The Court concedes that plaintiffs went into far greater detail about the query in thier Reply.  *See* Pls.' Reply ISO its Mot. to Compel 1–4.  However, this was in direct response to the District's lengthy discussion of the query in its Opposition.  *See* Def.'s Opp'n to Pls.' Mot. to Compel 5–8.  Therefore, if anyone raised it for the first time, it was the District.  And most importantly, this Court thoroughly reviewed the District's proposed surreply before denying leave.  The Court did not see anything that would convince it to rule on plaintiffs' motion differently.

records would be subject to further review. *See* Souverain Decl. 1–2 ("In order to identify an over-detention, the DOC runs a "Crystal Report," which identified the inmates who have been *potentially* over-detained."); Decl. of Steve Fezuk ¶ 5, July 12, 2012, ECF No. 370-3 ("Every month, a query is run in JACCS to identify potential late releases, and the data obtained from the query is exported (in spreadsheet form) into the Release Discrepancy Database."); Decl. of Reena Chakraborty *passim*, June 29, 2012, ECF No. 370-4 (discussing use of query in preparing Discrepancy Reports). The plaintiffs have the right to check the District's work and determine whether the Discrepancy Reports accurately reflect the total number of overdetentions.

Having established that the query is a writing, falls under one of the plaintiffs' previous document requests, and is relevant, the Court must determine if there is any reason not to compel its production. If the plaintiffs already received the query the District used, then there is nothing to compel. *Cf. Hubbard*, 247 F.R.D. at 29 ("[P]laintiffs fail to account for the possibility that they may in fact have already received all responsive documents."). The District seems to concede, in its Opposition and exhibits thereto, that the plaintiffs have *not* received the query the DOC used to prepare its Discrepancy Reports. The District repeatedly argues that "the query identified [by plaintiffs] is *not* the one used to generate the Release Discrepancy Database." *See*, *e.g.*, Def.'s Opp'n to Pls.' Mot. to Compel 6. What is missing—tellingly—is *any claim* by the District that it has already produced the query the DOC did use. Even in their proposed Surreply—which the District claimed was necessary to counter the plaintiffs' "new" allegation in Reply that the District did not produce the query (Def.'s Mot. for Leave to File Surreply 2)—the best the District could argue was that since the plaintiffs had "re-created" the disputed query "based on the information provided by the District" they already have it and their motion is moot. Def.'s Proposed Surreply 2, Aug. 2, 2012, ECF No. 376-2. This does not explain why the

District never produced the query in the first place, and therefore the plaintiffs meet their burden of showing that the District's production was incomplete.[16]

After incompleteness has been established, the burden shifts to the party opposing production to show that the movant's requests are burdensome, overly broad, vague, outside the scope of discovery, or otherwise fall within the limitations on discovery in Rule 26(b)(2)(C). *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59–60 (D.D.C. 1984). The plaintiffs should not have to reverse engineer the District's query.[17]   It would be much simpler for the District just to produce it.   Therefore, the query's production would not be "unreasonably cumulative or duplicative" and it could not be "obtained from some other source" than the District "that is more convenient, less burdensome, or less expensive."   F.R.C.P. 26(b)(2)(C)(i).   Moreover, the District makes no claim that "the burden or expense of the proposed discovery outweighs its likely benefit."   F.R.C.P. 26(b)(2)(C)(iii).   The District does not contend that the query would be particularly expensive to find or produce.   Presumably, the query is simply a set of instructions that the Lotus Notes database program runs against the inmate data.   The query itself must dwarf in "size" when compared to the data to which it is being applied.   Furthermore, as a query repeatedly used by the DOC to help generate its Discrepancy Reports, it should be easily identifiable.   Based on the District's multiple assertions that the plaintiffs are confused as to which query the DOC ran (*see, e.g.*, Def.'s Opp'n to Pls.' Mot. to Compel 6–8), surely the District knows which query the DOC *did run*.

