### UNITED STATES DISTRICT COURT
### OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARL BARNES,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No:      06-0315 (RCL)** |
| **THE DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF THE PARTIES'
### JOINT MOTION FOR PRELIMINARY ORDER OF APPROVAL AND SETTLEMENT

The parties, by and through undersigned counsel, respectfully submit this Memorandum of Points and Authorities in Support of their Joint Motion for Preliminary Approval and Settlement, pursuant to Fed. R. Civ. P. 7(b) and 23(e). The terms of the parties' proposed class settlement are set forth in a Settlement Agreement dated November 1, 2013 (the "Settlement Agreement"), attached hereto.

By this motion, for reasons explained below, the parties also move for vacation of the Court's Order decertifying special damages as class damages, and to remove Carl Barnes as a class representative and add Tyree Speight and Myra Diggs as class representatives.

### Introduction and Background

As the parties have indicated previously, they have reached an agreement to settle all outstanding issues in this matter. The proposed settlement resulted from good faith, arm's-length negotiations among experienced counsel for the parties. Upon final approval by the Court, this settlement will resolve the liability for damages of the District of Columbia (the "District") regarding plaintiffs' claims.

The settlement represents a fair and reasonable compromise. The undersigned counsel for the classes strongly believe that the proposed settlement is fair, reasonable and in the best interest of the classes. Before addressing the substance of the proposed settlement, and why it should be preliminarily approved, the parties first address the two other issues on which an order is sought by this motion.

*Removal of Carl Barnes, and addition of Tyree Speight and Myra Diggs, as Named Plaintiffs.*

Because Carl Barnes did not, in fact, participate as a Named Plaintiff and is now deceased, and because Tyree Speight and Myra Diggs were lead class witnesses in the trial on liability, plaintiffs move to dismiss Carl Barnes without prejudice as a Named Plaintiff (meaning that his estate will still be a class member) and to add Tyree Speight and Myra Diggs as Named Plaintiffs. This is relevant because the settlement provides somewhat greater compensation to the Named Plaintiffs for their work in support of the case.

*Vacation of Order decertifying special damages.*

As discussed above, and reflected in the attached Settlement Agreement, the parties also seek to vacate the Court's Order decertifying special damages (Dkt. No. 328; Dec. 7, 2011), to more efficiently resolve the outstanding claims and broaden the settlement.  This is a critical component of the settlement because the District cannot realistically resolve class members' claims if those who remain in the class would be able to collect their class settlement but still pursue individual special damages. Vacation of the decertification order would return the case to its prior status, in which all issues in the case were certified for class treatment.

The remainder of this Memorandum addresses why the settlement terms should be preliminarily approved. The principal terms of the settlement include:

- Each Strip Search Class Member who files a valid claim shall receive $1,000;

- Each Over-Detention Class Member who files a valid claim shall receive $370 for the first day and $250 for each day thereafter;

- Each claim shall be subject to a review process to determine whether the claimant qualifies as a class member, and, if so, what s/he is entitled to receive under the terms of the settlement;

- The District will pay $2.9 Million in class member claims and, if the total approved claims exceed that amount, the claims shall be proportionally adjusted. Any funds not distributed to settling class members will revert to the District of Columbia General Fund.

- If the total validated claims exceed the $2.9 Million fund, individual Class Member payments will be adjusted proportionately so that the total Class Member payout does not exceed $2.9 Million.

- The District will pay $75,000 to the Named Plaintiffs;

- The District will pay up to $250,000 for class administration;

- The District will not oppose an application by class counsel for $2,000,000 in attorney's fees and up to $425,000 in costs.

- The District will pay $475,000 to be used for improvements in inmate processing at the Department of Corrections.

- Class Members will release the District from liability for the alleged conduct during the Class Period.

- For the purposes of the proposed settlement, the Class Period extends from September 1, 2005, to July 31, 2013.