---

[16] It is not material to the outcome of this motion that, in a sense, the District's Opposition made the clearest case that the plaintiffs do not have the query.   After reading the briefings, the Court is convinced that the District failed to identify or produce something it should have.

[17] The District also does not get to say, in one place, that the plaintiffs already have the correct query because they re-created it, Def.'s Proposed Surreply 2, but claim elsewhere that the plaintiffs' query was not the one used by the District.   *See* Def.'s Opp'n to Pls.' Mot. to Compel 7 ("Plaintiffs simply *assumed* that the overbroad query developed by Lee Gazlay to identify potential overdetentions is the same one used by the DOC to generate the Release Discrepancy Database.   Not so.").

The District rests part of its argument on Federal Rule 26(b)(2)(C)(ii), which provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules…if it determines that…the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]"  *See also* Def.'s Opp'n to Pls.' Mot. to Compel 11 ("[P]laintiffs' motion should be denied pursuant to Fed. R. Civ. P. 26(b)(2)(C)(ii)[.]").  This is where the timeliness of plaintiffs' motion—discussed in detail in Part III.F.1. *supra*—comes in. When a party's motion comes late, some courts have denied motions to compel on 26(b)(2)(C)(ii) grounds because the party "had ample opportunity to obtain the information during the fact discovery period, and failed to raise the issue with the Court at the appropriate time." *Gucci America, Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 140–42 (S.D.N.Y. 2011).

The District's own Opposition helps explain why the plaintiffs might not have objected to this incomplete production earlier—the plaintiffs could have been under the false impression, for some time, that they already had the query the District used.  As the District explains:

> Plaintiffs…cite the query developed by Lee Gazlay (a former consultant for DOC) to identify potential late releases as the source of the "Crystal Reports" which are exported on a monthly basis from JACCS into the Release Discrepancy Database. But the query identified is *not* the one used to generate the Release Discrepancy Database….[T]he query identified by Lee Gazlay and discussed in his deposition has never been identified (by DOC) as the one used by DOC to generate the Release Discrepancy Database.

Def.'s Opp'n to Pls.' Mot. to Compel 6.  What the District does *not* say is that it has produced the query that DOC *did* use, and if the plaintiffs searched the production they could have corrected their mistake.  Generally, adversaries do not have a duty to actively help the other side—but the District did have a duty to produce the query.  The District's Opposition also does not provide a real explanation of why the query was not produced in the first place.  The District cannot withhold discoverable information, allow plaintiffs falsely to think they already *have* the

information, and then claim the request comes too late once plaintiffs realize they do not have the correct information.  Permitting such an approach could incentivize discovery abuses.

The "query" is a writing, the production of which is reasonably calculated to lead to the production of relevant evidence.  *See* F.R.C.P. 34(a)(1)(A); F.R.C.P. 26(b)(1).  It should have been produced pursuant to plaintiffs previous request for "all writings or documents related to show how the system was created," *See* Def.'s Resp. to Pls.' Eighth Doc. Req. 8.  Its production has been again requested by the plaintiffs' motion to compel "all documents needed to interpret the data in the database" and "all writings on how the database was created and how it has been used by the District."  Pls.' Mot. to Compel 1–2.  With the burden of showing that the District's production was incomplete met (*see Guantanamera Cigar Co. v. Corporation Habanos, S.A.*, 263 F.R.D. 1, 7 (D.D.C. 2009) (Lamberth, C.J.)), the District has not met its burden to show that the plaintiffs' request is overbroad, vague, or falls under one of the limitations of Rule 26(b)(2)(C).  *See Chubb*, 103 F.R.D. at 59–60.  While the plaintiffs' request for the query comes late, that does not overcome the plaintiffs' right to the information.   Therefore, the Court will grant, in part, plaintiffs motion to compel as to their first request.  The Court will order the immediate production of any database query or search algorithm used by the District during the Trial Period to help prepare its Discrepancy Reports.