The settlement is subject to final court approval after notice to the class and class members' opportunity to opt out or object. No hearing is required on this motion from the parties' perspective unless the Court has questions it would like addressed. Should the Court desire a hearing, plaintiffs request that Mr. Litt participate telephonically.

The parties have also submitted a proposed Order of Preliminary Approval of the settlement, along with the Settlement Agreement, the Proof of Claim and Release Form, and the Class Notice. The Parties will file a proposed Final Order of Approval—including any proposed responses to any objections that may be filed—at least 15 days before the final approval hearing.

The proposed Preliminary Approval Order assumes that it will be signed by or around November 8, 2013, and sets dates for various activities on that assumption. Should the order be signed later than the week ending November 8, 2013, the dates set in the proposed order will need to be adjusted accordingly.

<u>Argument</u>

## I.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

"Preliminary approval of a proposed settlement to a class action lies within the sound discretion of the court." *Richardson v. L'Oreal USA, Inc.*, ___ F.Supp.2d ___, 2013 WL 3216061, *2 (D.D.C. Jun. 27, 2013) (quoting *In re Vitamins Antitrust Litig.*, No. 99-197, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999)). *See also Hubbard v. Donahoe*, ___ F.Supp.2d ___, 2013 WL 3943495, *2 (D.D.C. July 31, 2013) (same) (citing *Vista Healthplan v. Warner Holdings Co. III*, 246 F.R.D. 349, 357 (D.D.C. 2007)). "The exercise of this discretion, however, is constrained by the 'principle of preference' favoring and encouraging settlements in

appropriate cases." *In re Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 103 (D.D.C. 2004) (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999)).

A trial court has a duty under Fed. R. Civ. P. 23(e) to make sure that a proposed settlement is "fair, adequate, and reasonable and not the product of collusion between the parties." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000) (citations omitted). *Cf. United States ex rel. Schweizer v. Océ North Am., Inc.*, ___ F.Supp.2d ___, 2013 WL 3776260, *8 (D.D.C. July 19, 2013) (applying Rule 23's "fair, reasonable, and adequate" analysis to proposed False Claims Act settlement).

Courts look to a number of factors in this analysis, including: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of Plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Hubbard, supra*, at * 2 (quoting *Vista Healthplan*, 246 F.R.D. at 360); *Schweizer, supra*, at *8 (same) (quoting *In re LivingSocial Mktg. & Sales Practice Litig.*, 2013 WL 1181489, *7 (D.D.C. Mar. 22, 2013)).

Generally, a court should grant preliminary approval of a class action settlement if it appears to fall "within the range of possible approval" and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Trombley v. Nat'l City Bank*, 759 F.Supp.2d 20, 23 (D.D.C. 2011) (quoting *Newberg on Class Actions*, § 11:25 (4th ed. 2010)).

### A. The Settlement Is The Result Of Arm's Length Negotiations.

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (quoting *Manual for Complex Litig.*, at § 30.42).

Here, the Settlement Agreement was executed after several months of extensive, often contentious, negotiations among experienced counsel, all of whom have devoted considerable time and effort to this litigation and settlement.[1] Indeed, counsel for the parties engaged in years of discovery and resolved—via summary judgment and a jury trial—the scope of the District's liability. Damages were the only unresolved aspect of the litigation at the time of settlement, and were set to be resolved through an additional period of discovery and a jury trial.

The parties were also greatly aided in their settlement negotiations by an independent mediator, Ms. Nancy Lesser, Esq., who facilitated discussions between the parties and presided over an all-day mediation session on July 10, 2013, which established the outlines of the parties' agreement.

Accordingly, this Court should apply a presumption that the settlement reached by the parties is fair and reasonable. *See Equal Rights Center v. Washington Metropolitan Area Transit Authority*, 573 F. Supp. 2d 205, 212 (D.D.C. 2008) (class action settlement presumed reasonable where the parties engaged in six months of vigorous negotiations and the litigation was contentious).