However, the plaintiffs' request for the entire Release Discrepancy Database is overbroad, especially considering the Court's narrowing of the remaining discovery to the "Trial Period."  Furthermore, except as to the "query," the plaintiffs have not shown that the District's production was otherwise incomplete.  In the following section, the Court will discuss in greater detail the plaintiffs' claim that there are records and data missing from the produced version of the Release Discrepancy Database.

###### ii. Plaintiffs' Request for the All the Data the District Used to Complete its Discrepancy Reports

Second, the plaintiffs ask the Court to compel the District to produce:

> the entire database or electronic compilation of records from which the discrepancy reports filed by the District under Notice of Filing [Document # 301] and referenced by Ms. Souverain in her Declaration [Document # 301-2] ["Delta"] were taken from, if that database is different from the complete Release Discrepancy Database ["Alpha"].[18]

Pls.' Mot. to Compel 2.   As with the plaintiffs' first request, any production would need to be limited to the Trial Period, and the Court will not order the production of "the entire database" extending beyond the period of overdetentions in dispute.

Plaintiffs' basic argument is that while "complying with the Court's order to calculate total over-detentions for the Trial Period and total 'disputed over-detentions' for the Trial Period," plaintiffs' expert examined "the information available," and discovered that "the version of Release Discrepancy Database the District produced" was missing information.   Pls.' Mot. to Compel 3–4.   As such, the plaintiffs request "production of the missing records, the missing comments, and the missing entries from the Discrepancy Type field."   *Id.* at 4.

The District argues that there is "no data is missing here."   Def.'s Opp'n to Pls.' Mot. to Compel 4 (formatting omitted).   First, the District spends over three pages of its Opposition arguing that the plaintiffs used the wrong "query" to examine the District's raw data and "find" missing records.   *Id.* at 4–8.   Since the plaintiffs used the wrong "query," their claims about missing information are erroneous.   *See id.*   Furthermore, as to the plaintiffs' "complain[t] that empty comments in the District's Release Discrepancy Database is 'missing' information that should be compelled," the District responds:   "However, when District employees are entering

---

[18] The Court also considers, in this section, the plaintiffs' request for "Alpha"—the entire Release Discrepancy Database which, plaintiffs claim, contains records missing from what has been produced.

data in the Release Discrepancy Database, comments are *optional*." *Id.* at 7 (emphasis in original). Overall, the District's argument is: "The records plaintiffs claim are 'missing' were never part of the Release Discrepancy Database in the first place; plaintiffs have all the data they demanded, including all the underlying JACCS data used to generate the Release Discrepancy Database....The information plaintiffs claim is 'missing' or 'withheld' is neither. The District produced the complete Release Discrepancy Database, and all the data from which it was developed." *Id.* at 8–9.

This request comes down to whether the plaintiffs have met their burden of showing that the District's production is incomplete. If there is any "missing" information, the plaintiffs are entitled to it. The complete database and all the information the District used to prepare its Discrepancy Reports are clearly relevant under Rule 26(b)(1) and responsive to plaintiffs' prior document requests.[19] *See* Pls.' Mot. to Compel 10–13 (listing three document requests quoted in this Opinion *supra*). If there is missing data, the District has not made any showing that producing it would be unduly expensive or burdensome under Rule 26(b)(2)(C)(iii). It has made no showing that the information could come from a more convenient or less expensive source under Rule 26(b)(2)(C)(i). To the extent there are additional unproduced records, producing them would not be "unreasonably cumulative or duplicative." F.R.C.P. 26(b)(2)(C)(i). The District may not produce some, but not all, of the data and claim that plaintiffs have everything they need. The plaintiffs are entitled to all the tools needed to critically analyze the District's Discrepancy Reports and come to their own estimates of overdetentions. *See Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 378 (S.D. Ind. 2009) ("Producing only those documents that are deemed helpful to the producing party's litigation position—parsing out the