---

[1] Plaintiffs' counsel further represent that, consistent with controlling law and the ethical standards promulgated by the District of Columbia Bar, no plaintiffs' attorney has requested or been offered any compensation, appointment, or benefit by defendants during negotiations related to the settlement of this case other than the proposed attorneys' fees and costs outlined above, which are subject to court approval.

**B.     The Terms Of Settlement Reflect The Strength Of The Parties' Positions And The Risks Of Continued Litigation.**

"The most important factor in the Court's evaluation of a proposed class action settlement is how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 9-10 (D.D.C. 2006). The benefits to the class members must be "considered in juxtaposition with the risks attendant to continued litigation of this matter." *Schweizer, supra*, at *12 (quoting *In re LivingSocial Mktg.*, 2013 WL 1181489, at *9). Here, the settlement should be approved because both parties recognize the substantial risks of proceeding with the litigation, and the costs in doing so. The parties have extensively analyzed the strengths and weaknesses of their respective positions and the risks, time, and costs of continued litigation.

The relief secured by the Settlement Agreement is considerable and there is a material risk that continued litigation would result in a less favorable outcome for the class (*i.e.*, reduced amounts of damages or no damages at all) or the District (greater damages and/or uncertain liabilities).

The District has agreed, *inter alia*, to pay up to $6.2 million to resolve this case, with $2.9 million to directly compensate Class Member claims. These amounts include the costs of class notice and administration, as well as the costs to hire a panel of three independent claims reviewers. This amount is "within the range of possible approval," *Trombley*, 759 F.Supp.2d at 23 of similar settlements. *See Bynum v. District of Columbia*, 412 F.Supp.2d 73 (D.D.C. 2006) (approving $5 million class fund for approximately 4,000 claims of overdetentions and post-release strip searches, plus additional amounts for attorneys' fees and costs and dedicated jail funds); *Lopez v. Youngblood*, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) (approving class-

7

action settlement for, *inter alia*, $1,500 per post-release strip search, plus $750 for any additional post-release strip searches).

The settlement is based on realistic estimates of the probable claim rate, which is expected to be in the range of 10–20%; the *Bynum* claim rate fell in this range.

The settlement eliminates the risks, costs, and delays of trials and appeals. The District has raised several factual and legal defenses to the imposition of extensive damages in this case, and it would be the plaintiffs' burden to prove their damages. The benefits to the Class Members are real and immediate upon final judgment, and involve the payment of cash. It is money that, even in the event of an unusually high claim rate, will surely be welcomed.

Plaintiffs recognize that continued litigation "entails substantial risks," and that victory "certainly cannot be assumed." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *4 (D.D.C. June 16, 2003) (Hogan, J.); see also *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979). For instance, the case law governing strip searches continues to be clarified. *See, e.g., Powell v. Sheriff, Fulton County*, 2013 WL 842646 (11th Cir. Mar. 7, 2013) (the Constitution does not require that prisoners—even those returning from court entitled to release—be segregated from the general population while their releases are being processed).

Notwithstanding this, the District faces unknown exposure for damages for illegal strip searches. Individual strip searches in reported class-action lawsuit settlements or trials have a broad range of values. *See Tatum v. Morton*, 562 F.2d 1279 (D.C. Cir. 1977) ($400); *In re Nassau County Strip Search Cases*, 742, F.Supp.2d 304, 331 (E.D.N.Y. 2010) ($500); *McBean v. City of New York*, 233 F.R.D. 37, 389 (S.D.N.Y. 2006) ($750); *Doan v. Watson*, 2002 WL 31730917 (S.D.Ind. Dec 4, 2002) ($1000). *Cf. Trombley*, 759 F.Supp.2d at 24–25 ("[T]he

comparison of settlements in similar cases can be relevant when evaluating the fairness, adequacy, and reasonableness of a proposed settlement.").

At the same time "[t]he significant reduction in the number of overdetentions as of February 2008, alongside the District's implementation in 2008 of measures that even plaintiffs concede have 'solved' much of the overdetention problem" led the Court to find that the District was not liable for overdetentions after February 25, 2008, as a matter of law. *See* Doc. No. 307, at 28 (Jun. 24, 2011). Accordingly, the settlement guarantees a significant benefit to the class for past damages that may not be available going forward.