---

[19] Again, subject to the limitation that any information produced must be relevant to alleged overdetentions occurring during the Trial Period.

bad from the good—is, of course, impermissible."); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (explaining that liberal discovery provisions of Federal Rules are designed to make "trial less a game of blind man's bluff and more a fair context with the basic issues and facts disclosed to the fullest practical extent."). The plaintiffs also explain why their motion to compel comes relatively late, and why they have not previously "had ample opportunity to obtain the information by discovery in the action." F.R.C.P. 26(b)(2)(C)(ii). The plaintiffs did not notice that records might be missing until they calculated, per Court order, the number of alleged overdetentions for the Trial Period. *See* Pls.' Mot. to Compel 2–3. After making this "discovery," the plaintiffs promptly told the District and this Court that they believed records were missing.

To find that a production is incomplete, the Court requires more than a mere "theoretical possibility that more documents exist...to justify additional discovery." *Hubbard*, 247 F.R.D. at 29. Instead, the Court must be able to make a "reasonable deduction" from the documents that exist that "other documents may exist or did exist and have been destroyed." *Id. See also Harris*, 271 F.R.D. at 370 ("If plaintiffs are speculating that documents responsive to these requests do exist, there must be a reasonable deduction that that is true, and not a mere hunch."). The Court believes the District when it says the plaintiffs were using the incorrect query to determine that there were records missing. Def.'s Opp'n to Pls.' Mot. to Compel 4–8. As such, the plaintiffs have not—for now—met their burden of proving that there are any missing records to be produced. However, the Court will deny the plaintiffs' Motion to Compel on this issue without prejudice. The plaintiffs were unable to correctly scrutinize the District's data because the query—key to understanding how the District analyzed its data—has not been produced. As explained *supra*, the Court will compel the immediate production of the query used during the

Trial Period to analyze inmate data and generate the Release Discrepancy Database and Discrepancy Reports. If, after using the correct query to analyze the information available, the plaintiffs can show that information is missing, then the plaintiffs may then file a motion to compel. The Court urges the plaintiffs to work diligently and quickly, after receiving the correct query, to determine if any files are missing, so discovery for the liability phase may finally come to an end.

## IV.     CONCLUSION

Both of the District's motions, [351] and [365], would have been unnecessary had the parties carefully reviewed this Court's orders and engaged in discovery in good faith. Both the District and the plaintiffs are to blame. The District asked for answers to interrogatories it should have known were forthcoming. When the District received those answers, it moved to strike them—based, in part, on undue surprise. The District failed on several opportunities to designate a rebuttal expert, but now demands leave almost two years after receiving the initial report from plaintiffs' experts. The plaintiffs, while asking the Court to compel a narrative response to one of their interrogatories, felt they did not need to do the same when answering a nearly identical interrogatory from the District.

This case presents serious issues. This Court has already found that the District wrongfully overdetained hundreds of inmates. *Barnes*, 793 F. Supp. 2d at 286. Hundreds more alleged overdetentions are now in dispute. If true, this represents a considerable civil rights violation. The Court understands that the attorneys owe a duty to be zealous advocates for their clients, but this does not excuse gaming discovery simply to gain a tactical advantage. It does not excuse sloppy, late, or repetitive filings. It does not excuse failing to examine this Court's prior orders, and not asking for clarification if key points are ambiguous. Each party has reason

to be annoyed and frustrated at the other, and this comes out in their filings.  But the Court urges the parties to remember the importance of this case.  The plaintiffs' counsel does not simply represent the named parties, but hundreds who may have had their civil rights violated.  The defendant's counsel represents the District of Columbia, and by extension its over 600,000 citizens.[20]  Both parties owe a duty to litigate this case fairly, honestly, and carefully.  The Court knows that each party is capable of such, and asks them to focus on the real issues, instead of how many misspellings are in the other party's filing.[21]