In sum, in light of the significant settlement benefits obtained for the class and the risk that continued litigation would result in a less favorable outcome, the terms of the settlement are fair and reasonable. *See, e.g.*, *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 64 (D.D.C. 2010) (finding settlement fair in light of "the significant recovery that the settlement affords the members of the settlement class, the difficulties faced by the plaintiffs in litigating this class action, the inherent risks, costs, and time associated with continued litigation, and [defendant]'s financial condition"); *see also Thomas v. Albright*, 139 F.3d at 231 (D.C. Cir. 1998) ("A settlement necessitates compromise.").

> A court should not withhold approval simply because the benefits accrued from a settlement agreement are not what a successful plaintiff might receive in a fully-litigated case. A settlement is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed. Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial and assured relief for the class. A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof.

*Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996)

### C.     The Settlement Is Not Premature.

Settlement should come at a time when counsel have "sufficient information to adequately assess the risks of [continued] litigation." *In re Lorazepam*, 2003 WL 22037741, at *5; *see also Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 57-58 (D.D.C. 2008). Here, given that this settlement was reached after more than seven (7) years of vigorously contested litigation, this factor too plainly counsels in favor of approval.

There has been more-than-sufficient factual development in this case to allow Class Counsel to make a meaningful decision as to settlement. Following years of contentious discovery and summary judgment briefing, the parties finally resolved the scope of the District's liability during a week-long jury trial in March, 2013, which itself involved weeks of intensive preparation. Under these circumstances, there can be no doubt that counsel have sufficient information adequately to assess the risks of continued litigation and the merits of the proposed settlement. *See In re Lorazepam*, 2003 WL 22037741, at *5 (preliminary approval appropriate where the parties had engaged in "substantial and vigorous litigation").

### D.     Plaintiffs' Counsel Believe That The Settlement Is Fair And Reasonable.

The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam*, 2003 WL 22037741 at *6; *see also Radosti*, 717 F. Supp. 2d at 57. Counsel for the class have substantial experience litigating prisoners' rights cases, including the *Bynum* predecessor to this case. Class Counsel are experienced in civil rights, criminal defense, consumer litigation, and class actions. *See* Doc. No. 7-2 at 20–21; Doc. No. 7-27; Doc. No. 7-28. *See also Bynum v. District of Columbia*, 384 F. Supp. 2d 342 (D.D.C. 2005). Counsel strongly believe and represent that,

given the risks attendant to further litigation, the terms of the proposed settlement are fair and reasonable and in the best interest of the class.[2] *See Equal Rights Center*, 573 F. Supp. 2d at 213 (crediting opinion of counsel as to the fairness of the settlement given their over three years of experience litigating the matter before the court).

Class Counsel have based their approval of settlement on the risks of trial and appeal and, even if they were to win at trial and on appeal, the delays in recovery that would result from protracted litigation. The settlement is based upon a reasonably-anticipated claims rate; it contains sufficient notice provisions; and it has a simple claims process.

Thus, four of the five factors favor granting preliminary approval to this settlement. *Hubbard, supra*, at * 2. As for the final factor—the reaction of the class—Class Counsel will provide that information in advance of the Final Approval and Fairness Hearing.

## II.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER OF NOTICE TO THE CLASS.

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Under that rule and the mandates of due process, class members must be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Hubbard, supra*, at *5 (quoting Rule 23(c)(2)(B)). However, "[n]either Rule 23 nor the requirements of due process require actual notice to each and every possible class member." *In re Prudential Insurance Co. of America Sales Practices Litig.*, 177 F.R.D. 216, 233 (D.N.J. 1997); *see also Pigford v. Veneman*, 208 F.R.D. 21, 23 (D.D.C. 2002).

---

[2]    Further, in reaching the conclusion that the settlement is in the best interests of the class, class counsel have regularly consulted with members of the class.