For the reasons stated above, the Court denies in part and grants in part the District's Motion to Compel [ECF No. 351].  The District has already received a satisfactory response to Interrogatories 1 and 2 and thus the Court denies the motion as to those interrogatories.  The plaintiffs refused to answer Interrogatory 13 because the District had not answered a virtually identical question the way plaintiffs wanted.  The Court grants the District's motion as to Interrogatory 13 and orders the plaintiffs to answer the question in the same manner the Court had earlier directed the District.  *See Barnes,* 2012 WL 3105218, *4 (granting plaintiffs' motion to compel against District on virtually identical interrogatory).

The Court denies the District's Motion to Strike [ECF No. 365].  The Court finds no reason to strike supplemental expert reports that the Court itself ordered.  Motions to Strike are strongly disfavored and require the Court to consider alternatives.  The Court also denies the District's motion, in the alternative, for an extension of time and leave to designate rebuttal experts [ECF No. 365].  The Court has not found that good cause exists to grant leave to

---

[20] The Census Bureau estimates the population of the District of Columbia, as of July 2011, as 617,996.  U.S. Census Bureau, *Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July, 1 2011*, 2011 POPULATION ESTIMATES (Dec. 2011), *available at* http://www.census.gov/popest/data/state/totals/2011/tables/NST-EST2011-01.csv.

[21] The Court also asks the parties not to include such careless typos in the first place.

designate experts after the close of discovery.  The District's request to reopen discovery for 72 days to allow for the depositions of Dr. Kriegler and Mr. Day is excessive.  Instead, the Court reopens discovery for 28 days from this date for the sole purpose of allowing the District to depose Dr. Kriegler and Mr. Day.

The plaintiffs' Non-Consent and Re-Stated Motion to Compel the Production of the Release Discrepancy Database [ECF No. 362] presents more complicated issues.  The Court's April 3rd Discovery Opinion required the plaintiffs to revise their expert reports to focus on overdetentions occurring during the "disputed" or "Trial Period."  In doing so, the plaintiffs claim they discovered that the District's production was incomplete.  The plaintiffs seek complete discovery, including the entire Release Discrepancy Database—what the plaintiffs dub "Alpha."  In responding to the plaintiffs' motion, the District argued that the plaintiffs used faulty methods to determine that there are "missing" records.  Therefore, as long as the plaintiffs' argument rests on their application of the wrong "query," they cannot meet their burden of showing that "Alpha" exists and has not been produced.  In so replying, however, the District betrayed the fact that the District never revealed or produced which "query" the DOC did use to identify potential overdetentions.  By discussing the unproduced and undisclosed query in greater detail, the District's Opposition helped the plaintiffs demonstrate that the District's production was incomplete and that the District wrongfully withheld production of the query.

Therefore, the Court grants in part and denies in part plaintiffs' Motion to Compel [362]. The Court compels the District to immediately produce and identify any Lotus Notes query or other search algorithm used by the defendant or defendant's agent(s) during the Trial Period to analyze JACCS or other inmate data to identify potential overdetentions, or any query otherwise used in connection with generating the Discrepancy Reports and Release Discrepancy Database

during the Trial Period.   The Court will not compel the production of the *entire* Release Discrepancy Database.   The Court furthermore denies, without prejudice, plaintiffs' motion to compel the production of data underlying the District's Discrepancy reports to the extent such data is different from the version of the Release Discrepancy Database the District has already produced.   The plaintiffs cannot, at this time, meet their burden of showing that any records or data is missing; however, after the plaintiffs have had a chance to analyze the District's data using the correct query, they might be able to make such a showing.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Originally Signed, Royce C. Lamberth, Chief Judge, September 19, 2012.


Amended Pursuant to Rule 60(a).   Mem. Op. & Order, Sept. 28, 2012, ECF No. 396.

Amended Opinion Signed, Royce C. Lamberth, Chief Judge, September 28, 2012.