When all class members cannot be identified, other methods of providing notice—such as publication in newspapers and periodicals—are deemed sufficient. *See, e.g., In re Lorazepam*, 2003 WL 22037741 at *5; *Collins v. Pension Benefit Guar. Corp.*, 1996 WL 335346, *2 (D.D.C. June 7, 1996).  Here, the proposed notice program fully complies with these requirements and provides the best notice practicable in the circumstances of this case.

The parties also request that contingent on the execution of an acceptable contract and subject to the availability of an appropriation, the Court direct the use of Gilardi & Co., LLC as class administrators.

### A.     The Proposed Notice Is Reasonable And Tailored To The Needs Of Class Members.

Class Counsel have carefully considered various options for providing reasonable notice of the proposed settlement to class members. Counsel for the class believe that the proposed notice clearly and concisely informs potential class members of the nature and scope of the Agreement and of their rights to object and be heard. The proposed notice provides a clear explanation of (i) the lawsuit, its history, and current procedural posture, (ii) how to determine if one is a member of the classes, (iii) the reasons for settlement, (iv) the key provisions of the Settlement Agreement, and (v) the procedure for making objections and being heard at a final fairness hearing.

Accordingly, the Court should approve the form of notice attached as Exhibit C to the Settlement Agreement.

**B.     The Manner Of Notice Is The Best Practicable Notice Under The Circumstances.**

The Court should also approve the notice plan set forth in the Settlement Agreement. In formulating the notice plan, the parties have given considerable thought to the difficulties involved in reaching many class members, and have developed a multi-faceted, comprehensive notice plan in order to reach as many class members as possible. In addition to providing individual notice to class members (and/or their legal representatives) where practicable, the notice plan calls for publication notice, posting of the notice in corrections facilities, and posting of settlement information on the Department of Corrections' website. Accordingly, the Court should approve the notice plan set forth in the Settlement Agreement as providing the best notice practicable under the circumstances of this case.

<u>Conclusion</u>

Based on the above, the Parties respectfully request that this Honorable Court, for the foregoing reasons, should grant the parties' Joint Motion for Preliminary Approval, approve the manner and form of notice to be furnished to the class, and schedule a Fairness Hearing under Fed. R. Civ. P. 23(e)(1)(C) for the purpose of determining whether the settlement is fair, reasonable, and adequate.

DATE:  November 4, 2013          Respectfully submitted,

                                 IRVIN B. NATHAN
                                 Attorney General for the District of Columbia

                                 ELLEN A. EFROS
                                 Deputy Attorney General
                                 Public Interest Division

_____/s/ Grace Graham_____
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity Section I
441 Fourth Street, N.W., Suite 680 North
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

_____/s/ Keith D. Parsons_____
KEITH D. PARSONS, D.C. Bar No. 1006935
Assistant Attorney General
441 Fourth Street, N.W., Suite 680 North
Washington, D.C. 20001
Direct Dial:  (202) 727-6247
Receptionist:  (202) 727-6295
Facsimile:  (202) 741-8935
Email:  keith.parsons@dc.gov

*Counsel for Defendant*

/s/ William Claiborne
WILLIAM CLAIBORNE, D.C. Bar No. 446579
2020 Pennsylvania Avenue, NW
Suite 395
Washington, D.C. 20006
Phone 202) 824-0700
Email: claibornelaw@gmail.com

/s/ Ralph D. Robinson
RALPH D. ROBINSON, D.C. Bar No. 441797
2020 Pennsylvania Ave, NW
Suite 395
Washington, D.C. 20004

Phone 703/846-0596
Email: Ralph_29014@msn.com

 /s/ Barrett S. Litt
BARRETT S. LITT, *Pro haec vice*
Kaye, McLane, Bednarski & Litt
234 Colorado Blvd.
Suite 230
Pasadena, CA 91101
Phone (626) 844-7660, xt. 112
Fax (626) 844-7670
Email: blitt@kmblaw.com

*Counsel for Named Plaintiffs and the Classes*